IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>[1] OLUWASEGUN BAIYEWU,<br><br>Defendant. | No.: 21-395 (RAM)<br><br>VIOLATION:<br><br>18 U.S.C. § 1956(h)<br><br>FORFEITURE:<br>18 U.S.C. § 982(a)(1)<br><br>(ONE COUNT) |

RECEIVED AND FILED

CLERK'S OFFICE USDC PR

2021 OCT 20 PM 5:11

## INDICTMENT

The Grand Jury charges:

1. Defendant **OLUWASEGUN BAIYEWU ("BAIYEWU")** resided in Texas.

2. Co-conspirator 1 (“**CC1**”) resided in California.

3. Co-conspirator 2 (“**CC2**”) was the sole signatory of Copart account no. xxxxxx7801. CC2 resided in Nigeria.

4. Co-conspirator 3 (“**CC3**”) resided in Nigeria.

5. Victim G.I. was a renewable energy business located in Puerto Rico.

6. Banco Popular de Puerto Rico ("BPPR") was a financial institution insured by the Federal Deposit Insurance Corporation, within the meaning of 31 U.S.C. § 5312(a)(2)(A).

7.   JP Morgan Chase Bank N.A. ("Chase") was a financial institution insured by the Federal Deposit Insurance Corporation, within the meaning of 31 U.S.C. § 5312(a)(2)(A).

8.   Copart, Inc. ("Copart") was a financial institution, within the meaning of 31 U.S.C. § 5312(a)(2)(T).

### COUNT ONE
**Money Laundering Conspiracy**
**18 U.S.C. § 1956(h)**

9.   Beginning in or about February 2020 and continuing through in or about October 2021, the exact dates being unknown to the Grand Jury, within the District of Puerto Rico and elsewhere, and within the jurisdiction of this Court, Defendant,

**[1] OLUWASEGUN BAIYEWU**

conspired and agreed with CC1, CC2, CC3, and with other persons known and unknown to the Grand Jury, to violate 18 U.S.C. § 1956 and 1957, including by:

    a.   conducting and attempting to conduct financial transactions involving monetary instruments affecting interstate and foreign commerce, which transactions involved the proceeds of a specified unlawful activity, that is, wire fraud proceeds derived from a Business Email Compromise ("BEC") scheme, knowing the property involved in the financial transactions

represented the proceeds of some form of unlawful activity and the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, in violation of 1956(a)(1)(B)(i); and

b. knowingly engaging and attempting to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity, that is, wire fraud proceeds derived from a BEC scheme, in violation of 18 U.S.C. § 1957.

## Object of the Conspiracy

10. The object of the conspiracy was to realize personal gain by using the U.S. financial system to obtain funds from BEC victims located in the District of Puerto Rico and elsewhere.

## Manner and Means of the Conspiracy

11. It was a manner and means of the conspiracy that conspirators used a BEC scam to target businesses that conduct banking transactions and wire transfers online. As part of a BEC, conspirators obtained unauthorized access to the email accounts of one or more business entities and then observed email traffic to identify financial transactions; inserted themselves into that transaction

by using a spoofed email address or domain; and, using the spoofed email address, manipulated an employee of the victim business to change the payee bank account information for an account slated to receive payment from a victim business. The payment would be sent to a bank account controlled by a member of the BEC conspiracy, rather than the bank account held by the actual, legitimate payee.

12. In or about October of 2020, one of **BAIYEWU**'s co-conspirators targeted victim G.I. as part of the BEC conspiracy.

13. It was further part of the manners and means of the conspiracy that on or around October 21, 2020, **CC1** directed Account Holder A to open, as the sole signatory and in the name of a fictitious business, Chase bank account no. xxxxxx1959 for the purpose of receiving BEC proceeds.

14. It was further part of the manners and means of the conspiracy that on or about October 23, 2020, **CC3** notified **CC1** that **CC3** was expecting to obtain BEC proceeds via fraudulently diverted transfers to accounts controlled by **CC1**. **CC1** confirmed to **CC3** that Chase bank account no. xxxxxx1959 could receive ACH transfers.

15. It was part of the manners and means of the conspiracy that on or about October 27, 2020, during the BEC, a co-conspirator used a spoofed email account, which appeared to be from one of G.I.'s vendors, to fool a G.I.

employee into changing the bank account information on file for that vendor. The conspirator's spoofed email asked for the vendor's bank account to be changed to Chase account no. xxxxxx1959, which was controlled by CC1 and not in any way associated with the vendor.

16.   It was further part of the manners and means of the conspiracy that on October 27, 2020, the victim G.I. sent a payment meant for the vendor, a legitimate supplier of goods, to Chase account no. xxxxxx1959. The payment was in the amounts of $112,129.53 and was made from victim G.I.'s BPPR account.

17.   It was further part of the manners and means of the conspiracy that on or about October 28, 2020, CC1 directed Account Holder A to visit a Chase branch in Inglewood, California to withdraw $74,465.00 in cash from the Chase account no. xxxxxx1959 and use the cash to purchase four Chase cashier's checks which Account Holder A then provided to CC1.

18.   It was further part of the manners and means of the conspiracy that CC1 cashed three of the four cashier's checks and distributed the bulk U.S. currency to other conspirators. As to the fourth check, on or about October 29, 2020, CC1 delivered Chase cashier's check no. xxxxxx7111 to a Copart location in Wilmington, California. The Chase cashier's check no. xxxxxx7111 payable to Copart for $31,126 was applied by Copart to CC2's Copart account no.

xxxxxx7801 to pay for two vehicles CC2 had acquired via auction: a 2014 Land Rover Range Rover, and a 2006 Toyota Sienna, as well as for vehicle storage fees.

19. On or about November 10, 2020 and November 14, 2020, BAIYEWU exported the 2006 Toyota Sienna and 2014 Land Rover Range Rover to Lagos, Nigeria.

All in violation of 18 U.S.C. § 1956(h).

## FORFEITURE NOTICE

20. The allegations in Count ONE of this Indictment are realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. § 982(a)(1).

21. Pursuant to 18 U.S.C. § 982(a)(1), the United States gives notice to the Defendant charged in Count ONE of this Indictment, that upon conviction of any of these offenses, all property, real or personal, involved in such offenses, and all property traceable to such property, is subject to forfeiture.

22. The property to be forfeited includes, but is not limited to, a 2018 Land Rover Range Rover with VIN SALGS2SV8JA510713 and a 2018 Lexus RX350 with VIN 2T2BZMCA5JC142101.

23. The Defendant charged in Count ONE of this Indictment is notified if property subject to forfeiture, because of any act or omission of the Defendant,

    a. cannot be located upon the exercise of due diligence;

  b. has been transferred or sold to, or deposited with, a third party;

  c. has been placed beyond the jurisdiction of the court;

  d. has been substantially diminished in value; or

  e. has been commingled with other property which cannot be divided without difficulty,

the United States will seek to forfeit any other property of the Defendant up to the total value of the property subject to forfeiture pursuant to 21 U.S.C. § 853(p), as incorporated by reference in 18 U.S.C. § 982(b) and 28 U.S.C. § 2461(c).

           **A TRUE BILL**

Dated: 10/20/2021

W. STEPHEN MULDROW
United States Attorney

*[signature]*

MYRIAM Y. FERNANDEZ
Assistant United States Attorney
Chief, Asset Recovery and
Money Laundering Division

*[signature]*

JOHN AUCHTER
Special Assistant United States Attorney