UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>[1] OLUWASEGUN BAIYEWU,<br>[2] IFEOLUWA DUDUBO,<br>[3] OLUWASEUN ADELEKAN,<br>[4] TEMITOPE SULEIMAN A/K/A "JONATHAN AKINFEMI,"<br>[5] TEMITOPE OMOTAYO,<br><br>Defendants. | **SUPERSEDING INDICTMENT**<br><br>CRIMINAL NO. 21-395 (RAM)<br><br>VIOLATION:<br>18 U.S.C. §§ 1956(h), 3147<br><br>FORFEITURE:<br>18 U.S.C. § 982(a)(1)<br><br>ONE COUNT |

RECEIVED AND FILED
CLERK'S OFFICE USDC PR
2023 MAY 31 PM 4:17

THE GRAND JURY CHARGES:

At all times relevant to this Superseding Indictment:

BACKGROUND

1. Defendant OLUWASEGUN BAIYEWU was the owner of online vehicle auction house Copart Inc. ("Copart") account number xxxxxx9581. BAIYEWU resided in Texas.

2. Defendants IFEOLUWA DUDUBO and TEMITOPE SULEIMAN a/k/a "Jonathan Akinfemi" resided in Texas.

3. Defendants OLUWASEUN ADELEKAN and TEMITOPE OMOTAYO resided in New York.

4. Co-conspirator 1 ("CC-1") and co-conspirator 2 ("CC-2") resided in Texas.

5. Co-conspirator 3 ("CC-3") resided in Nigeria.

6. Co-conspirator 4 ("CC-4") resided in California.

7. Co-conspirator 5 ("CC-5") was the sole owner on Copart account number xxxxxx7801. CC-5 resided in Nigeria.

8. Co-conspirator 6 ("CC-6") was the sole owner on Copart account number xxxxxxx9008. CC-6 resided in Nigeria.

9. Co-conspirator 7 ("CC-7") resided in Nigeria.

10. Victim company G.I. was located in Puerto Rico.

11. Victim company A.S. was located in Missouri.

12. Victims D.L. and K.C. resided in California.

13. Victim L.S. resided in Illinois.

14. Victim D.H., S.C., D.B., S.L., M.B., S.L., A.H., and D.T. resided in Nevada.

15. Victims G.S. and C.M. resided in Washington.

16. Banco Popular de Puerto Rico ("BPPR"), Edward Jones, Enterprise Bank and Trust, Green Dot Bank, Investors Bank, J.P. Morgan Chase Bank N.A., United Bank, and Wells Fargo Bank were financial institutions insured by the Federal Deposit Insurance Corporation, within the meaning of 31 U.S.C. § 5312(a)(2)(A).

17. On or about April 23, 2019, OLUWASEUN ADELEKAN and TEMITOPE OMOTAYO were charged by indictment in the United States District Court for the Southern District of New York, Criminal Case No. 19-00291. By orders dated April 25, 2019, the District Court in the Southern District of New York permitted ADELEKAN and OMOTAYO to remain on release status, that is, out of prison, while they awaited trial. Those orders notified ADELEKAN and OMOTAYO, respectively, of the potential effect of committing an offense while on pretrial release.

COUNT ONE
Conspiracy to Commit Money Laundering
(18 U.S.C. §§ 1956(h) and 3147)

18. The allegations contained in paragraphs one through 17 are realleged and incorporated as if fully set forth in this paragraph.

19. Beginning in or about May 2020 and continuing through in or about October 2021, the exact dates being unknown to the Grand Jury, within the District of Puerto Rico and elsewhere, and within the jurisdiction of this Court, Defendants

