**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff<br><br>v.<br><br>  OLUWASEGUN BAIYEWU<br><br>Defendant | CRIM. NO. 21-cr-395 (RAM) |

**DEFENDANT MR. BAIYEWU'S MOTION TO SUPPRESS
UNLAWFULLY SEIZED EVIDENCE AT HIS HOME FOR LACK
OF PROBABLE CAUSE AND FOR A *FRANKS v. DELAWARE* HEARING**

TO THE HONORABLE COURT:

The Defendant Mr. Oluwasegun Baiyewu, respectfully moves the Court pursuant to Federal Rules of Criminal Procedure, Rule 12(b)(3)(C) to conduct a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), and to suppress all evidence, as well as the fruits thereof, unlawfully obtained by the government *via* federal agent Marc Smith's material factual misrepresentations and omissions as memorialized in the agent's constitutionally infirm affidavit dated October 8, 2021 (Exhibit 1) in support of the search warrant executed in this case, as set forth below.

In this case, an innocent man's home was searched illegally relying on the affidavit of a  federal agent, who with reckless disregard for the truth provided misrepresentations and omitted material information in his affidavit presented on

1

October 8, 2023 to a U.S. Magistrate Judge in Texas to attempt to obtain evidence to charge him with federal crimes that he has not committed.

## I.      RELEVANT FACTS AND PROCEDURAL BACKGROUND

### A. Relevant Facts Omitted from The Affidavits of Agent Smith About Mr. Baiyewu's Business And Nigeria's Regulations

Mr. Baiyewu is and has been for decades a respected businessperson in Texas engaged primarily in the business of purchasing cars in the USA to export to Nigeria. He is a trained mechanical engineer, with a Master of Science in Mechanical Engineering from Texas A&M University and a Bachelor of Science in Systems Engineering from the University of Lagos in Nigeria. Mr. Baiyewu has been for decades in the business of purchasing motor vehicles in the United States for export overseas. Mr. Baiyewu is a Nigerian national and a permanent resident who has resided in the United States for over 13 years pursuant to this status.

In general terms, Mr. Baiyewu business operates on a purchase order or request system from his customers. The services he provides to his overseas customers in purchasing, transporting, and shipping the vehicles involve the following steps:

(1)     The purchasing or sourcing by proxy of vehicles from automobile auction houses or other outlets located in the Houston Metropolitan Area;

(2)     The facilitation of payment to the auction houses or the auction house account of his customer for the purchased vehicles;

(3)     The transportation of the purchased vehicles to a temporary staging area or lot for subsequent transportation to the overseas departure point, or direct transportation to the departure point, for shipping to overseas

destinations; and

(4)    The preparation of the requisite custom documentation for clearance of the purchased vehicles upon arrival at the oversea destination.

Mr. Baiyewu owns two business entities: Shipopo Autos and Shipopo LLC. He has been doing business as Shipopo Autos since September 12, 2013, (Exhibit 2), in fulfilling his business mission of purchasing, transporting, and shipping vehicles purchased in the United States for export to his overseas customers. Shipopo LLC was created on April 29, 2020. (Exhibit 3). U. S. Department of Transportation records reflect that Shipopo LLC operates as a general freight carrier with eight trucks and drivers which logged-in approximately 150,000 miles in 2020. Shipopo LLC does not transport vehicles, it is a carrier that focuses on transport of merchandise and freight that is not associated in any way with Copart.

Importantly, Mr. Baiyewu's company does not accept dollars (WIRE, CASH, CREDIT, APP money) from overseas customers, but only the Nigerian currency, Naira. His customers are required by law to facilitate payment for the purchasing, transporting, and shipping of the vehicles in Nigerian's currency, the Naira. This is due to the Central Bank of Nigeria's (the "CBN") restrictive and, oftentimes, contradictory, and confusing "Dollarization" policies.[1] The CBN has stated in its

---

[1] Chike Obianwu, *Why the Central Bank is Legally Wrong on Dollarisation*. https://www.templars-law.com/app/uploads/2015/08/Why-the-Central-Bank-is-Legally-Wrong-on-Dollarisation.pdf (Last visited on 03.27.2023).

policy circular that "it is illegal to price or denominate the cost of any product or service (Visible or Invisible) in any foreign currency in Nigeria and no business offer or acceptance should be consummated in Nigeria in any currency other than the Naira". <u>See</u> Exhibit 4.  Mr. Baiyewu's purchase orders originate in Nigeria, and he must accept the Naira from his Nigerian customers, not the USD, to facilitate the purchase, transportation, and shipping of the vehicles to Nigeria.

