**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| | * | |
| vs. | * | **CRIM. NO. 21-CR-395 (RAM)** |
| | * | |
| OLUWASEGUN BAIYEWU, *et al* | * | |
| | * | |
| Defendant | | |

---

**DEFENDANT OLUWASEGUN BAIYEWU'S MOTION TO SUPPRESS THE
SUBSEQUENT ARREST AND SEARCH WARRANTS FOR LACK OF
PROBABLE CAUSE AND FOR A *FRANKS* HEARING**

---

Defendant Oluwasegun Baiyewu, through his counsels of record, respectfully moves this Honorable Court pursuant to Rule 12(b)(3)(C) of the Federal Rules of Criminal Procedure to suppress all evidence, as well as the fruits thereof, unlawfully obtained by law enforcement *via* federal agent Marc Smith's affidavit in support of the arrest warrant of October 13, 2021, and the search warrants of November 5, 2021, executed in this matter, and for a *Franks* hearing, as set forth below.

## I.    Procedural And Factual Background

The factual background relating to Mr. Baiyewu, his two businesses, the Nigerian Naira and regulations relating to it, and other facts that are material but were omitted from FBI Agent Smith's affidavits is set forth in Mr. Baiyewu's Motion filed at Docket 98.  Respectfully it will not be repeated here, and it is incorporated by reference.

For purposes of this motion to suppress for lack of probable cause and for

a *Franks* hearing, Mr. Baiyewu points out that the first affidavit of FBI Agent Marc Smith dated October 8, 2021, is the subject of the motion filed at Docket 98 and is based on material misrepresentations, generalizations, and speculation. Indeed, one of the material representations in the October 8, 2021, affidavit where agent Smith misrepresents the data from the Custom Border Patrol ("CBP") is repeated at paragraph 17 of his November 5, 2021, affidavit *verbatim.*[1]

## II.    The Affidavits With Misrepresentations And Full of Irrelevant information Lack Probable Cause

### A.    The October 13 Affidavit

The affidavit dated October 13, 2021, by agent Marc Smith used to obtain the Criminal Complaint in this case on October 13, 2021, lacks any element of probable cause. The affidavit is attached as Exhibit 1. Probable cause to search exists when police demonstrate "a fair probability that contraband or evidence of a crime will be found in a particular place ." United States v. Khounsavanh, 113 F.3d 279 , 283 (1st Cir . 1997 ) (quoting Illinois v . Gates , 462 U.S. 213, 238 (1983)) . As explained herein, the information set forth within the "four corners" of agent Marc Smith's affidavit of October 13, 2021, in support of the arrest warrant issued in this case against Mr. Baiyewu failed to provide sufficient probable cause for the issuance of the warrant.

In his October 13, 2021, the first thing agent Smith did to obtain the issuance of a criminal complaint against Mr. Baiyewu and a warrant for his

---

[1] The November 5 affidavit is attached as Exhibit 2.

arrest is mentioned in the first paragraph of his affidavit. In that paragraph, agent Smith highlights and emphasizes to the Court that the Texas Federal District Court already issued a warrant to search the home of Mr. Baiyewu on October 8, 2021. Any fair minded and reasonable judge who reads that another federal court has already issued a search warrant for Mr. Baiyewu's home would necessarily weigh that representation in favor of issuing another warrant.

The affidavit by Smith of October 13, 2021, alleged violations of 18 U.S.C. 1343 (Wire Fraud), 18 U.S.C. 1349 (Conspiracy to Commit Wire Fraud), and 18 U.S.C. 1956(a)(1)(B)(i) (Money Laundering). As Exhibit 1 shows, a considerable portion of Smith's affidavit is comprised of boiler-plate language with respect to the agent's law enforcement training and investigative experience, the *modus operandi* of BEC schemes in general, techniques employed to launder the ill-gotten proceeds, and a myriad of technical terms, definitions, and explanations with respect to computers and storage devices.

Significant portions of the affidavit provide a generalized description of the BEC scheme being investigated in Puerto Rico. Again, the focus of the affidavit appears to be a futile attempt to connect through speculation and innuendo Mr. Baiyewu to fugitive Collin Eneh and Michael Crosby *via* Mr. Baiyewu's longstanding legitimate business relationship with Blossom Eghaghe and Eghaghe's Emperor Autos.

