# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **UNITED STATES OF AMERICA**,<br>    Plaintiff,<br><br>    v.<br><br>**OLUWASEGUN BAIYEWU**,<br>    Defendant. | CRIM. NO. 21-395 (RAM) |

## REPORT AND RECOMMENDATION

Pending before the Court are defendant Oluwasegun Baiyewu's (the "defendant") (1) Motion to Suppress allegedly unlawfully seized evidence from his home for lack of probable cause and for a *Franks v. Delaware* hearing (Docket No. 98) and (2) Motion to Suppress the subsequent arrest and search warrants for alleged lack of probable cause and for a *Franks v. Delaware* hearing (Docket No. 157). 438 U.S. 154, 155-56 (1978). Both motions will collectively be referred to as the "*Franks* Motions." The government filed oppositions to both motions, respectively. (*See* Docket Nos. 135 and 161). The matter was referred to the undersigned for the holding of a hearing, if necessary, and the preparation of a Report and Recommendation. (*See* Docket Nos. 155 and 158). The Court held an evidentiary hearing on April 19, 2024. (Docket No. 284). The government called FBI Special Agent Marc Smith to the witness stand and sworn testimony was heard. The Court requested final briefing on the matter. Consequently, the defendant filed a post *Franks* Hearing Memorandum in Support of his *Franks* Motions (Docket No. 315), and, in turn, the government filed an opposition thereto and a brief of its own, claiming that defendant's *Franks* Motions should be denied. (Docket No. 339).

The Court has reviewed the parties' written submissions, listened to the testimony presented during the evidentiary hearing, evaluated the exhibits, and made the necessary credibility assessments. Based on the following factual findings and legal analysis, the undersigned recommends that the defendant's *Franks* Motions be **DENIED**.

## I.    Relevant Factual Summary[1]

FBI Special Agent Marc Smith ("Agent Smith") joined the FBI in 2017 and at the time he swore out both affidavits in this case, he was assigned to the San Juan Field Office's Cyber Division. Agent Smith has been working with the Cyber Division since 2020 where his efforts have been primarily focused on handling cyber-crime investigations. Through his service as an FBI agent, Agent Smith has acquired substantial experience with search warrants, having prepared approximately one hundred warrants, including affidavits and warrants directed at individuals with no direct connection to the suspected offense. Agent Smith understands that the primary purpose of a search warrant is not to establish the guilt of the person subject to the search, but rather to demonstrate that there is probable cause to believe that evidence, fruits, or instrumentalities of a crime are likely to be found in the place or thing to be searched.

Agent Smith attested that in preparing an affidavit in support of a warrant application, he generally includes a description of his professional background, definitions of any relevant technical terms, a summary of the facts establishing probable cause, a detailed statement of probable cause, and a conclusion explaining why he believes evidence, fruits, or instrumentalities of a crime are likely to be found in the location or item to be searched. He explained that, additionally, the affidavit will outline the specific location of the search and the items or evidence being sought. Throughout this process, Agent Smith attested that he strives to ensure that the affidavit is fair and accurately presents the facts to establish probable cause.

Agent Smith has gained substantial familiarity with Business Email Compromise ("BEC") schemes and money laundering operations through his investigation of such activities since 2017. More specifically, he has learned that money laundering schemes frequently involve the use of money orders, as they do not

---

[1] These facts were taken in large part from relevant portions of the October 8 Affidavit (Docket No. 135-2), the Notice of Factual Error in Search Warrant Application and Request for Sealing, dated October 27, 2021 (Docket No. 135-2); the revised affidavit submitted to the District of Puerto Rico on November 5, 2021 (Docket No. 135-3), Agent Smith's testimony and the exhibits introduced at the evidentiary hearing and submitted by the parties.

Case 3:21-cr-00395-RAM-MDM    Document 468    Filed 12/27/24    Page 3 of 26

*United States v. Oluwasegun Baiyewu,*                                                    Page 3
Crim. No. 21-395 (RAM)

require identification for purchase and offer a means of transferring value anonymously, thereby facilitating illicit transactions. Agent Smith has also learned that individuals involved in money laundering schemes often lack knowledge of all aspects of the conspiracy, making such investigations a process of synthesizing various pieces of information. In furtherance of this investigation, Agent Smith examined the underlying BEC scheme, which involved the analysis of large data sets, in order to trace the proceeds of the BEC and identify both the perpetrators behind the scheme and the individuals benefiting from the fraudulent proceeds.

In early 2021, a company in Puerto Rico reported to the FBI that it had fallen victim to a BEC, resulting in the misappropriation of funds. Agent Smith's investigation into the defendant commenced with a BEC targeting a company based in Carolina, Puerto Rico. The victim company received a spoofed email that deceived it into transferring $200,000.00 to an account held by Angelica Rodríguez. Following the report, the FBI opened an investigation and discovered that a portion of the misappropriated funds, totaling $31,136 was transferred to a Copart, an online automobile auction company with car yards across the United States that specializes in the sale of salvaged vehicles from insurance companies. Customers of Copart utilize individual member accounts to bid on vehicles, and upon winning an auction, it becomes the customer's responsibility to pay for the vehicle, cover any additional fees required for its acquisition, and arrange for its delivery to the designated location.

Agent Smith's investigation into Ms. Rodríguez revealed that she was recruited by Michael Crosby, who orchestrated the disbursement of the fraud proceeds from the victim company. Mr. Crosby directed Ms. Rodríguez to withdraw a cashier's check in the amount of approximately $30,000.00, made payable to Copart. Mr. Crosby personally delivered the cashier's check he received from Ms. Rodríguez to a Copart yard in California, where it was applied to the Emperor Auto Advantage member account to purchase two vehicles: a 2006 Toyota Sienna and a 2014 Land Rover Range Rover. Emperor Auto Advantage ("Emperor Auto") was controlled by a Nigerian individual named Blossom Eghaghe.

*United States v. Oluwasegun Baiyewu,*
Crim. No. 21-395 (RAM)

Page 4

Agent Smith's investigation into Mr. Crosby revealed through his WhatsApp communications that Collins Eneh, a Nigerian national, had provided Mr. Crosby with the Copart account information for both vehicles and instructed him to apply the $30,000.00 cashier's check to the Emperor Auto account.