[1] OLUWASEGUN BAIYEWU,
[2] IFEOLUWA DUDUBO,
[3] OLUWASEUN ADELEKAN,
[4] TEMITOPE SULEIMAN A/K/A "JONATHAN AKINFEMI," and
[5] TEMITOPE OMOTAYO

knowingly conspired with each other and other persons known and unknown to the Grand Jury to violate 18 U.S.C. §§ 1956 and 1957, including by:

a. Knowingly conducting and attempting to conduct financial transactions involving monetary transactions affecting interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, mail fraud, 18 U.S.C. § 1341; wire fraud, 18 U.S.C. § 1343; access device fraud, 18 U.S.C. § 1029(a)(2); access device fraud conspiracy, 18 U.S.C. § 1029(b)(1); and money laundering conspiracy, 18 U.S.C. § 1956(h), knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity and that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and

control of the proceeds of specified unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(B)(i); and

b. Knowingly engaging and attempting to engage in a monetary transaction by through or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity, that is, proceeds of mail fraud, 18 U.S.C. § 1341; wire fraud, 18 U.S.C. § 1343; and money laundering conspiracy, 18 U.S.C. § 1956(h), in violation of 18 U.S.C. § 1957.

## OBJECT OF THE CONSPIRACY

20. The object of the conspiracy was to realize personal gain by obtaining money and other property from victims located in the District of Puerto Rico and elsewhere.

## MANNER AND MEANS

21. It was a manner and means of the conspiracy that scammers involved in perpetrating business email compromise ("BEC") schemes, romance scams, and Unemployment Insurance ("UI") fraud worked with members of the alleged money laundering conspiracy to facilitate transactions with the proceeds of BECs, romance scams, and UI fraud schemes, including as follows:

### Business Email Compromises

*May 2020 BEC*

22. On or about May 5, 2020, victim company A.S., located in Missouri, was victimized in a BEC. Scammers obtained access to an A.S. employee's email account and sent unauthorized emails to A.S.'s accounting department employees, impersonating and directing A.S.'s accounting department employees to send wire payments totaling

4

$312,893.20 to a J.P. Morgan Chase account ending in 5790, controlled by CC-1 ("Chase Account #5790").

23.     As a result of the unauthorized emails, on or about May 5, 2020, the accounting department employees at A.S. were fooled into sending $312,893.20 of victim company A.S.'s money by ACH transfer from A.S.'s Enterprise Bank & Trust account ending in 7194, located in St. Louis, Missouri, to Chase Account #5790, located in Houston, Texas, and controlled by CC-1.

24.     On or about May 5, 2020, CC-1 visited a Chase branch in Texas and withdrew $20,000 of victim company A.S.'s funds from Chase Account #5790, which CC-1 used to purchase J.P. Morgan Chase cashier's check number 1660032389, made payable to Copart:

25.     On or about May 12, 2020, CC-2 delivered J.P Morgan Chase cashier's check no. 1660032389, in the amount of $20,000, to a Copart location in Houston, Texas. The check was applied to pay for costs and fees associated with 14 vehicles purchased by OLUWASEGUN BAIYEWU using Copart account number xxxxxx9581, which BAIYEWU controlled.

<i>October 2020 BEC</i>

26.     In or about October 2020, scammers targeted victim company G.I., located in Puerto Rico, in a BEC. In anticipation of receiving fraud proceeds from victim company G.I., on or about October 21, 2020, at CC-3's instruction, CC-4 directed Account Holder A to open, as the sole signatory and in the name of a fictitious business, J.P. Morgan Chase bank account no. xxxxxx1959 ("Chase Account #1959").

27. On October 27, 2020, as a result of receiving a spoofed email from scammers directing a G.I. employee to change a vendor's bank account information to Account Holder A's Chase Account #1959, G.I. employees were tricked into initiating a payment for $112,129.53 from G.I.'s BPPR account, located in Puerto Rico, to Chase Account #1959, located in California.

28. On or about October 28, 2020, at CC-3's direction, CC-4 instructed Account Holder A to visit a J.P Morgan Chase branch in Inglewood, California, to withdraw $74,465 in cash from Chase Account #1959, and to use the cash to purchase four J.P. Morgan Chase cashier's checks, including cashier's check no. 1140254111 in the amount of $31,126, made payable to Copart ("Cashier's Check #4111").

29. On or about October 29, 2020, at CC-3's direction, CC-4 delivered Cashier's Check #4111 to a Copart location in Wilmington, California. Cashier's Check #4111 was used to pay for costs and fees associated with two vehicles, a 2014 Land Rover Range Rover, and a 2006 Toyota Sienna, that had been purchased by CC-5 using Copart account no. xxxxxx7801, which CC-5 controlled.