In some transactions, the overseas customer is the holder of a standing auction house account.  Mr. Baiyewu does not create or establish the auction account.  In transactions involving a customer's auction house account, Mr. Baiyewu draws on or deposits funds into the account to cover the costs associated with the purchasing and exporting of the vehicles.  With respect to his Nigerian customer base, Mr. Baiyewu receives funds in the Naira which must then be converted into USDs before payment on the customers behalf can be made to vehicle auction houses or other sources of the exported vehicles.

To provide these varied services to his overseas customers, Mr. Baiyewu must comply with a host of (un)usual international business customs and often complex government import/export and financial rules and regulations.

B.    **The Government Finally Produces The Affidavit By Agent Smith But Fails To Reveal that It Had to Be "Corrected" And Also Fails to Provide The Data Underlying One of The Material Misstatements**

After an unusual and unexplained long delay, on November 2, 2022, the government made available the affidavit of FBI Agent Marc Smith of October 8,

2021.[2] The affidavit is attached as Exhibit 1.  The October 8, 2021 Smith affidavit is 32 pages in length characterized by generalizations and speculation and by three key misrepresentations of fact.

The government, however, did not inform with that late production that the Smith affidavit of October 8, 2021, was "corrected" after the search of Mr. Baiyewu's home was conducted on October 14, 2021 relying on that same affidavit and its allegations of "fact." Indeed, the government used the "uncorrected" affidavit of October 8, 2021 as part of its strategy to present to another U.S. Magistrate Judge sitting in the District of Puerto Rico another affidavit dated October 13, 2021 by agent Marc Smith to obtain the Criminal Complaint in this case on October 13, 2021.  With that affidavit, agent Smith filed a criminal complaint[3] charging Mr. Baiyewu with (1) Wire Fraud under 18 U.S.C. 1343, (2) Conspiracy to Commit Wire Fraud under 18 U.S.C. 1349, and (3) Money Laundering under 18 U.S.C. 1956(a)(1)(B)(i).

The October 8, 2021 affidavit is not "corrected" as to a key and material misrepresentation of fact made by agent Smith until October 27, 2021, as explained below, and not by agent Smith, but by an Assistant U.S. Attorney from Texas.

---

[2] As the Court is aware the affidavit was produced full of redactions which were objected to by Mr. Baiyewu.
[3] The Complaint was also signed by Special Assistant United States Attorney John Auchter, an FBI Special agent himself with a law degree who as he informed the undersigned attorneys, he was doing a one-year stint at the US Attorney Office in Puerto Rico.

On October 14, 2021, Agent Smith, along with other law enforcement personnel, arrested Mr. Baiyewu at his home in Richmond, Texas, located in the Southern District of Texas with the October 13 affidavit and conducted an extensive search of is home and his property, all without having probable cause, as explained below.

To conduct the search of Mr. Baiyewu's home, law enforcement relied on a search warrant issued by the United States District Court for the Southern District of Texas based entirely on agent Smith's affidavit of October 8, 2021. Relying on the allegations of fact, generalizations, conclusions and rank speculation in Smith's October 8, 2021 affidavit, federal agents seized the following items from Mr. Baiyewu's home: one Security DVR, (2) one Apple iPhone, (3) one Samsung phone, (4) one Apple Mac Laptop computer, (5) one HP Desktop computer, (6) business records of Shipopo LLC, and (7) one Dell Desktop computer.[4]

As it is obvious from reading the lengthy affidavit of October 8, 2021, agent Smith presented a lot of irrelevant information and even speculation ("may have used"; "that appears to be controlled by"; "my suspicion that Baiyewu plays a role"), which has nothing to do with whether there is any probable cause that Mr. Baiyewu