Once the affidavit is cleansed of Agent Smith's conclusory and speculative statements, and misrepresentations, including about what the CBP data showed, nothing remains but sophistry and speculation, and material omissions,

3

which does not support the issuance of a criminal complaint and arrest warrant based on the facts provided in Smith's affidavit.  If the Court "consider[s] the ' totality of the circumstances ' stated in the affidavit ." <u>United States v . Ti em Trinh</u>, 665 F . 3d 1 , 10 (1st Cir . 2011 ) (quotations omitted), there is no probable cause.

### Introduction and Agent Background

Paragraph 4 merely states Smith's belief that based upon his training and experience, and the "facts" he intends to include in the affidavit, that Mr. Baiyewu has violated 18 U.S.C. 1343, 18 U.S.C. 1349, and 18 U.S.C. 1956(a)(1)(B)(i).  But Smith's beliefs and his failure to investigate and understand the context of buying and selling cars and exporting them to Nigeria is not evidence, but mere innuendo and speculation and omissions about material facts.

### The Allegations In The October 13 Affidavit About the BEC Conspiracy Have Nothing to Do With Mr. Baiyewu

Paragraphs 5-8 describe the BEC prosecution in the Southern District of New York, and there is no reference to Mr. Baiyewu or Blossom Eghaghe or any factual averments connecting the two to that BEC conspiracy.

In paragraph 9, Smith states in conclusory fashion that Mr. Baiyewu:

> … uses Shipopo (sic) to **launder funds to certain conspirators** located overseas by exporting vehicles purchased from Copart, Inc. ("Copart") to Nigeria.  From May 2020 through December 2020, Baiyewu used Shipopo (sic) to export 17 vehicles to [Blossom] Eghaghe in Nigeria.  On six separate occasions in 2020, Baiyewu delivered 31 money order totaling $30,088 to Copart to apply to account #877801 [a standing online vehicle auction account held by Eghaghe] for vehicle auctions which Eghaghe had won.  ***It is believed the cashier checks which Baiyewu delivered consisted***

4

*solely of the proceeds of BEC schemes involving different victims*...

(emphasis added).  That mélange of allegations shows two things: (1) Smith's willingness to misrepresent facts or his willful ignorance of the truth; and (2) the speculative nature of Smith's allegations.  It also shows material omissions as Smith fails to inform the Magistrate Judge that Mr. Bauyewu has another entity named Shipopo Autos, that he has used for many years to do business purchasing, transporting, and shipping vehicles purchased in the United States for export to his overseas customers. That conclusory allegation that Mr. Baiyewu "uses Shipopo to launder funds to certain conspirators..." is a misrepresentation as Smith has no evidence to support it except his speculation and false belief, which shows intentional or reckless disregard for the truth.

Paragraph 10 of the Smith affidavit describes Collins Eneh as a money broker and his activities in "the" conspiracy, but fails to specify any connection of Collins Eneh to Mr. Baiyewu and whether agent Smith is referring to the Southern District of New York's BEC prosecution, the Puerto Rico BEC investigation, both, or some other BEC conspiracy. Notably, that is the same Collins Eneh which agent Smith falsely claimed in the first affidavit of October 8 (Docket 98) was communicating with Mr. Baiyewu, a key misrepresentation that was never corrected by agent Smith in the District of Puerto Rico.  And, continuing with his conduct of omitting material information on October 13, 2023 (and again on November 5, 2023) agent Smith never informed the U.S. Magistrate Judge in Puerto Rico that he made that material "error" or that a subsequent correction was made in the Southern District of Texas.  Agent

Smith's conduct of omissions begs the question; if this was a "minor error", as the government repeatedly claims, why did agent Smith hid it from U.S. Magistrate Judge Morgan on October 13 and again on November 5, 2023?