By following the financial trail, Agent Smith was able to identify the owner of the Emperor Auto Advantage Copart member account as Blossom Egaghe, who received the fraudulent proceeds from the victim company. Through the use of subpoenas, Agent Smith further traced the payments made to the Emperor Auto account, identifying the specific vehicles purchased with those funds.

Shipping records obtained from U.S. Customs and Border Protection ("CBP") revealed that the defendant, along with his company Shipopo Autos, played a role in facilitating the transfer of BEC funds—specifically, the Toyota Sienna vehicle—out of the United States and into Nigeria. The shipping records further indicated that the defendant arranged for the shipment of multiple vehicles to Nigeria on behalf of Mr. Eghaghe. Additionally, Copart records for Emperor Auto (Eghaghe's Copart account) demonstrated that the defendant personally delivered visibly "structured" financial instruments to pay for vehicles associated with Eghaghe's account. The government surmises that, together, these facts suggest that the defendant and Eghaghe were involved in an extensive, long-term, trade-based money laundering operation, utilizing vehicles purchased with fraudulent funds in the United States that were subsequently shipped to Nigeria. Additionally, data obtained from the CBP allowed Agent Smith to track the shipment of the vehicles, ultimately connecting the purchase of the Toyota Sienna and Land Rover Range Rover to the defendant. The defendant's shipment of a vehicle acquired with fraudulent proceeds served as the catalyst for the investigation into both the defendant and his business.

In light of this information, Agent Smith initiated a series of law enforcement actions to investigate the defendant. The information known to Agent Smith at the time he sought the October 8 Warrant to search the defendant's residence in Texas, included, but was not limited to, the defendant's receipt of $9,700, which appeared to be linked to the fraudulent purchase of a Land Rover Range Rover; the defendant's

involvement in shipping a vehicle acquired with fraudulent funds; the defendant's multiple visits to Copart to purchase over five vehicles using money orders in denominations of $500 and $1,000 to make payments on behalf of Emperor Auto; and the fact that the defendant appeared to be the sole individual acting both as a shipper and payer for the Emperor Auto Copart account. Based on the above and other relevant information, Agent Smith concluded that the defendant's conduct "stood out" as suspicious and justified further investigation.

Agent Smith documented the findings of his investigation in the October 8 Affidavit, which he submitted in support of a warrant application to the Southern District of Texas seeking authorization to search the defendant's residence. The October 8 Affidavit sets forth the key facts and inferences known to Agent Smith at the time of the investigation, providing the basis for his determination that there was probable cause to believe that the defendant's residence contained evidence of the fruits and/or instrumentalities of the wire fraud and money laundering conspiracy under investigation. Said affidavit included a number of facts and inferences relevant to the question of whether there was probable cause to believe that the defendant's residence contained evidence, fruits, or instrumentalities of a wire fraud and money laundering conspiracy, which was under investigation by the FBI. More specifically, the October 8 Affidavit included the following in its executive summary:

- A description of a BEC perpetrated on a Puerto Rican company, wherein fraudsters tricked the victim company into sending $112,129.53 intended for a legitimate supplier of the victim company to a money mule, ¶ 8;

- A description of the flow of money from the BEC victim's account, to a money mule's account, to Eghaghe's Emperor Auto Copart account, including:

    - A summary of statements and communications by money mules involved in the financial transactions undertaken with the BEC funds, confirming that the money paid toward Blossom Eghaghe's Copart account originated from the BEC, ¶¶ 9-12;

- ▪ A notation that a Nigerian national named Collins Eneh, who directed the money mules in connection with the BEC, had been previously indicted in the Southern District of New York for organizing other money mules in connection with other BECs, ¶ 13;

- A brief analysis of payment activity on Eghaghe's Emperor Auto Copart account, which found that, in addition to the $31,136 from the Puerto Rico BEC, Eghaghe's account received over $250,000 in apparently structured payments—including at least 31 money orders totaling $30,008 personally delivered by the defendant, ¶¶ 14-16;

- A summary description of voluminous CBP data reflecting that all of the vehicles purchased by Eghaghe/Emperor Auto had been shipped to Nigeria, and the defendant had facilitated the transportation and export of, among other vehicles, the Toyota Sienna from the United States into Nigeria that was purchased with BEC funds, ¶ 17;

- A description, based on Agent Smith's training and experience, of how money orders are often used by money launderers to evade reporting requirements, evade law enforcement detection, and attenuate the link between fraud proceeds and ultimate beneficiaries, ¶ 18;

- A description of information obtained from a bank employee concerning the defendant's conduct, which was consistent with money laundering. In particular, the defendant had been known to deposit large sums of cash into his account and, on one occasion, declined to deposit $12,735 in cash after being informed that the bank would need to file a currency transaction report, ¶ 18;

- A summary of emails found in email account emperorautoadvantage@gmail.com (an account controlled by Eghaghe) showing that the defendant (and others) received payments in Naira from Eghaghe during the time period of the BEC and suspected ongoing conspiracy (and illustrated some mechanics of the bidding/shipping process for Copart), ¶¶ 19-20;

- A summary of emails found in email account segunbaiyewu@yahoo.com, including records reflecting that the defendant held at least one Nigerian bank account, received funds from other Nigerian accounts, and lived at the defendant's home in Texas,  ¶¶ 21-24;

- A description of U.S. Postal records indicating that the defendant and one of his companies, Shipopo LLC, received mail at the Subject Premises, ¶ 25;

*United States v. Oluwasegun Baiyewu,*
Crim. No. 21-395 (RAM)

Page 7

- A description of Agent Smith's understanding that money mules involved in the money laundering scheme used WhatsApp to communicate, and a summary of the type of information obtained from WhatsApp using a pen register and trap and trace, ¶¶ 26-28;

- A description of why Agent Smith believed the WhatsApp data obtained indicated that the defendant communicated with at least one co-conspirator and that IP information associated with the defendant's communications led him to suspect that the defendant was residing at the defendant's home, ¶¶ 29-30; and

- Physical surveillance that had recently been conducted confirming that the defendant resided at his home and was in use and possession of a cellular phone.

(*See* Docket No. 135-1).