30. On or about November 10 and 14, 2020, respectively, OLUWASEGUN BAIYEWU facilitated the export to Lagos, Nigeria, of the two vehicles—the 2006 Toyota Sienna and 2014 Land Rover Range Rover—purchased by CC-5 using Copart account number xxxxxx7801, which CC-5 controlled.

### Romance Scams

#### *Victim K.C.*

31. Between in or about September 2018, and continuing through in or around September 2020, victim K.C. was tricked into believing that K.C. was involved in a romantic relationship with a person K.C. met online named "Albert Burgey," which was in fact a fictitious identity made up by scammers to manipulate K.C. into (i) sending money via the United States Postal Mail to the residence of OLUWASEUN ADELEKAN and TEMITOPE OMOTAYO in Staten Island, New York, and to others, known and unknown to the Grand Jury; (ii) allowing the scammers to route funds from UI fraud to K.C.'s Wells Fargo Bank account; and (iii) allowing the scammers to use a J.P. Morgan Chase N.A. bank account controlled by K.C. to receive wire transfers.

32. After approximately $27,177 in UI fraud funds, including from the states of Washington and Maine, were deposited into K.C.'s Wells Fargo Bank account, the scammers directed K.C. to withdraw the funds from K.C.'s account and conduct additional transactions with the funds, including directing K.C. to purchase gift cards and send photographs of the unique numbers associated with the gift cards via text message to "Albert Burgey" so that the scammers could obtain the value stored on the gift cards.

33. Through the scammers' lies and misrepresentations, the scammers also induced K.C. to use K.C.'s own money to buy gift cards and other things of value totaling approximately $60,000, and to provide them to the scammers and members of the alleged money laundering conspiracy.

*Victim D.L.*

34. Beginning in or around August 2019 and continuing through on or about August 2020, D.L. was tricked by scammers posing as a love interest, "Emily Witty," a fake identity concocted by the scammers to fool D.L. into sending at least $200,000 to scammers and members of the alleged money laundering conspiracy. For example, during the period between on or about June 11, 2020, and July 14, 2020, the scammers induced D.L. to mail through the U.S. Postal Service approximately $59,000 in cash to OLUWASEUN ADELEKAN's and TEMITOPE OMOTAYO's Staten Island, New York, residence, at least some of which was deposited into an Investors Bank account ending in 7821 ("Investors Account #7821), which was controlled by OLUWASEUN ADELEKAN.

35. On or about June 23, 2020, OLUWASEUN ADELEKAN withdrew $4,683 in funds from Investors Account #7821, which funds had been commingled in the account with money victims D.L. and K.C. had provided to ADELEKAN and OMOTAYO, and purchased cashier's check number 4250001153 in the same amount, made payable to Copart.

36. On or about June 23, 2020, OLUWASEUN ADELEKAN transported cashier's check number 4250001153 to a Copart lot in Somerville, New Jersey, and used it to pay for costs and fees associated with vehicles purchased by OLUWASEGUN BAIYEWU using Copart account number xxxxxx9581, which BAIYEWU controlled.

**Unemployment Insurance Fraud**

37. During all times relevant to this indictment, UI was a joint state and federal program that provided monetary benefits to eligible beneficiaries. UI payments were intended to provide temporary financial assistance to lawful workers who were unemployed

through no fault of their own. Beginning in or around March 2020, in response to the COVID-19 pandemic, several federal programs expanded UI eligibility and increased UI benefits.

38.   State workforce agencies, including in Washington, Nevada, and Illinois, administered the UI program. Those seeking UI benefits submitted online applications. Applicants had to answer specific questions to establish eligibility to receive UI benefits, including their name, Social Security Number, and mailing address, among other things. Applicants also had to self-certify that they met a COVID-19-related reason for being unemployed, partially employed, or unable to work.