---

[4] All items seized from Mr. Baiyewu's home, which should be suppressed under the doctrine fruit of the poisonous tree, were eventually searched pursuant to a warrant issued by a U.S. Magistrate Judge In Puerto Rico on November 5, 2022 based on a 35-page affidavit, containing five pages of attachments, which was also authored by Smith was subsequently transported to the FBI's San Juan, Puerto Rico Field Office.

committed a violation of federal criminal law.  Instead, page after page of the October 8 Smith affidavit is dedicated to generalizations and conclusory allegations about agent Smith's investigation (paragraph 5 "since October 22, 2000") into "large scale laundering of funds" and to show definitions of technical terms as if that were a substitution for a showing of probable cause.  See Exh. 1, at 24-27.

Tellingly, Smith intentionally omits informing the U.S. Magistrate Judge that Mr. Baiyewu has been in the business of exporting vehicles overseas for over seven years (as of the date of the affidavit) *via* Shipopo Autos, and that Shipopo LLC is a freight transport company with eight vehicles/drivers that logged-in approximately 150,000 miles during 2020 (the relevant period of Mr. Baiyewu's alleged participation in the conspiracy).  Shipopo LLC does not transport vehicles.

Agent Smith also did not inform the U.S. Magistrate Judge of Nigeria's restrictive Dollarization policies with respect to business offers and acceptances originating in Nigeria where Eghaghe was located.  Those facts are an inconvenient truth for agent Smith.

In his affidavit of October 8, 2021, agent Smith makes material misrepresentations and omissions of fact with a reckless disregard for the truth, which were essential to persuade the Magistrate Judge to make the prerequisite neutral finding of probable cause before issuing the search warrant, issued on October 8, 2021.  The affidavit of agent Marc Smith of October 8, 2021 contains three (3) key misstatements of facts made with the intent and purpose by agent Smith of

establishing a semblance of probable cause where there was no probable cause to search Mr. Baiyewu's home.  Without those misstatements, the government has no probable cause to search Mr. Baiyewu's home and seize the items it seized.  As explained below, those three (3) misrepresentations made by agent Smith are the key component of the probable cause showing in his affidavit.

Read carefully, there is no substance to the Smith affidavit, except his three key misrepresentations.  The statements about the "alleged summary of probable cause" in paragraphs  5-7  are wholly conclusory, suppositional, and are embedded into the affidavit like a proverbial smoke bomb to be dispersed in the case with  speculative allegations, instead of concrete facts. When in paragraph seven of his affidavit, agent Smith describes Mr. Bayou as an apparent money mule/money mule organizer, see Exhibit 1, at page 5, ¶7, agent Smith is offering his speculation as he has no evidence at all to support that assumption, which is incorrect.

In paragraphs 8-15, aside from referencing the e-mail fraud to the Puerto Rico victim and identifying Michael Crosby, Blossom Eghaghe and Collins Eneh, agent Smith does not identify, or describe or link the "certain conspirators" to Mr. Baiyewu or what part Mr. Baiyewu played in "which" of the two BEC conspiracies being referenced in his affidavit or if they are part of some other conspiracy. No facts are provided to connect Mr. Baiyewu to any criminal conspiracy or to any violation of federal law.  As agent Smith admits the investigation involves other districts, none of which charged Mr. Bayou with anything.  But it sounds good to create "suspicion."

8

Paragraph 16 is the set up for the first big misrepresentation by agent Smith. Smith mentions payments in money orders and that Mr. Baiyewu "hand-delivered to Copart, on five separate occasions in 2020, at least 31 money orders. totaling $30.088. Those money orders were applied toward payment to Emperor Auto's Copart account." See Exhibit 1, at 11, ¶16. Agent Smith fails to inform the U.S. Magistrate Judge in Texas that Mr. Baiyewu has been in the business of exporting vehicles overseas for over seven years (as of the date of the affidavit) *via* Shipopo Autos, and that Shipopo LLC is a freight transport company with eight vehicles/drivers that logged-in approximately 150,000 miles during 2020, or that Mr. Baiyewu employs Shipopo LLC to physically transport vehicles to their respective shipping points.