In paragraph 11, Smith states, again in a conclusory fashion, the following:

> ... Eghaghe uses Copart account #877801 to purchase vehicles located throughout the U.S. ***using funds fraudulently obtained by the BEC conspiracy. Eghaghe then directs other conspirators, including Baiyewu, to export these vehicles to Nigeria. Once the vehicles are imported into Nigeria, Eghaghe and certain other members of the BEC conspiracy sell the vehicles and distribute the proceeds amongst members of the conspiracy.***

(emphasis added). That is another misrepresentation as there is no evidence at all that Eghaghe "sold a vehicle in Nigeria" and "distributed the proceeds" to Mr. Baiyewu. That is simply false; Mr. Baiyewu was not paid by Eghaghe for the sale of a vehicle in Nigeria, but for the regular and customary services he provided to Mr. Eghaghe throughout many years of conducting business, including purchasing the vehicle in Copart and shipping it or just shipping the vehicle purchased by Eghage or one of his customers.

Paragraph 12 describes how Michael Crosby was introduced to Collins Eneh through Joshua Fitten, who was convicted in the Southern District of New York BEC prosecution. What is the connection between Crosby, Eneh and Baiyewu? Nothing, at all except Smith insinuations and his false representation in the prior affidavit of October 8. True to form, Smith concludes that Crosby "recruits money mules" and "also helps launder funds to [again, unidentified] certain conspirators located overseas via... the purchase of vehicles from Copart,

6

which are then exported to Nigeria and sold or used by the conspirators." In other words, through basic innuendo and speculation, agent Smith wants the Court to find something nefarious in his general allegations that implicate Mr. Baiyewu.

In his November 5, 2021 affidavit, to search and seize the property he seized from Mr. Baiyewu and from Mr. Baiyewu's home, agent Smith again on the very first paragraph relies on the "Search Warrant issued [October 8, 2021] by the District Court for the Southern District of Texas". See Exhibit 2, at 2, ¶1. Tellingly, neither agent Smith nor the AUSA in the case, SAUSA John Auchter informed U.S. Magistrate Judge Morgan that the October 8 affidavit by Smith contained a very material misrepresentation that was "corrected" in Texas.

Importantly, as the items seized from Mr. Baiyewu's home were seized in violation of the U.S. Constitution, the exclusionary rule applies to prevent the government from using any evidence obtained from any of those items. The fact that agent Smith later obtained a warrant to search for the items is irrelevant as they were seized by violating Mr. Baiyewu's Fourth Amendment rights and any evidence gathered from the items is the fruit of the poisonous tree.

### The Allegations About The Laundering of the Puerto Rico BEC Scheme Proceeds Have No Connection With Mr. Baiyewu

Paragraphs 19-22 describe Michael Crosby and Collins Eneh's activities with respect to the transfer and laundering of proceeds from, one would surmise, the Puerto Rico BEC scheme, but there is no reference to Mr. Baiyewu or Blossom Eghaghe.

In paragraph 23, and following his script, Smith states that:

> … Eghaghe had sent a 4 million Nigerian Naira (approximately $9,700) **wire transfer** to Baiyewu with the memo '[f]urther deposit toward payment for $30k Range Rover.' **These funds represent the proceeds of a BEC scheme involving a different victim.** On or about October 22, 2020, Baiyewu made a payment to Copart of $2,996 which consisted of two $1,000 MoneyGram money orders and one $996 Kroger money order. **A portion of this payment was applied to the 2014 Land Rover Range Rover.**

(emphasis added). So what? None of those allegations show a fair probability that Mr. Baiyewu committed a crime. But more importantly, agent Smith allegations are false as none of those payments were applied to Range Rover as Mr. Baiyewu refunded the Naira money ($9700) back to Eghage. In fact, as agent Smith knows, the Range Rover was paid by Collins Eneh and Mr. Baiyewu merely received instruction from Eghage (not Eneh) to ship it to Nigeria as it his regular business practice.

According to Smith, the international wire transfer of 4 million Naira (the Nigerian currency) from Blossom Eghaghe to Mr. Baiyewu is a serious breach in a professional money launderer's protocol in that there is no attempt to conceal the source or recipient of the funds. And, once again, Smith concludes these funds are the proceeds of a BEC scheme with a different victim without referencing which BEC scheme or which victim from which they were derived. Nor does Smith indicate which portion of the $2,996 was applied to the Range Rover, one or two money orders, because it couldn't have been all three? What Smith intentionally or with reckless disregard for the truth is omitting to inform is that Eghaghe purchased *via* auction, and Mr. Baiyewu processed for export on Eghaghe's behalf, multiple vehicles. The omission of the material fact that Mr. Baiyewu refunded the Naira money ($9700) back to Eghage allows agent

Smith to misrepresent the truth intentionally or with reckless disregard for the truth.