In addition to the evidence supporting probable cause to search the defendant's residence in Texas, the October 8 Affidavit briefly outlined the information available at the time regarding the defendant's extensive background in logistics and vehicle shipping. The affidavit, however, did not encompass all of the information Agent Smith had gathered about the defendant up to that point in his investigation.[2]

On his part, the defendant claims to be in the business of purchasing cars in the United States and exporting them to Nigeria. According to the defendant, in general terms, his business operates on a purchase order or request system for his customers. The defendant owns two business entities: Shipopo Autos and Shipopo LLC. He has been doing business as Shipopo Auto since September 12, 2013. Shipopo LLC was created on April 29, 2020. The U.S. Department of Transportation records reflect that Shipopo LLC operates as a general freight carrier with eight trucks and drivers which logged-in approximately 150,000 miles in 2020. The defendant's company does not accept U.S. dollars from overseas customers, but only Nigerian

---

[2] At the *Franks* hearing, Agent Smith testified that certain details, such as the defendant's educational background, were not materially relevant to tracing the fraudulent proceeds or to establishing probable cause that the defendant's residence likely contained the fruits and instrumentalities of a crime.

*United States v. Oluwasegun Baiyewu,*
Crim. No. 21-395 (RAM)

Page 8

currency. As to defendant's Nigerian customer base, he receives funds in the Naira, the Nigerian currency, and then converts it to U.S. dollars.

On October 8, 2021, the Honorable Magistrate Judge Christina A. Bryan, United States Magistrate Judge for the Southern District of Texas, authorized the October 8 Warrant to search the defendant's residence. Law enforcement officers subsequently executed the warrant on October 14, 2021, and also arrested the defendant on a criminal complaint.[3]

Pertinent here, Paragraph 28 of the October 8 Affidavit, erroneously states that the defendant and Collins Eneh were in regular communication. Per Agent Smith's testimony, the correct statement should have been that the defendant was in frequent contact with Blossom Egaghe, who was at that time suspected of being involved in the proceeds from the fraud scheme perpetrated against the victim company in Puerto Rico. It is important to note that Paragraph 28 does not describe the content of these communications, as WhatsApp is an encrypted platform, and the contents were not accessible to Agent Smith. Rather, Paragraph 28 was intended to convey that, at the time of the search warrant application, the defendant was in ongoing communication with at least one individual suspected of being a co-conspirator in the fraud scheme.

Agent Smith first became aware of the factual error on September 29, 2021, during the final stages of reviewing the draft October 8 Affidavit, but, due to a miscommunication with the various United States Attorney's Offices, the correction did *not* make it into the final draft of the October 8 Affidavit that was being assembled by the Assistant United States Attorney in the Southern District of Texas, who prepared the warrant application package for the court's review. (*See* Docket No. 135-2). Agent Smith subsequently notified the Assistant United States Attorney that Paragraph 28 required correction. Agent Smith believed that the Assistant United States Attorney would address the necessary revision, as Agent Smith did not have final responsibility for editing the affidavit draft at that time.

---

[3] The affidavit submitted in support of the above-captioned complaint contains no information concerning the defendant's WhatsApp use.

Prior to signing and swearing to the contents of the October 8 Affidavit before Judge Bryan, Agent Smith did not notice that the error in Paragraph 28 remained in the final version of the affidavit. After the warrant was authorized and executed, Agent Smith was asked by an attorney regarding whether he had located the communications referenced in Paragraph 28, at which point he realized that the error (co-conspirator name oversight) had not been corrected in the final version of the October 8 Affidavit. Upon discovering the factual error in the affidavit, the case team directed the Assistant United States Attorney to issue an instruction to pause any review of the evidence seized from the defendant's residence pursuant to the October 8 Warrant, pending clarification of the issue. Law enforcement officers informed the Southern District of Texas about the oversight so a new warrant could be sought. However, no review was halted, as the seized items had not yet arrived in Puerto Rico from Texas. Two days after the review was paused, on October 27, 2021, the government filed a Notice of Factual Error in Search Warrant Application with the Southern District of Texas, which outlined the error in Paragraph 28, clarified its intended meaning, indicated how the affidavit could be corrected to address the error, and notified the court that law enforcement officers stopped reviewing evidence seized from the defendant's residence. (*See* Docket No. 135-2). Aside from this error, the October 8 Affidavit contained no other factual inaccuracies.

Per Agent Smith's credible testimony, out of an abundance of caution, the case team decided to seek a separate warrant to search the defendant's electronic devices, which had been seized pursuant to the October 8 Warrant. More precisely, on November 5, 2021, a revised affidavit (the "November 5 Affidavit") was submitted to the United States District Court for the District of Puerto Rico, in which the factual error was corrected. Save for the correction of the factual error, the probable cause statement included in the November 5 Affidavit was identical in all material respects to the October 8 Affidavit. (*See* Docket No. 135-3).

On November 5, 2021, the undersigned conducted an independent review of the November 5 Affidavit in support of a search warrant for the devices seized in the defendant's Texas home. Though the probable cause statement in the November 5

*United States v. Oluwasegun Baiyewu,*
Crim. No. 21-395 (RAM)

Page 10

Affidavit closely mirrors that of the October 8 Affidavit, it has two key differences: the factual error identified in Paragraph 28 of the October 8 Affidavit was corrected, and certain paragraphs were removed to reflect that the November 5 Affidavit pertained to the search of the defendant's electronic devices rather than his residence. [4]

Upon a thorough review, I independently found that the November 5 Affidavit contained probable cause to search the electronic devices seized from the defendant's Texas home. As a result, on November 5, 2021, the undersigned authorized the search warrant. (*See* 21-mj-1375 (MDM)).

Per his testimony, at no point did Agent Smith consider the error in the October 8 Affidavit to be materially relevant to the probable cause determination for searching the defendant's electronic devices. Nor did he view the differences between the October 8 and November 5 Affidavits as materially relevant to the probable cause finding. Agent Smith believed that the November 5 Affidavit contained no factual errors or omissions of material significance that would undermine the facts supporting probable cause to search the defendant's devices.

The government concedes that the October 8 Affidavit included <u>one</u> (1) factual error, which was contained in a section that described and summarized voluminous spreadsheets of communications metadata returned by WhatsApp for approximately a dozen phone numbers or WhatsApp accounts. The government contends that said information was included to demonstrate: (i) that the defendant had used and continued to use WhatsApp; (ii) that at the time the warrant was sought, the defendant was corresponding with suspected co-conspirators involved in the BEC that was the object of the FBI investigation; and (iii) that the IP address information associated with the defendant's communications confirmed that he resided at his Texas residence.