39.   The state workforce agencies relied upon the information in the applications to determine UI benefits eligibility. Once an application was approved, the state workforce agencies typically distributed state and federal UI benefits electronically to a Green Dot or Bank of America debit card, which claimants could use to withdraw funds and/or make purchases. Some of the debit cards were sent via the U.S. Postal Service to addresses provided by the claimants. Claimants could activate their debit cards via telephone or online.

*Washington Employment Security Department*

40.   In or around May 2020, scammers falsely misrepresented themselves as other people, including victims G.S. and C.M., on the Washington Employment Security Department online UI system in order to certify and re-certify eligibility for UI benefits and to fraudulently obtain UI benefits in victims' names. During the application process, scammers requested that victims' UI benefits be loaded onto reloadable, prepaid Green Dot

debit cards, including one bearing a debit card number ending in 5041 ("UI Debit Card #5041") (UI benefits paid in connection with victim G.S.) and one bearing a debit card number ending in 9995 ("UI Debit Card #9995") (benefits paid in connection with victim C.M.).

41. By doing so, the scammers knowingly and with intent to defraud trafficked in and used one or more unauthorized access devices, as defined in 18 U.S.C. § 1029(e)(3), and by such conduct obtained UI benefits totaling $1,000 or more during the one-year period between in and around May 2020 and in and around May 2021.

42. On or about May 6, 2020, OLUWASEGUN BAIYEWU obtained a money order, bearing number 20883875979, in the amount of $980 ("Money Order #5979"), which was purchased on or about May 5, 2020, from a retailer in Katy, Texas, using UI Debit Card #5041.

43. On or about May 6, 2020, OLUWASEGUN BAIYEWU obtained a money order, bearing number 20951436816, in the amount of $760 ("Money Order #6816"), which was purchased on or about May 5, 2020, from a retailer in Katy, Texas, using UI Debit Card #9995.

44. On or about May 6, 2020, OLUWASEGUN BAIYEWU delivered Money Order #5979 and Money Order #6816 to a Copart location in Houston, Texas. The two money orders were applied to pay for costs and fees associated with two vehicles (a Nissan Sentra and Nissan Altima) purchased by OLUWASEGUN BAIYEWU using his Copart account number xxxxxx9581.

*Nevada Department of Employment, Training, and Rehabilitation*

45. In or around June 2020 through in or around September 2020, scammers falsely represented themselves as other people, including victims D.H., S.C., D.B., S.L., M.B., S.L., A.H., and D.T., via the Nevada Department of Employment, Training, and Rehabilitation online UI system, in order to certify and re-certify eligibility for UI benefits and to fraudulently obtain UI benefits in victims' names. During the application process, scammers requested that victims' UI benefits be loaded onto reloadable, prepaid Bank of America debit cards, including debit card numbers ending in:

   a. 5041 ("UI Debit Card #5041") (UI benefits paid in connection with victim D.H.);

   b. 4665 ("UI Debit Card #4665") (UI benefits paid in connection with victim S.C.);

   c. 5387 ("UI Debit Card #5387") (UI benefits paid in connection with victim D.B.);

   d. 9053 ("UI Debit Card #9053) (UI benefits paid in connection with victim S.L.);

   e. 1205 ("UI Debit Card #1205") (UI benefits paid in connection with victim M.B.);

   f. 1460 ("UI Debit Card #1460") (UI benefits paid in connection with victim S.L.);

   g. 1817 ("UI Debit Card #1817") (UI benefits paid in connection with victim A.H.); and

      h. 2972 ("UI Debit Card #2972") (UI benefits paid in connection with victim D.T.).

46. By doing so, the scammers knowingly and with intent to defraud trafficked in and used one or more unauthorized access devices, as defined in 18 U.S.C. § 1029(e)(3), and by such conduct obtained UI benefits totaling $1,000 or more during the one-year period between in and around June 2020 and in and around June 2021.

47. Bank of America mailed through the U.S. Postal Service the prepaid debit cards loaded with UI benefits to mailing addresses the scammers had provided during the application process.

48. On or about August 26, 2020, OLUWASEGUN BAIYEWU instructed TEMITOPE SULEIMAN a/k/a "Jonathan Akinfemi" to deliver payments to Copart for three vehicles.