Importantly, agent Smith does not describe the manner in which Mr. Baiyewu received the $30,088 from Eghaghe, in what type of currency the funds were received, what increments the funds were received, and who purchased the money orders (or "cashier's check") or where they were purchased. Nor does Smith identify which of the "BEC schemes involving different victims" the allegedly illicit proceeds were derived from or what Mr. Baiyewu's connection was to the alleged scheme or victims. Smith's representations and omissions appear to be designed to cast legitimate vehicle export transactions to Nigeria in a sinister light in the eyes of the U.S. Magistrate in Texas. And it is a perfect set up for the key misrepresentation Smith is about to tell in paragraph 17.

Paragraph 17 is key to the scheme by agent Smith to obtain probable cause by offering misstatements of fact made with reckless disregard for the truth. Tellingly, Smith refers to data that he obtains from US Customs and Border Protection, which was never produced in discovery throughout 2021 and 2022 and which Mr. Baiyewu had to request and was finally produced on January 23, 2023.  This is the first misrepresentation in paragraph 17 of the affidavit:

> I obtained data from U.S. Customs and Border Protection ("CBP'") concerning the vehicles purchased by EGHAGHE/Emperor Auto Advantage. Those records confirm that all of the vehicles purchased by EGHAGHE/Emperor Auto Advantage from Copart were shipped to Nigeria. Moreover, those records reflect that a Texas company controlled by BAIYEWU Shipopo Autos, located at 11450 Bissonnet controlled by BAIYEWU Shipopo Autos, located at 11450 Bissonnet St., Suite 77099, in Houston, Texas- is listed in CPB records as the "US Principal (Exporter)" of the 2006 Toyota Sienna paid for by the Copart cashier's check delivered by CROSBY that is described above in Paragraph 14. "Shipopo Autos" or "Segun Baiyewu" (i.e. BAIYEWU) is listed as the "US Principal Exporter" for 17 out of 46 vehicles purchased by EGHAGHE/Emperor Auto Advantage between April20, 2020 and January 14, 2021. Notably, the payments delivered to Copart by BAIYEWU, which were applied toward 11 vehicles and fees for 5 relisted vehicles, went to pay for only 7 vehicles BAIYEWU shipped, according to CBP records. He also delivered payments toward 2 vehicles that other entities (Wheelzy LLC in Orlando Florida, and Aminu Monsor, in Atlanta, Georgia) shipped. This indicates that BAIYEWU's involvement in the scheme is not limited to his role as an exporter of vehicles.

The data actually does not reflect or support Smith's conclusion, which were misrepresentations of fact by Smith to convince a United States Magistrate  Judge in

Texas to issue a warrant to search Mr. Baiyewu's home. The CBP data is attached hereto as Exhibit 5.[5]

Here is what the CBP data reflects: Emperor Auto Advantage uses nine (9) different shippers to transport the 47 vehicles listed on the CBP records referenced by Agent Smith, and one (1) of the shippers is Shipopo Autos.

Mr. Baiyewu did in fact help transport and arrange for shipping of a Toyota Sienna which the government alleges was paid for with BEC proceeds. However, at no point does agent Smith mention that there is no evidence that Mr. Baiyewu knew who paid for the vehicle, or where the funds came from that were used to pay Copart for the Toyota Sienna. In fact, Mr. Baiyewu has never communicated with the people who made the payment for the vehicles as he was paid to transport directly by Mr. Engaghe.

Mr. Baiyewu has never communicated with any other individuals involved in the BEC operation which was used to pay for Mr. Engaghe's account. Mr. Baiyewu has no knowledge or any reason to suspect that Engaghe, an allegedly reputable attorney and long-time car dealer in Nigeria, engaged in any way with any sort of fraud. Mr. Baiyewu has transported vehicles for Copart account holders thousands of

---

[5] It should be mentioned that the government failed to produce the CBP data in a timely fashion.

times, he has no reason to suspect that one of the vehicles he is transporting or paying for is in any way involved in an alleged money laundering conspiracy.[6]