In paragraphs 24-26, Smith memorializes in his usual conclusory and suppositional fashion, the following:

> On or about November 2, 2020, Baiyewu **and other members of the BEC conspiracy** picked up the 2014 Land Rover Range Rover and 2006 Toyota Sienna from their respective locations and prepared them for exportation.

> On or about November 10, 2020, Baiyewu **and other members of the BEC conspiracy** exported the 2006 Toyota Sienna to Nigeria.

> On or about November 14, 2020, Baiyewu, Eghaghe**, and other members of the BEC conspiracy** exported the 2014 Land Rover Range Rover to Nigeria.

(emphasis added).  None of those allegations are accurate; Mr. Baiyewu arranged for the pickup of both cars without any help from anyone and exported both vehicles.  Furthermore, once again, Smith fails to identify or even indicate which "members" or "member" of the BEC conspiracy he is referring to, because that is misrepresentation based on agent Smith speculation and innuendo.

In paragraph 27, Smith states the following with respect to Mr. Baiyewu's alleged structuring of one deposit in his bank account:

> On or about November 25, 2020, Baiyewu visited a Navy Federal Credit Union branch in Sugarland, Texas and attempted to deposit $12,735 in U.S. Currency into Baiyewu's account no. xxxxxx4548. When the teller informed Baiyewu that Navy Federal Credit Union would report this deposit to the government in a Currency Transaction Report as it was more than $10,000, Baiyewu refused to complete the deposit and insisted on the return of the currency. A representative of Navy Federal Credit Union confirmed that Baiyewu is known to deposit large amounts of U.S. Currency, typically just below the reporting threshold of $10,000. ***Based on my training and experience, Baiyewu's deposit activity is indicative of structuring intended to avoid reporting***

> ***requirements and law enforcement detection of money laundering activity.***

(emphasis added).   In other words, through the description of one single transaction, agent Smith is able through exaggeration and innuendo to allege that he can detect a pattern that no reasonable person would argue that they can detect.

Equally important, there is nothing in Smith's affidavit to even remotely indicate that the $12,735 was the proceeds from illicit activity.  There is nothing to indicate how long Mr. Baiyewu banked with Navy Federal Credit Union – for instance, was he a long-term customer or was an account opened during the relevant period of the alleged conspiracies?  There is no indication as to whether the alleged one-time transaction which Smith alleges is structuring was connected to the alleged money laundering activities.  But to Smith, it does not matter as he has already invaded Mr. Baiyewu's home under false misrepresentations and now simply seeks to complete the objective of violating Mr. Baiyewu's  Fourth Amendment rights.

## Conclusion

In paragraph 28, Smith piles inference upon inference, to arrive at the ultimate of his many unsupported and erroneous conclusions that:

> Based on the foregoing, there is probable cause to believe Baiyewu committed violation of 18 U.S.C. ¶¶ 1343, 1349, and 1956(a)(1)(B)(i) by conspiring with Eneh, Eghaghe, Crosby, ***and other to fraudulently divert a wire transfer of 112,129.53 from Victim G.I. and then launder a portion of those funds through the purchase of two vehicles which were exported to Nigeria.***

(emphasis added). Smith's beliefs are not only inaccurate but more importantly, not probable cause. It is obvious that assumptions, unsupported inferences, and innuendo are insufficient to establish probable cause.

The remaining portions of the agent's affidavit with respect to Mr. Baiyewu are riddled with conjecture, baseless suspicions, and innuendo. Once the subterfuge is cleansed from the affidavit, there is no evidence to satisfy the connection element of the probable cause determination.

Smith's "suspicion", even if it were given the benefit of the doubt and the legal currency of a "reasonable suspicion", is not a sufficient basis for a Court to issue a search warrant. There must be a probable cause. Furthermore, there is no corroboration of Smith's baseless suspicions.