---

[4] As per the government's averment, to maintain the integrity of the probable cause statement in the October 8 Affidavit, the November 5 Affidavit excluded any new information that Agent Smith had learned between the two affidavits, such as the defendant's attempt to evade arrest by fleeing through a back window during the execution of the October 8 Warrant, the defendant's voluminous activity in his Copart account, and the fact that the defendant's vehicles seized under the October 8 Warrant were purchased with money orders linked to an unemployment insurance fraud scheme.

Case 3:21-cr-00395-RAM-MDM    Document 468    Filed 12/27/24    Page 11 of 26

*United States v. Oluwasegun Baiyewu,*                                                    Page 11
Crim. No. 21-395 (RAM)

In his *Franks* Motions, the defendant alleges that the October 8 Affidavit and the November 5 Affidavit contain material misrepresentations, omissions, and speculation. The defendant thus challenges the veracity and reliability of the October 8 Affidavit, as well as the corrected November 5 Affidavit, and the legality of the searches conducted relying on those affidavits.

## II.    Standard of Review

Probable cause exists when the totality of the circumstances suggests that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* (citing *United States v. Hicks*, 575 F.3d 130, 136 (1st Cir. 2009) (internal quotation marks omitted)). Information supporting probable cause is set out in an affidavit submitted with the application for a search warrant.

It is blackletter law that a search executed pursuant to a warrant is presumptively valid. *Franks v. Delaware*, 438 U.S. 154, 171 (1978); *United States v. Barbosa*, 896 F.3d 60, 67 (1st Cir. 2018); *United States v. Gifford*, 727 F.3d 92, 98 (1st Cir. 2013) ("An affidavit supporting a search warrant is presumptively valid."); *United States v. Graham*, 553 F.3d 6, 15 (1st Cir. 2009) ("Typically, to be considered reasonable a search of a home must be supported by probable cause and be executed pursuant to a warrant authorizing the search."); *United States v. Tzannos*, 460 F.3d 128, 136 (1st Cir. 2006) ("There is a presumption of validity with respect to the affidavit supporting the search warrant.") (ellipsis omitted); *see also United States v. Murtaugh*, 382 Fed. Appx. 83, 85 (2d Cir. 2010) ("Warrant based searches are presumptively reasonable."). Although "[t]here is . . . a presumption of validity with respect to the affidavit supporting the search warrant," that presumption may be refuted during what is known as a *Franks* hearing. *Franks*, 438 U.S. at 171.

In cases where a hearing is granted, and "at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side [or the omitted material included], the affidavit's . . . content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the

*United States v. Oluwasegun Baiyewu,*
Crim. No. 21-395 (RAM)

Page 12

same extent as if probable cause was lacking on the face of the affidavit." *Franks*, 438 U.S. at 156.

*Franks* established that a defendant is entitled to the suppression of evidence only if he shows by a preponderance of the evidence both (1) "that an affidavit in [the] warrant application contains false statements or omissions, made intentionally or with reckless disregard for the truth" *United States v. Arias*, 848 F.3d 504, 511 (1st Cir. 2017) (citing *United States v. Tanguay*, 787 F.3d 44, 49 (1st Cir. 2015)), and (2) "that a finding of probable cause would not have been made without those false statements or omissions." *Id*. In other words, the false statement or the omission must be shown to be material to the ultimate decision to issue the search warrant. Failure to make a showing as to either element dooms a party's request.

Generally speaking, an allegation is made with "reckless disregard for the truth" if the affiant "in fact entertained serious doubts as to the truth of the allegations or where circumstances evinced obvious reasons to doubt the veracity of the allegations in the application." *Burke v. Town of Walpole,* 405 F.3d 66, 81 (1st Cir. 2005) (quoting *United States v. Ranney,* 298 F.3d 74, 78 (1st Cir. 2002)) (internal quotation marks omitted). "In the case of allegedly material omissions, recklessness may be inferred where the omitted information was critical to the probable cause determination." *Town of Walpole,* at 81–82 (internal quotation marks omitted).

Where a defendant challenges a search warrant on the basis that information was omitted from an affidavit, he must show "the omitted information [was] critical to the probable cause determination." *Barbosa*, 896 F.3d at 68. "Even negligent omissions of highly probative information . . . do not satisfy this strict standard." *Id*. Moreover, the omission of even "voluminous potentially exculpatory facts" cannot support a *Franks* motion because an affiant is not required to include all such facts in an affidavit. *See United States v. Colkley*, 899 F.2d 297, 303 (4th Cir. 1990) (distinguishing *Brady* from *Franks* and counseling caution in extending *Brady* protections in the *Franks* context). *See Colkley*, 899 F.2d at 301. So, while omissions from an affidavit may support a *Franks* challenge, the omissions must be (i) material, (ii) intentional or reckless, and (iii) if incorporated into the affidavit, must be

sufficient to vitiate probable cause. *Barbosa*, 896 F.3d at 68; *Colkley*, 899 F.2d at 301. "[E]ven negligent omissions of highly probative information . . . do not satisfy this strict standard." *Id.*

The challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. *Franks,* supra. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. *Id.* Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. *Id.* Allegations of negligence or innocent mistakes are insufficient. *Franks,* supra.

Moreover, a defendant's own denial of the statement which he purports to be false, without more, is insufficient to satisfy the "substantial preliminary showing necessary to justify a *Franks* hearing." *United States v. Moon*, 802 F.3d 135, 150-51 (1st Cir. 2015). *See also United States v. Southard*, 700 F.2d 1, 10 (1st Cir. 1983) (upholding rejection of *Franks* hearing where district court found appellants' flat denials of gambling-related conversations insufficient to meet the "substantial preliminary showing" requirement). As the Fourth Circuit explained in *Colkley*, "[t]he "overriding concern" of *Brady* is with the "justice of the finding of guilt" that is appropriate at trial. *Franks*, by contrast, recognizes that the information an affiant reports … may not ultimately be accurate, and is willing to tolerate such a result so long as the affiant did not deliberately mislead the magistrate." *Id.* at 303.