49. On or about August 26, 2020, TEMITOPE SULEIMAN a/k/a "Jonathan Akinfemi" obtained and then transported and tendered money order number 20951701424 in the amount of $930 ("Money Order #1424"), which had been purchased on or about August 23, 2020, using UI Debit Card #1823, to a Copart location in Houston, Texas. Money Order #1424 was used for costs and fees associated with the car that OLUWASEGUN BAIYEWU purchased for CC-7 using Copart account number xxxxxx9581, which BAIYEWU controlled.

50. In or around September 2020, OLUWASEGUN BAIYEWU facilitated the export of the Hyundai Elantra to CC-7 in Lagos, Nigeria.

51. On or about September 4, 2020, OLUWASEGUN BAIYEWU agreed to purchase approximately $7,400 in money orders from IFEOLUWA DUDUBO, to be paid for in Nigerian Naira.

52. On or about September 4, 2020, OLUWASEGUN BAIYEWU instructed IFEOLUWA DUDUBO to deliver payment to Copart to pay toward vehicles that BAIYEWU had purchased using his Copart account number xxxxxx9581.

53. On or about September 4, 2020, IFEOLUWA DUDUBO agreed to sell, transport, and tender, and did sell, transport, and tender, money orders that had been purchased with UI Benefit Cards 4665, 5387, and 9053, to a Copart location in Austin, Texas, including money order numbers 26735428506 (purchased with UI Debit Card #4665), 26336560274 (purchased with UI Debit Card #5387), and 26285741572 (purchased with UI Debit Card #9053), each in the amount of $1,000, which were used to pay for costs and fees associated with vehicles purchased by OLUWASEGUN BAIYEWU using Copart account number xxxxxx9581, which BAIYEWU controlled.

54. On or about October 2, 2020, OLUWASEGUN BAIYEWU agreed to purchase approximately $11,286 in money orders from IFEOLUWA DUDUBO, to be paid in Nigerian Naira at a Naira-to-U.S. Dollar exchange rate that the two negotiated.

55. On or about October 2, 2020, OLUWASEGUN BAIYEWU instructed IFEOLUWA DUDUBO to deliver payments to Copart to pay toward vehicles that CC-5 and BAIYEWU had purchased using the Copart accounts that each controlled, respectively.

56. On or about October 2, 2020, IFEOLUWA DUDUBO agreed to sell, transport, and tender, and did sell, transport, and tender, money orders that had been

purchased with UI Benefit Cards 1205, 1460, 1817, and 2972, to a Copart location in Austin, Texas. The money orders were applied toward CC-5's and BAIYEWU's Copart accounts as follows:

   a. Money order numbers 26633492076 and 26633492087, each in the amount of $1,000 (both purchased using UI Debit Card #1460) were used to pay for costs and fees associated with vehicles purchased by CC-5 using Copart account number xxxxxx7801, which CC-5 controlled.

   b. Money order numbers 26719014363 (purchased with UI Debit Card #1205), 26336560151 (purchased with UI Debit Card #1817), and 26466720963 and 26466720974 (purchased with UI Debit Card #2972), each in the amount of $1,000, were used to pay for costs and fees associated with vehicles purchased by OLUWASEGUN BAIYEWU using Copart account number xxxxxx9581, which BAIYEWU controlled.

### *Illinois Department of Employment Security*

57. In or around June 2020 through in or around September 2020, scammers falsely misrepresented themselves as other people, including victim L.S., via the Illinois Department of Employment Security ("IDES") online UI system, in order to certify and re-certify eligibility for UI benefit and to fraudulently obtain UI benefits in victims' names. During the application process, scammers requested that victims' UI benefits be loaded onto reloadable, prepaid Green Dot debit cards.

58. By doing so, the scammers knowingly and with intent to defraud trafficked in and used one or more unauthorized access devices, as defined in 18 U.S.C. § 1029(e)(3), and

by such conduct obtained UI benefits totaling $1,000 or more during the one-year period between in and around June 2020 and in and around June 2021.