Agent Smith also states in paragraph 17 that Mr. Baiyewu pays for 11 cars on Mr. Engaghe's account, but that Mr. Baiyewu only ships 7 of these cars he paid for. Again, there is nothing illegal or suspicious about those transactions (except in agent Smith's mind). If agent Smith had conducted the required investigation or due diligence, he would find out that Mr. Baiyewu often makes a nominal fee to take a payment to another Copart account. Often that account owner chooses to ship or transport those vehicles with another carrier or transportation method. Most importantly, Agent Smith fails to mention that the funds that Baiyewu uses to make payments on Engaghe's account are not tied to any illegal activity. Agent Smith places the facts that Mr. Baiyewu applies payments towards Engaghe's account to mislead after agent Smith states that Crosby directs payments from BEC proceeds to be applied towards Mr. Engaghe's account. Mr. Baiyewu has no connections whatsoever to the BEC operation, therefore Agent Smith attempts to create the suspicion of a connection between the BEC conspirators and Mr. Baiyewu when there is none and he knows it.

---

[6] Mr. Baiyewu, nevertheless, investigates any potential client to confirm their legitimacy. After confirming that Mr. Engaghe was a reputable attorney and longtime car dealer in Nigeria he decided to do legitimate business with Mr. Engaghe in line with his normal business practice of paying for Copart account holders bids and sometimes also transporting or shipping those vehicles.

In the CBP records provided by the government, see Exhibit 5, there are 9 different shippers listed as different individuals/entities that Mr. Engaghe used to ship or transport vehicles. Depending on the location of the vehicles Mr. Engaghe may have found a less expensive shipper, or Mr. Baiyewu may simply not have been able to ship from the vehicle's location or to the location Mr. Engaghe needed the vehicles to be shipped.

If agent Smith investigated, he would find that Mr. Baiyewu often makes payments for Copart account holders and does not ship or transport those vehicles. According to Agent Smith's interpretation of the data and the information in the CBP records, anyone who shipped vehicles or made payments on Mr. Engaghe's Copart would be subject to a search and arrest regardless of there being no evidence of knowledge or suspicion of knowledge that Mr. Engaghe was somehow involved in the BEC alleged conspiracy or money laundering. The fact that Mr. Baiyewu makes a payment on Mr. Engaghe's Copart account but sometimes does not also ship the vehicle he pays for is in no way suspicious and is in no way supportive of probable cause; it is simply a customary business transaction. In sum, Paragraph 17 has no facts that help establish probable cause, but agent's Smith misleading opinion of the data.

In other words, there was nothing nefarious or suspicious about this regularly conducted business activity and transactions. That misstatement made with reckless disregard of the truth allows agent Smith to tell the Court that Baiyewu is engaged in

some form illegal transactions behind the scenes, based on data that if analyzed with proper investigation, proves otherwise. Indeed, this Honorable Court must consider that the Smith affidavit lacks sufficient specific facts from which a reasonable person can determine and corroborate the veracity of the statements submitted.

To bolster his misrepresentation about the CBP data, agent Smith then relates in his affidavit in paragraph 18 one alleged incident that occurred at a bank with Mr. Baiyewu, which has nothing to do with money laundering but allows agent Smith to cast more doubt about Mr. Baiyewu's character and create false "suspicion."

Agent Smith's affidavit, however, is not based on just that misrepresentation in paragraph 17. Accordingly, in paragraph 19(a) of his affidavit, Smith next meshes up two unrelated transactions: One involving normal banking business of Mr. Baiyewu's business with a completely unrelated transaction with one of the money mules. Even from the affidavit it is obvious that there is no connection whatsoever of the alleged money mule to Mr. Baiyewu, but it does not matter. Agent Smith is determined to make up probable cause, or the semblance of it, to search Mr. Baiyewu's house, even if as it is obvious by paragraphs 19 through 27 there is no basis or foundation for a finding of probable cause.

In paragraph 20 through 27, agent Smith again refers to other alleged conspiracies, including one being prosecuted in New York. But Smith has not provided facts of any illegal conduct by Mr. Baiyewu or even indicating that Eghaghe has purchased any vehicles using funds fraudulently obtained by "the BEC

conspiracy" or any conspiracy.  He fails to mention the Nigerian regulations about Naira and to specify which BEC conspiracy is being referenced and how or where the alleged illicit proceeds were obtained. None of the allegations in paragraph 20 through 27 fail to connect Mr. Baiyewu to any criminal offenses; it is all rank speculation and conclusory allegations by agent Smith.