Of course, Mr. Baiyewu and Eghaghe communicate – they are business associates and have been for many years. Evidence that Eghaghe and Eneh communicate does not --as agent Smith advances-- draw Mr. Baiyewu into any licit or alleged illicit business dealings the two men may have. If that were the case, everyone Eghaghe communicates with *via* WhatsApp could be drawn into the Puerto Rico scheme. And there is nothing inherently suspicious about using WhatsApp to communicate.

**B.**    **The November 5 Affidavit**

Mr. Baiyewu submits that once Agent Smith's multiple conclusory, generalized, suppositional and speculative of October 13 and his November 5 affidavit statement are removed from his arrest warrant affidavit of October 13

and his November 5 affidavit, there is no probable cause within the four corners of the affidavit to support a finding of probable cause.

The affidavit focuses on two vehicles: the 2014 Land Rover Range Rover and 2006 Toyota Sienna. The affidavits, in essence, sponsors to the Court that Collins Eneh and Michael Crosby's interest in these two vehicles draws ALL vehicle transactions involving Mr. Baiyewu and Blossom Eghaghe into Smith's "theory" of a vast international conspiracy. Smith is making these speculative conclusions based on his experience and background for probable cause purposes.

There can be no doubt of the total absence of probable cause with respect to arrest and search warrants issued in this case on October 13 and November 5; thin and suspect information is not probable cause.

**III.    The Smith Affidavits of October 13 and November 5**
       **Lack Probable Cause And Containing Misrepresentations**

The Fourth Amendment to the United States Constitution provides that:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, **no Warrants shall issue, but upon probable cause, supported by Oath or affirmation**, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. Amend. IV (emphasis supplied).

Probable cause exists when "the facts and circumstances within the [police officers] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing that the [defendant] had committed or was committing an offense." _United States v. Figueroa_, 818 F.2d 1020, 1023 (1st Cir. 1987) (quoting _Beck v. Ohio_, 379 U.S. 89, 91 (1983)).

"The government need not show 'the quantum of proof necessary to convict'; probability is the touchstone." *Id.* (quoting *United States v. Miller*, 589 F.2d 1117, 1128 (1st Cir. 1978), *cert. denied*, 440 U.S. 958 (1979)). This Court must consider the totality of the circumstances in evaluating whether the government demonstrated a sufficient "probability . . . of criminal activity." *Id.* at 23-24 (quoting *Illinois v. Gates*, 462 U.S. 213, 232 (1983)).

In seeking a warrant for arrest, an officer "should include in the affidavit accompanying the warrant application any facts known to [the officer] that are material to the existence" of probable cause. *Id.* at 46. Material facts include "what the police knew at the moment of arrest, the source of their knowledge, and leads they pursued or eschewed..." *Acosta v. Ames Dep't Stores, Inc.*, 386 F.3d 5, 9 (1st Cir. 2004) (citation omitted). Making a false statement in or omitting material facts from a warrant affidavit serves as bases on which to challenge a finding of probable cause. *United States v. Tanguay*, 787 F.3d 44, 48-49 (1st Cir. 2015).

As he did in his October 8, 2021, in his November 5 affidavit agent Smith misrepresents the data from the U.S. Customs and Border Protection ("CBP"). When agent Smith states that, "the payments delivered to Copart by BAIYEWU," were not applied just towards "11 vehicles and fees for 5 relisted vehicles" *see* Exhibit 2, at Para.17, he is misstating the CBP data. Neither does the CBP data show that the "payments ..went to pay for only 7 vehicles BAIYEWU shipped, according to CBP records." Those are material misrepresentation made by agent Smith.

Further, agent Smith omits to inform the Honorable Court that Mr. Baiyewu owns two companies that do different things; Shipopo Autos or Shipopo LLC. By referring to "Shipopo", agent Smith can distort the facts in his November 5, 2023, affidavit that the CBP data reveal and pretend that a normal business operation is suspect because Smith intentionally or with reckless disregard for the truth failed to explain the specific facts in the CBP data, and instead provided his misrepresentations about what the CBP data.