## III.    Discussion

Basically, the defendant argues that a federal search warrant obtained in the Southern District of Texas on October 8, 2021, authorizing law enforcement to search the defendant's home in that district, and the federal search warrant obtained in this Court on November 5, 2021, authorizing law enforcement to search the electronic devices obtained under the October 8 search warrant are "constitutionally infirm." More specifically, the defendant argues that the two search warrant affidavits Agent

*United States v. Oluwasegun Baiyewu,*
Crim. No. 21-395 (RAM)

Page 14

Marc Smith prepared—the October 8 Affidavit submitted to the Southern District of Texas—and the November 5 Affidavit submitted to this Court—contain material misrepresentations of fact and a factual error, that taint the probable cause finding in support of the two search warrants. The defendant also asserts that both affidavits omitted information about the defendant's background, education, purportedly legitimate business activities, and the "Nigerian Dollarization" policy. Finally, the defendant argues that the affidavits in support of both search warrants did not conclusively demonstrate that the defendant knew about the criminal activity at issue. The defendant thus requests that the Court suppress all the evidence as well as the fruits of the evidence allegedly obtained illegally by law enforcement under both search warrants.

For the reasons explained more fully below, the defendant's *Franks* Motions should be denied. More precisely, the motions have failed to make a substantial preliminary showing that: (1) Agent Smith made any material misrepresentation or omission in either the October 8 Affidavit or the November 5 Affidavit; (2) that Agent Smith acted deliberately, with the intention to mislead, or with reckless disregard for the truth, or (3) that a finding of probable cause would not have been made without the false statements or omissions.

A.    Defendant's request to suppress the evidence based on a factual error in the October 8 Affidavit is unavailing.

The *Franks* Court established that a defendant can successfully test the veracity of a warrant affidavit if he can make a substantial showing that the affiant, with *reckless disregard for the truth*, included a materially false statement in the affidavit. *United States v. Tanguay*, 787 F.3d at 46 (citing 438 U.S. at 155–56). In *United States v. Ranney*, 298 F.3d at 74, the First Circuit explained that reckless disregard for the truth may be proven either by evidence that "the affiant 'in fact entertained serious doubts as to the truth' of the allegations" contained in the affidavit, or by inference "from circumstances evincing obvious reasons to doubt the veracity of the allegations."

*United States v. Oluwasegun Baiyewu,*
Crim. No. 21-395 (RAM)

Page 15

The defendant makes much of an alleged factual error in the October 8 Affidavit. The defendant's argument in support of his contention, however, focuses on an *immaterial* error found in Paragraph 28 of the October 8 Affidavit, which, at most, misidentified which of two co-conspirators the defendant was then in communication with via the cellular messaging application, WhatsApp. More precisely, Paragraph 28 stated that the WhatsApp metadata showed that a phone number attributable to the defendant had been in recent contact with a phone number attributable to one suspected co-conspirator, namely, Collins Eneh. However, the WhatsApp data actually showed that the defendant had been in recent contact with a phone number attributable to a *different* suspected co-conspirator, namely, Blossom Eghaghe. The factual error that defendant complains of thus lies in the claim that the defendant in communication with one co-conspirator, when in fact he was in communication with a *different* co-conspirator. Said error, the Court finds, is minor and inconsequential to the overall probable cause determination.

Importantly, Paragraph 28 correctly indicated that the defendant was using a messaging application to communicate with at least one co-conspirator at the time the warrant application was made. Moreover, Agent Smith sufficiently explained during his testimony that the paragraph mistakenly identified the specific co-conspirator with whom the defendant was communicating but emphasized that the *substance* of the information remained accurate. It is also reasonable to conclude, as Agent Smith did, that the defendant's phone contained communications with *a* co-conspirator. Whether that co-conspirator was "Eneh" or "Eghaghe" (two very peculiar names, both of which begin with the letter "E" and both of which contain similar letters) is insignificant with respect to the facts of this case because the error did not impact the determination of whether a crime had been committed or whether the defendant played a role in the movement of criminal proceeds overseas in 2020. Notably, the October 8 Affidavit's reference to the defendant's WhatsApp communications pertained *solely* to metadata, *not* the content of the messages themselves. As such, that portion of the affidavit could only serve to bolster Agent Smith's suspicions that the defendant continued to use the WhatsApp application to

*United States v. Oluwasegun Baiyewu,*
Crim. No. 21-395 (RAM)

Page 16

communicate with suspected co-conspirators and others, and that he was using the IP address linked to his Texas home for such communications.

Agent Smith also credibly explained that he caught the mistake during a final round of editing for the affidavit and reported the error to the Assistant United States Attorney but, because of a miscommunication with the various United States Attorney's Offices working on the case, he did not confirm that the statement had been corrected in the final version of the search warrant application package that was ultimately assembled by the Assistant United States Attorney in the Southern District of Texas. Agent Smith further believably testified that at the time, he did not have "the pen" on the draft affidavit—meaning he was not responsible for making the necessary changes. When Agent Smith conducted his final review of the October 8 Affidavit prior to signing it, he did *not* notice that the error had *not* been corrected. It was only *after* receiving an inquiry from the United States Attorney regarding the communications referenced in Paragraph 28 that Agent Smith became aware that the error had made its way into the final affidavit presented to the Texas court.

Agent Smith credibly attested that out of an abundance of caution, upon discovering that the October 8 Affidavit contained the factual error, the Assistant United States Attorney instructed investigators to pause any search of the electronic devices seized from the defendant's home so the court could be notified of the error and a corrected warrant could be sought. The case team then notified the authorizing court, the District Court for the Southern District of Texas, about the error. However, the court declined to require the government to submit a corrected affidavit, so the government prepared and filed a Notice of Factual Error in Search Warrant Application that described the factual error, indicated how the affidavit could be corrected to address the error, and notified the court that law enforcement officers had been directed to cease any review of evidence obtained from the defendant's residence in Texas. Despite the court not having required it, the case team decided to seek a second warrant from this Court to obtain an independent assessment of whether probable cause remained once the error was removed from the affidavit.

Case 3:21-cr-00395-RAM-MDM    Document 468    Filed 12/27/24    Page 17 of 26

*United States v. Oluwasegun Baiyewu,*
Crim. No. 21-395 (RAM)

Page 17

Aside from conclusory protestations about the fact that the factual error was committed, the defendant has not presented any evidence—let alone substantial proof—that the factual error was deliberately included in the October 8 Affidavit. By contrast, the record plainly demonstrates that the October 8 Affidavit inadvertently contained one minor factual error that was contemporaneously identified by Agent Smith and transparently disclosed to the court forthwith. Both the government and Agent Smith concede that the October 8 Affidavit contains that factual error. No one is hiding or denying that fact. Rather, as mentioned, the record shows that Agent Smith inadvertently failed to catch and correct the error in Paragraph 28 in the final version of the October 8 Affidavit. Agent Smith's testimony about the factual error being accidentally overlooked by him and his team, and the government's subsequent actions to address and correct the error once it was discovered, reflect that Agent Smith, far from acting with intentional or reckless disregard for the truth, was acting in good faith and with supreme reasonableness. Like the government suggests, Agent Smith's testimony at the *Franks* hearing shows that despite being human and making a mistake, he acted with due diligence and a sincere commitment to ensuring the accuracy and integrity of the proceedings.