59. The prepaid debit cards issued by IDES were then used by members of the money laundering conspiracy alleged in this Superseding Indictment, both known and unknown to the grand jury, to purchase at least 185 money orders totaling approximately $157,832 from U.S. Post Office locations in New Jersey. On or around July 22, 2020, through on or around August 5, 2020, during a time when OLUWASEUN ADELEKAN was on pretrial release, he possessed at least 50 of the 185 money orders, totaling at least $49,260, and delivered them to a Copart location in Somerville, New Jersey. The money orders delivered by ADELEKAN were tendered to Copart and used to pay costs and fees associated with vehicles purchased using Copart account number xxxxxx9581, which was controlled by OLUWASEGUN BAIYEWU.

60. In or around July 2020, OLUWASEGUN BAIYEWU agreed to assist CC-5 and CC-6 with buying money orders to pay for costs and fees associated with vehicles purchased by CC-5's Copart account number xxxxxxx7801 and CC-6's Copart account number xxxxxx9008.

61. In or around July 2020, OLUWASEGUN BAIYEWU instructed OLUWASEUN ADELEKAN to deliver payment to Copart to pay toward vehicles that CC-5 and CC-6 had purchased using their Copart accounts, xxxxxx7801 and xxxxxx9008.

62. In or around July 2020, OLUWASEUN ADELEKAN agreed to sell, transport, and tender, and did sell, transport, and tender, at least $10,650 in money orders to a Copart location in Somerville, New Jersey, to pay toward vehicles that CC-5 and CC-6

had purchased using Copart accounts xxxxxx7801 and xxxxxx9008. The money orders ADELEKAN sold, transported, and tendered included:

    a.    Money order number 26160291101, tendered on or about July 21, 2020, which was purchased with UI fraud funds loaded onto a Green Dot debit card ending in 2670, used to pay for vehicles purchased by CC-5 using his Copart account number xxxxxx7801; and

    b.    Money order 26071791647, tendered on or about July 29, 2020, which was purchased with UI fraud funds loaded onto a Green Dot debit card ending in 2611, used to pay for vehicles purchased by CC-6 using his Copart account number xxxxxx9008.

During this time period, ADELEKAN was on pretrial release.

    63.    In or around August 2020, TEMITOPE OMOTAYO and OLUWASEUN ADELEKAN worked together to obtain money orders derived from UI fraud for OLUWASEGUN BAIYEWU, and to deliver and tender the money orders to Copart locations in New Jersey and New York to pay for vehicles purchased by BAIYEWU and CC-5 using the Copart accounts BAIYEWU and CC-5 controlled. During this time period, ADELEKAN and OMOTAYO were on pretrial release.

All in violation of Title 18, United States Code, Sections 1956(h) and 3147.

## FORFEITURE ALLEGATION

    64.    The allegations contained in this Superseding Indictment are realleged and incorporated as if set forth fully here for the purpose of alleging forfeiture.

65. Upon conviction of an offense in violation of 18 U.S.C. § 1956(h), as alleged in this Superseding Indictment, the defendants,

> [1] OLUWASEGUN BAIYEWU,
> [2] IFEOLUWA DUDUBO,
> [3] OLUWASEUN ADELEKAN,
> [4] TEMITOPE SULEIMAN A/K/A "JONATHAN AKINFEMI," and
> [5] TEMITOPE OMOTAYO

shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), all property, real and personal, involved in the money laundering conspiracy offense, and all property traceable to such property.

66. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

   a. cannot be located upon the exercise of due diligence;
   b. has been transferred or sold to, or deposited with, a third party;
   c. has been placed beyond the jurisdiction of the court;
   d. has been substantially diminished in value; or
   e. has been commingled with other property which cannot be divided without difficulty;

the United States shall be entitled, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b), to forfeiture of any other property of the defendants up to the value of the above-described forfeitable property.

TRUE BILL,

FOREPERSON

Date: 5/31/23

W. STEPHEN MULDROW
United States Attorney

Jonathan Gottfried
Assistant U.S. Attorney
Chief, Violent Crimes and Cyber Crimes Unit

E. Giovannie Mercado
Assistant U.S. Attorney

Amanda Liskamm
Director
U.S. Department of Justice
Consumer Protection Branch