In paragraph 26 of his affidavit, agent Smith refers to information obtained from the WhatsApp application, but none of that information connects Mr. Baiyewu to any of the named participants, except for the misrepresentation that agent Smit is about to tell the Court in paragraph 28. That is a very consequential misrepresentation by agent Smith.

Accordingly, in paragraph 28 of his affidavit, agent Smith swears to a United States Court that records from WhatsApp showed that one of the named targets who was already indicted in the Southern District of New York -- Collin Eneh -- and Mr. Baiyewu, whose residence was sought to be searched, were in communication via WhatsApp. Here is the blatant misrepresentation:

> ENEH has and continues to regularly communicate with a WhatsApp user associated with the telephone number+ 13612280030. Notably, this is the phone number for the registered user of the email account segunbaiyewu@yahoo.com, i.e. **BAJYEWU,** who resides at the Subject Premises.

See Ex. 1, at 19, ¶28 (emphasis in original). That was the most important misrepresentation made with reckless disregard for the truth by agent Smith to create the semblance of probable cause. It was a big, big lie by Smith.  In fact,

the WhatsApp records reject that incorrect assertion by Smith; the WhatsApp records reflected completely separate and unrelated communications between Mr. Baiyewu and a longtime customer Blossom Eghaghe, which were not related at all to Collin Eneh.[7] Contrary to the false allegation made by agent Smith, Mr. Baiyewu never, ever communicated with Collin Eneh.

With that misrepresentation, agent Smith has made up what he cannot show if he acted respecting the truth; probable cause. Agent Smith knew or showed reckless disregard for the truth as on October 27, 2021, an AUSA from Texas corrected the incorrect representations made by agent. Tellingly, agent Smith never corrected those incorrect allegations and misstatements. When agent Smith came before a U.S. Magistrate Judge in Puerto Rico a few days later on October 13, 2021 to obtain an arrest warrant and to search the items seized on October 8, 2021, agent Smith did not correct the misrepresentation on paragraph 28.

In the remainder of the Smith affidavit, Paragraph 32 through 37 are simply irrelevant information, which has nothing to do with showing probable cause but are presented to show agent Smith alleged knowledge of technical aspects of phones and computers.

---

[7] The government throughout 2021 or even most of 2022 did not disclose this -- it calls it a "factual error" -- until it was confronted with such "factual error" of agent Smith, although the allege correction was made back in 2021.

16

## II.   <u>ARGUMENT</u>

## A.   **THE SEARCH OF MR. BAIYEWU'S HOME AND THE SEIZURE OF HIS BELONGINGS, AND HIS ILLEGAL ARREST WERE ALL CONDUCTED IN VIOLATION OF THE FOURTH <u>AMENDMENT TO THE UNITED STATES CONSTITUTION</u>**

The Fourth Amendment to the United States Constitution provides, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated....". Evidence obtained in violation of the Fourth Amendment is subject to exclusion. <u>See</u> <u>Mapp v. Ohio</u>, 367 U.S. 643, (1961); <u>see also</u> <u>Weeks v. United States</u>, 232 U.S. 383 (1914).

Under the Fourth Amendment, "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation…" U.S. CONST. amend. IV. Mr. Baiyewu respectfully moves to suppress evidence seized in or derived from the illegal seizure and search of his home and belongings, and the illegal arrest of his person on October 14, 2021. Because the seizure and search of his home and belongings was made based on an affidavit with material misrepresentations of fact, the search of his home and subsequent seizures were made without probable. Respectfully, the government bears the burden of proof, and the Court should convene an evidentiary hearing based on *Franks v. Delaware* as further explained in this motion.  As is obvious from the discussion of the allegations made in paragraph 17 and 28, if agent Smith's deliberate falsehoods or reckless disregard for the truth were set aside, probable cause would not exist on October 8, 2021 to search Mr. Baiyewu's home.

In *Franks,* the Supreme Court held:

> There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons.

> Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.

*Franks v. Delaware*, 438 U.S. at 171-172.  This rule was enforced in *Aponte Matos v. Toledo Dávila*, 135 F.3d 182, 187 (1st Cir. 1998), in which the First Circuit held that the use of false statements to obtain a warrant, where the false statements are necessary to the finding of probable cause, violates the Fourth Amendment's warrant requirement creating Fourth Amendment liability redressable under clearly established law.