Allegations of intentional or reckless misstatements or omissions implicate the very truthfulness, not just the sufficiency, of a warrant application. If a defendant establishes that a warrant application contained intentional or reckless misstatements or omissions, the suppression court "owes no deference to a [previous Court's] decision to issue an arrest warrant." _Burke v. Town of Walpole_, 405 F.3d 66, 82 (1st Cir. 2005). "'[W]here officers procuring a warrant have deliberately misled the Magistrate about relevant information, no Magistrate will have made a prior probable cause determination based on the correct version of the material facts.'" _Id_. (quoting _Velardi v. Walsh_, 40 F.3d 569, 574 n. 1 (2nd Cir. 1994)). As such, the second prong of the _Franks_ analysis requires the Court to consider "whether a complete and more accurate affidavit would have nevertheless supported a finding of probable cause for the search." _Jordan_, 943 F.3d at 541. This assessment requires taking **"'into account the cumulative effect of... multiple omissions and misstatements"**, if the Court finds more than one such problem with the affidavit. _Id_. (quoting _United States v. Vigeant_, 176 F.3d at 572 n. 8) (emphasis supplied).

14

**A.    Smith's Affidavits of October 13 and November 5 Fails to Satisfy the "Connection" Element of the Probable Cause Determination**

Smith's "theories", as depicted in his October 13 and November 5 affidavits, lack specific facts and evidence showing any connection of Mr. Baiyewu to any conspiracy or fraud or illegal conduct.  At best, Smith's affidavits show that Collins Eneh and Michael Crosby laundered funds *via* two vehicles – the 2014 Land Rover Range Rover and 2006 Toyota Sienna - from the Puerto Rico scheme through Blossom Eghaghe's Emperor Auto's.  At best, this shows that Eneh and Crosby possibly duped Eghaghe and, by extension, surely Mr. Baiyewu.  At its worst, Smith's baseless theories have disrupted the lives of a respected businessman and his family, cast a shadow of doubt on his reputation, and forces him to defend against speculative allegations and misrepresentations.

**B.    The "Four Corners" of Smith's Affidavits**

The October 13 and November 5 affidavits, on their face, mislead the Court because agent Smith's entire theory as set forth in his affidavits was premised upon the facts that: (1) Collins Eneh is a fugitive from the Southern District of New York in a massive BEC conspiracy; and (2) Eneh instructed Michael Crosby to apply $31,136 of the $112,129.53 proceeds from the Puerto Rico BEC scheme towards Blossom Eghaghe's Emperor Auto's Copart account for a 2014 Land Rover Range Rover; and (3) Mr. Baiyewu received 4 million in Naira from Emperor Auto's via a documented wire transfer to be converted to $9,700 in USDs and applied to the Copart account for the 2014 Land Rover Range Rover; and (4) Mr. Baiyewu delivered $30,088 to the Emperor Auto's account on five occasions in 2020 in the form of 31 money orders.  None of those factual allegations show a

probability that Mr. Baiyewu committed federal offenses whether wire fraud, bank fraud, money laundering and conspiracies to commit same, or that evidence of these alleged crimes will be found in the evidence seized. In essence, these are the substantive allegations Smith's affidavits present to a U.S. Magistrate Judge. Those allegations are not probable cause.

Further, there is nothing in Smith's affidavits as to which "lots" of Emperor Auto's winning bids was the $30,088 Mr. Baiyewu delivered to the Emperor Auto's Copart account applied to. The Court was not provided with this information in Smith's affidavit. For all the Court knew, the 31 money orders could have been applied to 31 lots or winning bids. But Smith's affidavit shades the facts with an aura of nefariousness.

The remaining "facts" presented to the Magistrate Judge are nothing more than a subterfuge to support Smith's "theory". In his two affidavits, agent Smith takes innocuous standard export/import business practices and presents them to the Court against the massive backdrop of a Nigerian BEC conspiracy in the Southern District of New York[2], using Collins Eneh as the nexus between the Southern District conspiracy to the Puerto Rico BEC scheme he is investigating. In building his case on these business practices, Smith employs innuendos, insinuations, suppositions, and omissions of material fact to make baseless conclusions, and then presents them to the U.S. Magistrate Judge as "facts" supporting his "theory" as crafted in his two warrant affidavits.