In total, the defendant has failed to provide any proof—let alone substantial preliminary proof—that the factual error in Paragraph 28 was the product of anything other than an innocent or negligent human mistake. On these facts, such a minor factual discrepancy, tantamount to an inadvertent and inconsequential co-conspirator name mix-up, which was sufficiently explained, and does not affect the determination of whether a crime had occurred or whether the defendant was involved in the transfer of criminal proceeds abroad in 2020, does not support a conclusion that said error was made with reckless or intentional disregard for the truth. The defendant has also failed to demonstrate, either through Agent Smith's testimony or the evidence presented, that the conceded error was material or essential to the probable cause determination.

Under these circumstances, there is simply no basis for invalidating the search warrants supported by the October 8 Affidavit because of the factual error, which was later corrected through the November 5 affidavit, or for the suppression of evidence under *Franks. See Hernández-Cuevas v. Taylor*, 723 F.3d 91, 102 (1st Cir. 2013) (quoting *Franks*, 438 U.S. at 171 ("'[a]llegations of [police] negligence or innocent mistake are insufficient.'"); *Moreta-Ramirez v. Lemert*, 233 F. Supp. 2d 286, 291-92 (D.P.R. 2002) ("Allegations of 'negligence or innocent mistake' resulting in the submission of false information to a magistrate by a law enforcement officer are insufficient to invalidate a search warrant."); *Taylor,* 723 F.3d at 102 (quoting *Franks*, 438 U.S. at 171) ("'[a]llegations of [police] negligence or innocent mistake are insufficient'" to save a *Franks* motion).

B.      Defendant's request to suppress the evidence based on alleged misrepresentations of fact in the October 8 Affidavit is similarly flawed.

In addition to claiming that the October 8 Affidavit has no substance, the defendant argues that it included three key misrepresentations that vitiate the search warrant and the evidence seized in consequence, namely that (1) the alleged summary of probable cause included in the affidavit is wholly conclusory and based on speculation by Agent Smith, (2) the affidavit contains no facts to connect the defendant to any criminal conspiracy or to any violation of federal law, and (3) that Agent Smith failed to mention or describe the manner in which the defendant received presumptively illegal funds from the co-conspirator Eghaghe. The defendant's protestations hold no water.

Upon review of the record, the Court finds that no facts were intentionally or negligently misrepresented in neither of the affidavits and the defendant has not pointed to any *actual* misrepresentation of fact. The alleged "misrepresentations of fact" that the defendant complains of in his *Franks* Motions are neither actually false nor factually inaccurate. The defendant wrongly accuses Agent Smith of misrepresenting facts, but defendant's attack really boils down to simply disagreeing with Agent Smith's findings and factual summary of the FBI's investigation. The Court can easily conclude that the defendant merely disagrees with the

*United States v. Oluwasegun Baiyewu,*
Crim. No. 21-395 (RAM)

Page 19

conclusions and inferences drawn by Agent Smith and proffered in the October 8 Affidavit and November 5 Affidavit as a result of the FBI investigation.

For example, the defendant asserts that "[t]he [CBP] data does not reflect or support [Agent] Smith's conclusion" that the defendant's "involvement in the scheme is not limited to his role as an exporter of vehicles." (First *Franks* Motion, Docket No. 98 at 10). However, the defendant does not challenge the accuracy of Agent Smith's description of the CBP data in the October 8 Affidavit, which shows that the defendant/Shipopo Autos was listed as the shipper for a vehicle purchased by Emperor Auto with BEC funds, as well as for 17 vehicles purchased by Eghaghe using his Emperor Auto account." The defendant thus argues that the CBP data "does not show any illegal activity or anything suspicious." (First *Franks* Motion at 19). But disagreeing with an inference drawn from the facts does not render the facts themselves untrue, and such disagreements are insufficient to undermine the presumptive validity of the affidavit and the resulting law enforcement searches. *Colkley*, 899 F.2d at 301 ("The mere fact that the affiant did not list every conceivable conclusion does not taint the validity of the affidavit."). (Citation omitted).

In reviewing an affidavit based on the totality of the circumstances, the court is entitled to assume that the warrant affidavit is the product of a good-faith investigation and provides a reasonably complete picture of the circumstances relevant to probable cause. *Tanguay*, 787 F.3d at 53 (citing *Franks*, 438 U.S. at 171 (recognizing presumption of validity of warrant affidavit). Relying on this implicit representation, a court may reasonably find probable cause despite some level of concern about the completeness of the investigation. *Id*.

In this case, significantly, the defendant has not pointed to any evidence that would demonstrate to the Court that Agent Smith entertained "serious doubts" as to the truthfulness of the information provided or the allegations contained in the affidavits, or by inference from circumstances evincing "obvious reasons to doubt the veracity of the allegations." Indeed, the defendant himself has failed to allege *any* reason, much less an obvious reason, to doubt the representations of Agent Smith.

Defendant's contentions regarding Agent Smith's reckless disregard for the truth, therefore, also falls flat.

> C.    Defendant's request to suppress evidence based on alleged omissions in the October 8 Affidavit fares no better.

Material omissions from a warrant affidavit may also furnish a basis for a successful *Franks* challenge. *Tanguay*, supra at 49. *See also United States v. Hadfield*, 918 F.2d 987, 992 (1st Cir. 1990). The required showing is two-fold: first, the omission must have been either intentional or reckless; and second, the omitted information, if incorporated into the affidavit, must be sufficient to vitiate probable cause. *See United States v. Castillo*, 287 F.3d 21, 25 & n. 4 (1st Cir. 2002); *see also United States v. Tate*, 524 F.3d 449, 456–57 (4th Cir. 2008) ("A 'literally true' affidavit . . . can be intentionally misleading if it deliberately omitted material facts which, when included, would defeat the probable cause showing and thus render false the original 'literally true' affidavit."). Because there is no requirement that every shred of known information be included in a warrant affidavit, the omission of a particular detail, without more, is not enough to satisfy the *mens rea* element of the *Franks* test. *Tanguay*, 49 (citing *Colkley*, 899 F.2d at 300–01). Rather, an omission triggers the exclusionary rule only if it is "designed to mislead, or . . . made in reckless disregard of whether [it] would mislead, the magistrate" in his appraisal of the affidavit. *Id.* (quoting *Colkley*, at 301 (emphasis omitted).