In his affidavit of October 8, 2021, agent Smith presents no facts that even remotely indicate that Mr. Baiyewu has been in any form of contact with Collins Eneh (or with Crosby) or that he had the intent to violate any federal law. Blossom Eghaghe and Emperor Auto's appear to have had some business dealings with Eneh, but such

dealing are not evidence against Mr. Baiyewu in any form.  Mr. Baiyewu has been a vehicle exporter since 2013 and collaborates with multiple customers, including Eghaghe, exporting multiple vehicles from the United States to Nigeria.  There is nothing inherently suspicious about an exporter receiving funds in a foreign currency from an overseas client, converting the funds into USDs, and depositing the funds into the client's auction account at the client's direction.  Unless, of course, the person observing these transactions is unfamiliar with the usual business practice in this area of commerce.

Paragraph 17 of his affidavit agent Smith is made with reckless disregard for the truth as the data that he obtains from US Customs and Border Protection the CBA does not show at all any illegal activity or anything nefarious or suspicious.

Yet agent Smith knows he does not have probable cause so he deliberately or with reckless disregard for the truth represent to the Court that records from WhatsApp showed that Mr. Baiyewu was in communication via WhatsApp with Collin Eneh, an individual who was indicted in in the Southern District of New York and charged "with conspiracies to commit money laundering and bank fraud, for his role in organizing money mules in a conspiracy that laundered funds from BECs that victimized entities in Germany, Malaysia, China, South Korea, the U.S., and Fiji, and a romance scam in Pennsylvania." That deliberate lie told by Smith to link Mr. Baiyewu with Collin Eneh was purposeful to obtain what agent Smith did not have; probable cause.

In _Franks v. Delaware_, 438 U.S. 154 (1978), the Supreme Court established the right of a criminal defendant to a hearing to attack under the Fourth Amendment the statements contained in an affidavit prepared by a law enforcement agent in support of his or her application for a search warrant. In other words, a Franks hearing is the vehicle by which a defendant can challenge a search warrant by impeaching the affiant. _United States v. Adams_, 305 F.3d 30, 36 n.1 (1st Cir. 2002). There are two specifics showings a defendant, such as Mr. Baiyewu has to make under _Franks_.

First, in order to obtain an evidentiary hearing, the defendant must make "a substantial preliminary showing that: (1) a statement in the affidavit was knowingly and intentionally false, or made with reckless disregard for the truth, and (2) the falsehood was necessary to the finding of probable cause." _United States v. Strother_, 318 F.3d 64, 69 (1st Cir. 2003)(citing _Franks v. Delaware_, 438 U.S. at 171-72). Second, if the defendant establishes his entitlement to a hearing, then it is incumbent upon him or her to demonstrate at said hearing and by a preponderance of the evidence that the affidavit indeed contained deliberately false statements or statements made with reckless disregard for the truth. _Franks v. Delaware_, 438 U.S. at 156. In the event that, with the perjured statements set to one side, the remaining contents of the affidavit are insufficient to establish probable cause, the warrant must be voided by the Court and the fruits of the search must be excluded. _Id._

In this case, Mr. Baiyewu has made a substantial preliminary showing that the affidavit of agent Smith contains misrepresentations and false statements regarding

the facts to make a showing of probable cause. Such misrepresentations and false statements were critical to the U.S. Magistrate's Judge's finding of probable cause. Accordingly, Mr. Baiyewu is entitled to an evidentiary hearing to further demonstrate that the search warrant that authorized the search of his home at issue here must be voided and the evidence suppressed.

**B.    THE FRUIT OF THE POISONOUS TREE APPLIES IN THIS CASE TO INVALIDATE  ALL SEIZURES AND SEARCHES**

The exclusionary rule requires suppression of direct and indirect ("poisonous fruit") physical and verbal evidence obtained during, or as a direct result of, a Fourth Amendment violation. *See Wong Sun v. United States*, 371 U.S. 471, 484-85 (1963). "[T]he indirect fruits of an illegal search or arrest should be suppressed when they bear a sufficiently close relationship to the underlying illegality." *United States v. Camacho*, 661 F.3d 718, 728–29 (1st Cir. 2011) (quoting *New York v. Harris*, 495 U.S. 14, 19 (1990)).