Even a casual reading of Smith's two affidavits reflects that he glaringly

---

[2] See Exhibit No. 1 at ¶¶ 7, 12.

overstated the allegations of information relevant to a finding of probable cause. The "creation" he presented to the U.S. Magistrate Judge is not close to being an affidavit "replete with solid information, information which [bears a] staunch, self-contained indicia of reliability." *United States v. Hoffman*, 832 F.2d at 1306. Therefore, the arrest and search warrants should be voided based on what was presented or, more appropriately, not accurately presented to the Magistrate within the four corners of the two affidavits of October 13, and November 5, 2021.

**C.    Smith's Affidavits after they have been "Cleansed" under *Franks***

> "A 'literally true' affidavit… can be intentionally misleading if it deliberately omitted material facts which, when included, would defeat the probable cause showing and thus render false the original 'literally true' affidavit."

*United States v. Tanguay*, 787 F.3d at 49 (quoting *United States v. Tate*, 524 F.3d 449, 456-57 (4th Cir. 2008)).

Once the affidavits are cleansed of agent Smith's unsupportable "theories", speculation and innuendo bottomed on facts, they lack any indicia of reliability and show material omissions.    Under *Franks*, the Court must cleanse the affidavits of any factual averments of "suspicion, rumor, or strong reason to suspect [wrongdoing]", *United States v. Vigeant*, 176 F.3d at 569, lacking the requisite "indicia of reliability" for issuance of the arrest and search warrants executed in this matter.    *United States v. Hoffman*, 832 F.2d at 1306.    Material omissions are facts that a reasonable person would know that a "judge would want to know" before issuing the warrants.    *Wilson v. Russo*, 212 F.3d at 783.

In this regard, agent Smith failed to inform the Magistrate Judge

If the Court takes "'into account the cumulative effect of [Smith's] … multiple omissions and misstatements" *Jordan*, 943 F.3d at 541, the affidavits a lack probable cause. Once Smith's theories and accompanying omissions are set aside, the Court must then examine the affidavits to determine if the remnants are sufficient to establish probable cause. If not, the arrest and search warrants "must be voided and the fruits … excluded to the same extent as if probable cause was lacking on the face of the affidavit." <u>Franks</u>, 438 U.S. at 156.

When this analysis and argument is juxtaposed with the lack of facts, with the material omissions in Smith's arrest and search warrant affidavits, *Franks* compels this Court to void the warrants to the same extent as "if probable cause was lacking on the face of the affidavit." *Franks*, 438 U.S. at 156.

This was an international BEC scheme allegedly employing foreign nationals involved in the export/import business with Nigeria. In evaluating the financial transactions set forth in the Smith affidavit, a reasonable person would know that "a judge would want to know" about any unusual foreign business practices that could affect the probable cause analysis before issuing the warrants. <u>Wilson v. Russo</u>, 212 F.3d at 783. In fact, this would be a red flag to any reasonably prudent law enforcement officer composing such an affidavit for a warrant that additional, more particular, and peculiar factual averments would be necessary to satisfy the "connection" element in the probable cause determination.

Yet, as explained in Mr. Baiyewu's Motin at Docket 98, agent Smith did

not inform the Court of Nigeria's confusing "Dollarization" policies, or of the fact that Nigerian businessmen initiating overseas business transactions from within the country were required by Nigerian law to make payment for the purchases of goods to be imported into the country in the Naira. See Docket , at 3-4. Smith did not explain that because of the Nigerian Dollarization laws, this added another hoop to be jumped through by the exporter because once the Naira was received in the United States it then needed to be converted to USDs before the exporter or vehicle auction houses could be paid for their goods and services, and that the usual business practice was for the exporter to facilitate the currency conversion. This information would reasonably change the perception of the many financial transactions underlying Smith's baseless theory in the probable cause determination. It is easy to see why the omissions about these accepted business practices would reject Smith's conspiracy theories.