Recklessness may be inferred directly from the fact of omission only if "the omitted information was critical to the probable cause determination." *Id.* (quoting *Town of Walpole*, 405 F.3d at 81 (emphasis supplied) (internal quotation mark omitted). Negligent omissions—even negligent omissions of highly probative information—do not satisfy this strict standard. *Id.* (citing *Franks*, 438 U.S. at 171); *see also United States v. Melvin*, 596 F.2d 492, 499–500 (1st Cir. 1979) (affirming finding that omission of key witness' recantation was merely negligent, not reckless, because of affiant's good-faith belief that recantation was incredible).

In this case, the defendant submits that Agent Smith made a material omission by failing to state allegedly exculpatory facts. More specifically, the

*United States v. Oluwasegun Baiyewu,*
Crim. No. 21-395 (RAM)

Page 21

defendant faults Agent Smith for failing to include background information in the affidavit regarding (1) his education, background, and claimed legitimate business activities; and (2) Nigeria's banking policies, known as the "Dollarization policy," and its regulations. The Court disagrees. The defendant attacks the October 8 Affidavit, as well as the November 5 Affidavit, claiming it conveniently left out relevant information that could taint the probable cause finding and thus warrant the suppression of alleged unlawfully seized evidence. Not so.

To begin with, the standard necessary to prevail in a request for *Franks* relief is not whether the information would be helpful to proving or disproving the veracity of the allegations in the affidavit, but rather whether the omitted information was critical to the finding of probable cause. Here, the Court finds that it was not. Agent Smith testified that he included only those facts in the warrant affidavits that were relevant to the determination of probable cause to search the defendant's residence or seize his electronic devices, based on the likelihood that they contained evidence, fruits, or instrumentalities of the crimes under investigation. Agent Smith further clarified during his testimony that he included only those facts in the affidavits that were directly relevant to establishing probable cause. Agent Smith thus sufficiently explained his decision to omit factual information that he believed to be extraneous to the probable cause determination. While these "omissions" may constitute background details that could have been included by Agent Smith, the Court finds that they are neither crucial nor required. As per Agent Smith's testimony, the central focus of his investigation was to "follow the money." Thus, the specific facts the defendant would have wanted to be included in affidavit are nothing more than auxiliary, at best, and certainly are not relevant to the overall investigation.

More specifically, the facts regarding the defendant's educational background, business activities, longstanding relationship with Blossom Eghaghe, extensive dealings with other Nigerian customers, and Nigeria's Dollarization policy do not undermine the probable cause established in either the October 8 or the November 5 affidavits. As Agent Smith testified: (1) probable cause may exist to search a residence even when the resident is not suspected of being directly involved in the criminal

activity under investigation; (2) each affidavit included a statement acknowledging the fact that not all the facts known to investigators were included; (3) Agent Smith included only those facts he deemed materially relevant to the determination of probable cause; and (4) the reasons for omitting certain facts about the defendant's background or Nigeria's Dollarization policy were that they were neither material, nor substantiated as true, or that Agent Smith disagreed with the defendant's characterization of those facts. Additionally, Agent Smith testified that information regarding Nigeria's Dollarization policy could be confusing, and, in some instances, might even be inculpatory, as it could suggest a motive for the defendant and his alleged co-conspirators.

In sum, the defendant has not presented any evidence to challenge Agent Smith's assessment of the materiality of the omitted information, nor has he demonstrated how the alleged omissions could have affected this Court's or the Texas court's decision to authorize the October 8 and November 5 Warrants. The Court further finds that adding background information to the defendant's business activities, education, or Nigeria's banking policies would not have any tendency to defeat probable cause. Moreover, and lacking any evidence to the contrary, the Court does not find that the alleged omissions of auxiliary and immaterial information were made purposely by Agent Smith to mislead the Court, nor was the absence of that information critical to the Court's probable cause determination.

As such, the defendant here has not met the requisite burden of demonstrating that any alleged omission—whether considered individually or collectively—was material, deliberately excluded or "necessary to the finding of probable cause." *Moon*, 802 F.3d at 149 (quoting *Franks*, 438 U.S. at 155-56). *See Barbosa*, 896 F.3d at 68 ("the omitted information must be critical to the probable cause determination" and "even negligent omissions of highly probative information do not satisfy this strict standard"). This standard makes sense because, as noted in *Colkley*, 899 F.2d at 303, "a requirement that all potentially exculpatory evidence be included in an affidavit would severely disrupt the warrant process," placing an unreasonable burden on law enforcement officers to include every detail, no matter how trivial, in an effort to

Case 3:21-cr-00395-RAM-MDM    Document 468    Filed 12/27/24    Page 23 of 26

*United States v. Oluwasegun Baiyewu,*
Crim. No. 21-395 (RAM)

Page 23

disprove any possible exculpatory omission. Similarly, *Barbos*a affirms that there is "no requirement that every shred of known information be included in a warrant affidavit." 896 F.3d at 69.

Accordingly, the defendant has not shown, by a preponderance of the evidence, that if incorporated into the affidavit the omissions were sufficient to vitiate probable cause. The defendant is therefore not entitled to relief under *Franks* based on alleged omissions in the challenged affidavits. *See id.*; *United States v. Spinosa*, 982 F.2d 620, 627 (1st Cir. 1992); *United States v. Ramos*, No. 06-0114, 2006 U.S. Dist. Lexis 95668, at *5 (D.P.R. Aug. 25, 2006) (Vélez-Rivé, J.).

While the foregoing is dispositive, additional grounds also support the denial of the defendant's *Franks* Motions.