As such, the search and seizures taken  are "fruit of the poisonous tree" and the link from his arrest to the time he made them is not attenuated.  *See Wang Sun v. United States*, 371 U.S. 471, 488 (1963).

The Supreme Court in *Brown v. Illinois*, 422 U.S. 590 (1975) and *United States v. Finucan*, 708 F.2d 838 (1st Cir. 1983).  *Brown* spelled the following factors relevant to the taint/attenuation analysis: (1) the time that elapsed between the underlying illegality and the later acquisition of the evidence at issue; (2) the presence or absence

21

of intervening circumstances between those points in time; and (3) the purpose and flagrancy of the official misconduct in question. _Brown_, 422 U.S. at 603–04. "[T]he indirect fruits of an illegal search or arrest should be suppressed when they bear a sufficiently close relationship to the underlying illegality." _United States v. Camacho_, 661 F.3d 718, 728–29 (1st Cir. 2011) (quoting _New York v. Harris_, 495 U.S. 14, 19 (1990)).

The close temporal proximity between the invasion Mr. Baiyewu's home which allowed the government to illegally seize his computer and cellular phones took place simultaneously, as agent Smith was able to seize them on October 14, 2021, shortly after he obtained the warrant based on his misrepresentations in paragraphs 17 and 28 made on October 8, 2022.

In determining whether "intervening circumstances may have purged the taint of a prior illegality, we look not at the defendant's conduct, but rather at intervening event[s] of significance that render inapplicable the deterrence and judicial integrity purposes that justify excluding tainted evidence." _United States v. Washington_, 387 F.3d 1060, 1073–74 (9th Cir. 2004) (citing _United States v. Perez–Esparza_, 609 F.2d 1284, 1289, 1290 n. 3 (9th Cir. 1979). "Intervening circumstances that militate in favor of attenuation must be sufficiently important to ensure that potentially tainted evidence was 'come at by way of' some process _other than the exploitation of an illegal search_." _Washington_, 387 F.3d at 1074 (citing _Wong Sun_, 371 U.S. at 487–88). As it is obvious from the timing, Mr. Baiyewu submits that there are no

intervening circumstances between the illegality of the search of his home and the person who produced the seizure of his computers and cellular phones. As such, this Court should not find any intervening circumstances between the illegal search which resulted in Mr. Baiyewu's arrest and the seizure of the cellular phone and computers, from which the criminal data were extracted were performed in a constitutional fashion, or that the later search warrant application and perjured affidavit thus, that would render the government agents' actions constitutionally sufficient to purge the primary taint of the unlawful invasion." *See* _United States v. Perez-Esparza_, 609 F.2d 1284 (9th Cir. 1979).

## III.    CONCLUSION

In this case, the government violated Mr. Baiyewu's rights secured under the Fourth Amendment of the United States Constitution by filing an affidavit, which as this motion shows with definite, specific, detailed facts, contained material misrepresentations and omissions. Respectfully, the Honorable Court is requested to order a _Franks_ evidentiary hearing to uncover all the facts supporting the suppression of the evidence illegally obtained by the government in violation of Mr. Baiyewu's constitutional rights and to apply the fruit of the poisonous tree doctrine to exclude any and all evidence as it was derived from a warrant that was illegally obtained.

I HEREBY CERTIFY that today, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such to the Assistant United States Attorneys and all counsel of record.

In San Juan, Puerto Rico, this 23rd day of June 2023.

By:    **s/Carlos M. Sánchez**
Carlos M. Sánchez La Costa
Attorney for Mr. Baiyewu
USDC No. 209410
Attorney for Defendant
P.O. Box 9023027
San Juan, PR 00902-3027
Tel:    (787) 729-4646
csanchez@sanchezlawpr.com

**s/David M. Paz**
David Paz
SBN 24056111
Attorney for Mr. Baiyewu
1001 Texas St., Suite 570
Houston, TX 77002
Tel.: 281-743-7559
Fax: 281-377-5047
Email: pazandassociates@hotmail.com