Further, agent Smith did not provide the Court with information as to the background and extensive duration of Mr. Baiyewu's business relationship with Blossom Eghaghe's Emperor Autos or how many vehicles were exported during that relationship. The information agent Smith did provide suggested that the decades long business relationship was much more limited and involved primarily to the 2014 Land Rover Range Rover and 2006 Toyota Sienna, and the seven vehicles Mr. Baiyewu exported for Emperor Auto's during 2020 – the relevant period of the Puerto Rico scheme. If the Court had been informed of the longstanding business association between Mr. Baiyewu and Eghaghe, it would have permitted the Court to evaluate whether Mr. Baiyewu and/or Eghaghe were

being used as unknowing and unwitting money mules by Collins Eneh and would have necessarily weaken all of agent Smith's unsupported theories and speculation, including, but that his speculation (incorrect, as a matter of fact) of indirect communication *via* Eghaghe.[3]

Last, with respect to the 31 money orders or cashier's checks Mr. Baiyewu applied to the Emperor Auto's Copart account in 2020, agent Smith did not provide the U.S. Magistrate Judge with key information as to the source of these funds or how the funds were received.  He did not provide the Court with information as to whether Mr. Baiyewu received the funds for the money orders or cashier's checks in the Naira, nor if Mr. Baiyewu received the funds in one, two, or however, many installments.  Smith did not inform the Court as to whether the 31 money orders or cashier's checks were applied to 31 specific lots, or winning bids, or if they were applied in multiples for one, two or however many lots or winning bids.  If informed of these material facts, this would have negatively affected the evaluation of Smith's speculation and baseless theories in the probable cause determination.

By November 5, 2021, agent Smith possessed additional material information that was not set forth in his two affidavits; that he had misrepresented to the Southern District of Texas a material fact, which he never corrected.  And yet he failed to provide it to the District Court of Puerto Rico.

---

[3] The FBI itself readily acknowledges that oftentimes "money mules are unaware that they have been taken advantage of themselves."  Federal Bureau of Investigation, *Business Email Compromise and Real Estate Wire Fraud 2022*, at p. 5.  https://www.fbi.gov/file-repository/fy-2022-fbi-congressional-report-business-email-compromise-and-real-estate-wire-fraud-111422.pdf/view (last visited 04.01.2023).

Once Smith's affidavits are cleansed (or reformed) under *Franks*, all that remains is "suspicion, rumor, or strong reason to suspect [wrongdoing]". <u>United States v. Vigeant</u>, 176 F.3d at 569 (quoting <u>United States v. Han</u>, 74 F.3d at 541) (citation omitted).  They are stripped of any semblance of the indicia of reliability usually accorded such affidavits.  <u>United States v. Hoffman</u>, 832 F.2d at 1306. There remains no reasonably trustworthy information sufficient "to warrant a prudent [person] in believing that [Mr. Baiyewu] had committed ... an offense". <u>United States v. Figueroa</u>, 818 F.2d at 1023 (quoting <u>Beck v. Ohio</u>, 379 U.S. at 91).  Laid bare, the two affidavits fail to establish the "connection" element to support probable cause for issuance of both the arrest and search warrants, and any evidence, as well as any fruits thereof, obtained by law enforcement bottomed on the affidavits must be suppressed.

**IV.    CONCLUSION**

Based upon the totality of the circumstances given the multitude of Smith's baseless and speculative allegations misrepresentations and omissions of material fact, Defendant Mr. Baiyewu respectfully requests that the Honorable Court schedule an evidentiary hearing to suppress all evidence, including derivative evidence, obtained from the warrants issued without probable cause relying upon the October 13 and November 5 affidavit by agent Smith.

Respectfully submitted, today, August 23, 2023.

Respectfully submitted,
<u>S/David Paz</u>
David M. Paz
*Pro Hac Vice*
State Bar No.

24056111 1001
Texas Ave, Suite 570
Houston, Texas
77002
(281) 743-7559
(281) 377-5047 fax
pazandassociates@hotmail.com

Carlos M. Sánchez La Costa, Esq.
USDC No. 209410



P.O. Box 9023027
San Juan, PR 00902-3027
Tel:    (787) 729-4646
csanchez@sanchezlawpr.com

`                    By:    **s/Carlos M. Sanchez**
                                Carlos M. Sánchez La Costa

I HEREBY CERTIFY that today, August 23, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such to the Assistant United States Attorneys and all counsel of record.

**/Carlos M. Sanchez**
Carlos M. Sánchez La Costa