D.    The *Franks* Motions should also be denied for failing to provide a sufficient offer of proof.

"Not every challenge to the veracity of an affiant necessitates an evidentiary hearing." *See Southard*, 700 F.2d at 8. Rather, a defendant must make a threshold showing sufficient to convince the district court that a reasonable basis exists to warrant such a hearing. *Barbosa*, 896 F.3d at 68. To compel an evidentiary hearing, the defendant's challenge must be more than conclusory and must be substantiated by more than a mere desire to cross-examine the affiant. *Franks*, 438 U.S. at 171. The defendant must offer specific, particularized allegations, and those allegations must be supported by an offer of proof, identifying the precise portion of the affidavit that is claimed to be false, along with a statement of the supporting reasons for that claim. Affidavits, sworn statements, or other reliable evidence from witnesses should be provided, or their absence must be adequately explained. *Id.*"

With the exception of the single factual error, which the government has acknowledged, the *Franks* Motions fail to meet the necessary threshold. The motion lacks a statement of supporting reasons or an accompanying affidavit, and it fails to provide the required offer of proof to substantiate its claims regarding (i) the existence of multiple false statements or omissions, (ii) whether the factual error was intentionally included in the October 8 Affidavit, or (iii) whether the factual error or

Case 3:21-cr-00395-RAM-MDM    Document 468    Filed 12/27/24    Page 24 of 26

*United States v. Oluwasegun Baiyewu,*                                          Page 24
Crim. No. 21-395 (RAM)

omissions were essential to the probable cause determination. As established in *Franks v. Delaware*, more is required. *See, e.g., United States v. Salas-Nieves*, Docket No. 22-037, ECF No. 57, at 5 (D.P.R. July 14, 2023) (Delgado-Colón, J.) (denying the defendant's *Franks* motion without a hearing because the affidavit was a 'barebones proffer' that 'falls short of meeting *Franks*' stringent standard for an evidentiary hearing, let alone the suppression of evidence'). In sum, the unsubstantiated allegations made against Agent Smith are insufficient to warrant *Franks* relief.

E.  <u>The *Franks* Motions should additionally be denied, as another federal district judge, independently determined that the November 5 Affidavit—absent the factual error—established probable cause to support the issuance of a search warrant.</u>

As previously noted, the factual error was corrected, and a revised affidavit—the November 5 Affidavit—was timely submitted to the United States District Court for the District of Puerto Rico on November 5, 2021. The undersigned independently determined that the November 5 Affidavit established probable cause and subsequently issued a search warrant for the devices seized from the defendant's home in Texas. (*See* 21-mj-1375 (MDM)). The government argues that this independent evaluation and probable cause finding by a federal magistrate judge is dispositive of the defendant's request, and this Court need not engage in a theoretical counterfactual analysis to conclude that the factual error was inconsequential. *See Southard*, 700 F.2d at 9; *Barbosa*, 896 F.3d at 69-72 (affirming the district court's denial of a *Franks* motion after evaluating alleged omissions and finding they did not alter nor impact the probable cause determination); *Spinosa*, 982 F.2d at 627 ("We need not decide whether the misrepresentations and omissions were made knowingly or recklessly because, as the district court found, even if the affidavit had been corrected to reflect the alleged misrepresentations and omissions, probable cause still would have existed for issuing the warrant."); *see also Ramos*, No. 060114, 2006 U.S. Dist. Lexis 95668, at *5 (Vélez-Rivé, J.) ("A *Franks* hearing will be denied if the defendant fails to make the necessary substantial preliminary showing that, absent the false information, the affidavit would have lacked sufficient evidence to support a finding of probable cause.")

Case 3:21-cr-00395-RAM-MDM    Document 468    Filed 12/27/24    Page 25 of 26

*United States v. Oluwasegun Baiyewu,*                                              Page 25
Crim. No. 21-395 (RAM)

Further support for the defendant's failure to satisfy the second prong of *Franks*—that any alleged misrepresentation or omission is material to have impacted the probable cause determination—is this Court's approval of the November 5 Warrant, which was supported by an affidavit devoid of any errors. This strongly suggests that probable cause existed, notwithstanding Agent Smith's mistake. As Agent Smith testified during the evidentiary hearing, and as reflected by a comparison of the two affidavits, the probable cause statement in the October 8 Affidavit is nearly identical to that in the November 5 Affidavit, with the exception of the error in Paragraph 28, which was corrected, and the necessary revisions to account for the fact that the second warrant pertained to a search of electronic devices in the FBI's possession, rather than the defendant's residence.[5] Consequently, the error in Paragraph 28 does not provide a valid basis for relief. *See Barbosa*, 896 F.3d at 68 (quoting *Franks*, 438 U.S. at 156) (noting that relief under *Franks* is available only if the defendant can demonstrate that, after excising false material, the remaining content of the affidavit is insufficient to establish probable cause).

## IV.    Conclusion

Based on the foregoing, the Court finds that the *Franks* Motions fail to satisfy either of the two substantial preliminary showings required by *Franks*: (1) that a false statement or omission in the affidavits was made knowingly, deliberately, and intentionally or with reckless disregard for the truth; and (2) that the alleged falsehood or omission was "necessary to the finding of probable cause." *Moon*, 802 F.3d at 149 (quoting *Franks*, 438 U.S. at 155-56). Indeed, the record reflects that the opposite is true. As such, the defendant has failed to meet his heavy burden for the granting of *Franks* relief.

---

[5] It is not reasonable to believe that simply because the November 5 Affidavit may have *mentioned* in its first paragraph that an arrest warrant had been previously issued by the court in the Southern District of Texas (the October 8 Warrant), this Court would have been so persuaded and so lazy as to rubber stamp the then *corrected* November 5 Warrant without independently reviewing it for probable cause.

*United States v. Oluwasegun Baiyewu,*
Crim. No. 21-395 (RAM)

Page 26

Accordingly, based on the information provided in the October 8 Affidavit, and the November 5 Affidavit (independent of the October 8 Affidavit), there was probable cause to issue the Warrants. The Court thus **RECOMMENDS** that the defendant's *Franks* Motions (Docket Nos. 98 and 157) be **DENIED**.

**IT IS SO RECOMMENDED.**

The parties have fourteen days to file any objections to this Report and Recommendation. Failure to file the same within the specified time waives the right to appeal this Report and Recommendation. *Henley Drilling Co. v. McGee*, 36 F.3d 143, 150-51 (1st Cir. 1994); *United States v. Valencia Copete*, 792 F.2d 4 (1st Cir. 1986).

In San Juan, Puerto Rico, this 27th day of December 2024.

<u>*s/Marshal D. Morgan*</u>
MARSHAL D. MORGAN
UNITED STATES MAGISTRATE JUDGE