IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,
    *Plaintiff*.

*vs*.

OLUWASEGUN BAIYEWU,
    *Defendant*.

CRIM. NO. 21-CR-395 (RAM)

## DEFENDANT MR. BAIYEWU'S TRIAL BRIEF

TO THE HONORABLE COURT:

The Defendant Mr. Oluwasegun Baiyewu, through his undersigned counsels, respectfully submits this Trial Brief,

### I.    INTRODUCTION

Trial is set to begin on August 4th, 2025, for a one-count superseding indictment filed on May 31, 2023, at this point with two defendants. OLUWASEGUN BAIYEWU and TEMITOPE SULEIMAN were charged in the superseding indictment for money laundering under 18 U.S.C. § 1956(h). The indictment details a variety of different and unrelated fraud schemes perpetrated by various co-defendants, acting separately from Mr. Baiyewu. In fact, Mr. Baiyewu is not alleged to have been involved in any way with any of the fraud schemes detailed in the indictment.

Mr. Baiyewu began buying, selling, transporting, and shipping vehicles in 2013. By 2020 when the allegations of money laundering against Mr. Baiyewu are alleged to have started, Mr. Baiyewu had grown his vehicle business to become a reputable and very successful domestic and overseas used car business. Mr. Baiyewu's car business Shipopo Autos was responsible for thousands of vehicles legitimately bought, transferred, and shipped annually. Mr. Baiyewu relied

1

on volume for profit, often making a profit $50-$150 dollars at each step for the buying, transporting and shipping of vehicles.  Mr. Baiyewu had no knowledge that a very small percentage of his customers and vehicles purchased were in any way tied to or involved payment with money from any fraud.   It is crucial to note that there are no facts in the indictment or in any of the discovery provided by the government that implicate Mr. Baiyewu in any of the fraud schemes detailed therein.  There have been 17 different discovery packets containing numerous terabytes of data released by the government (some released as late as June of 2025) during the nearly 4 years since the original indictment was issued against Mr. Baiyewu, and not a single scrap of discovery implicates Mr. Baiyewu in any of the fraud schemes.

  The indictment alleges that after various codefendants were successful in defrauding their victims, they would then use some of the money to purchase vehicles on an online auction platform through the company Copart.  The fraudsters would at times ask Mr. Baiyewu to bid on vehicles through his Copart account.  If the bid was successful, Mr. Baiyewu would send information on the amount of the winning bid, the lot and location of the vehicle, and the amount of money that needed to be paid to Copart to release the vehicle.  In these purchases Mr. Baiyewu never came into contact with or tendered proceeds of fraud to Copart.  Mr. Baiyewu did not know that the codefendants were paying their Copart bids with proceeds from fraud.  Mr. Baiyewu would also arrange for the transport and for the shipment of some of the vehicles to Nigeria, again Mr. Baiyewu did not know that any payments he received for transportation or shipping were the proceeds of fraud.  The profits Mr. Baiyewu earned for purchasing, transporting, and shipping vehicles were the same or similar to profits he earned for the thousands of legitimate transactions he conducted every year.

The government will offer no explanation as to why any of the co defendants involved in fraud would risk further exposer, liability, and presumably incur additional costs by letting Mr. Baiyewu know the payments were in fact made from proceeds from fraud. In other words, Mr. Baiyewu was a long time, large volume, legitimate car dealer; the people responsible for the fraud had no reason or incentive to do anything other than proceed with what they portrayed to Mr. Baiyewu as typical and legitimate car buying, transporting, and shipping transactions.

In the original indictment filed on October,20, 2021, Mr. Baiyewu was the lone defendant, originally charged with conspiracy to commit wire fraud and wire fraud under 18 U.S.C § 1343, and money laundering under 18 U.S.C. § 1956(h). Mr. Baiyewu was never indicted for either of the wire fraud charges brought in the original indictment. The wire fraud charges against Mr. Baiyewu were included in the original indictment to try and support and create a misleading and fictitious link between Mr. Baiyewu and the underlying fraud in order to bolster the government's weak (if not, non-existent) case against Mr. Baiyewu for money laundering. In addition to this fictitious link to fraud, the government's lead Agent during the investigation, Agent Marc Smith, swore to an affidavit in support of the search and arrest warrants against Mr. Baiyewu; which Agent Smith knew contained a misrepresentation that also created a false tie between Mr. Baiyewu and the underlying fraud. A Franks's suppression hearing was held on this issue. Conspicuously the government has indicated that it does not intend to call its lead Agent, Agent Smith, as a witness in the upcoming trial. The superseding indictment was filed by the government to again attempt to create a fictitious link between Mr. Baiyewu and fraud.

## II.    LEGAL BACKGROUND

The government has based its allegations of money laundering under either 18 U.S.C § 1956, or 1957 on the foundational requirements of fraud which include, wire fraud, mail fraud, access device fraud, access device fraud conspiracy, and money laundering conspiracy.

### A. CONSPIRACY

To establish a conspiracy the government must prove beyond a reasonable doubt that:

> (1), that the agreement specified in the indictment, and not some other agreement or agreements, existed between at least two people to [substantive crime]; and(2) that [defendant] willfully joined in that agreement; and (3), that one of the conspirators committed an overt act during the period of the conspiracy in an effort to further the purpose of the conspiracy.
>
> A conspiracy is an agreement, spoken or unspoken. The conspiracy does not have to be a formal agreement or plan in which everyone involved sat down together and worked out all the details.
>
> But the government must prove beyond a reasonable doubt that those who were involved shared a general understanding about the crime. Mere similarity of conduct among various people, or the fact that they may have associated with each other or discussed common aims and interests does not necessarily establish proof of the existence of a conspiracy, but you may consider such factors.
>
> To act "willfully" means to act voluntarily and intelligently and with the specific intent that the underlying crime be committed-that is to say, with bad purpose, either to disobey or disregard the law-not to act by ignorance, accident or mistake. The government must prove two types of intent beyond a reasonable doubt before [defendant] can be said to have willfully joined the conspiracy: an intent to agree and an intent, whether reasonable or not, that the underlying crime be committed. Mere presence at the scene of a crime is not alone enough, but you may consider it among other factors. Intent may be inferred from the surrounding circumstances.
>
> Proof that [defendant] willfully joined in the agreement must be based upon evidence of [his/her] own words and/or actions. You need not find that [defendant] agreed specifically to or knew about all the details of the crime, or knew every other co-conspirator or that [he/she] participated in each act of the agreement or played a major role, but the government must prove beyond a reasonable doubt that [he/she] knew the essential features and general aims of the venture. Even if [defendant] was not part of the agreement at the very start, [he/she] can be found guilty of conspiracy if the government proves that [he/she] willfully joined the agreement later. On the other

4

hand, a person who has no knowledge of a conspiracy, but simply happens to act in a way that furthers some object or purpose of the conspiracy, does not thereby become a conspirator.

An overt act is any act knowingly committed by one or more of the conspirators in an effort to accomplish some purpose of the conspiracy. Only one overt act has to be proven. The government is not required to prove that [defendant] personally committed or knew about the overt act. It is sufficient if one conspirator committed one overt act at some time during the period of the conspiracy. Pattern Criminal Jury Instructions for the District Courts of the First Circuit § 4.18.371(1) (2024) (Hereinafter Pattern Charges).

### B. WIRE FRAUD

The government must prove each of the following elements for wire fraud beyond a reasonable doubt: (1) a scheme, substantially as charged in the indictment, to defraud or to obtain money or property by means of false or fraudulent pretenses; and (2) the fraudsters' knowing and willful participation in this scheme with the intent to defraud, with knowledge of its fraudulent nature and with the specific intent to defraud. (3) that an interstate wire was used in furtherance of the scheme to defraud. Pattern Charges §4.18.1341.

### C. MAIL FRAUD

The government must prove each of the following elements for mail fraud beyond a reasonable doubt: (1) a scheme, substantially as charged in the indictment, to defraud or to obtain money or property by means of false or fraudulent pretenses; and (2) the fraudsters' knowing and willful participation in this scheme with the intent to defraud, with knowledge of its fraudulent nature and with the specific intent to defraud, and (3)the government must prove the use of the U.S. mail. Pattern Charges § 4.18.1343

### D.    ACCESS DEVICE FRAUD

The government must prove each of the following elements for access device fraud beyond a reasonable doubt: (1) a fraudster used an access device, (2) without authorization and thereby obtained something of value aggregating at least $1,000 during the one year period; (3) the fraudsters acted knowingly, willfully and with the intent to defraud; and (4) the fraudsters' conduct affected interstate or foreign commerce. Pattern Charges § 4.18.1029

E.    18 U.S.C. 1956 MONEY LAUNDERING

After first establishing that the funds alleged in the money laundering conspiracy charged were in fact derived from one of the listed fraud schemes, the government must also then prove each of the following elements of money laundering under 18 U.S.C. 1956 beyond a reasonable doubt: "Defendant agreed with one or more coconspirators to (1) knowingly conduct a financial transaction, (2) involving funds that Defendant knew to be the proceeds of some form of unlawful activity, (3) that were in fact the proceeds of "specified unlawful activity" ("SUA"), and (4) that Defendant knew the transactions were designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of such unlawful activity." Pattern Charges § 4.18.1956(h).

The government must prove not only that Mr. Baiyewu knew that the funds involved in the financial transactions with Copart were derived from fraud, but it must also prove that Mr. Baiyewu knew that the transactions with Copart were intended to conceal the illicit proceeds.[1]

F.  18 U.S.C. 1957 MONEY LAUNDERING

After first establishing that the funds alleged in the money laundering conspiracy charged were in fact derived from one of the listed fraud schemes, the government must also then prove

---

[1] *United States v. FrigerioMigiano*, 254 F.3d 30, 33 (1st Cir. 2001)

each of the following elements beyond a reasonable doubt under 18 USC 1957: (1), that [defendant] [deposited; withdrew; exchanged funds] [or attempted to deposit; withdraw; exchange funds] over $10,000 in a financial institution affecting interstate commerce on the date specified; (2), [he/she] knew that the [money; deposit; etc.] came from some kind of criminal offense; (3), the [money; deposit; etc.] was in fact criminally derived from [unlawful specified activity]; and (4), the [unlawful specified activity] took place in the United States. Pattern Charges § 4.18.1957.

Contrary to the government's argument in their trial brief, the government *does need* to prove that Defendant Mr. Baiyewu knowingly joined a conspiracy to launder wire fraud proceeds: it is insufficient to demonstrate Defendants' knowledge that the proceeds were derived from some form of unlawful activity.[2]

### III. SUMMARY OF TRIAL EVIDENCE

As detailed in their trail brief the government will seek to introduce evidence to establish that various codefendants (Not Mr. Baiyewu) were in fact involved in various fraud schemes. It is important to note that as of the date of the filing of this brief all the co-defendants except Mr. Baiyewu and Mr. Sulieman have entered a plea of guilty. Additionally, the government will seek to introduce evidence that at least a portion of the fraud proceeds were applied to Mr. Baiyewu's Copart account for the purchase of vehicles.

As Defendants Omotayo, Dudobo, and Adelekan have pleaded guilty, Mr. Baiyewu objects to the use of evidence related to other co-defendants who have pleaded guilty when such evidence

---

[2] United States v. McGauley, 279 F.3d 62, 69 (1st Cir. 2002) cited by the government, did not decide that the government standard of proof did not require it to prove that a defendant knowingly joined a conspiracy to launder wire fraud proceeds. What McGauley held was that for a conviction under 18 U.S.C. § 1957 for engaging in monetary transactions in property derived from a specified unlawful activity does not require that the defendant also have been convicted of the underlying unlawful activity.

7

has no connection whatsoever to Mr. Baiyewu, including , but not limited to, any evidence about *Olad Trading*.

Similarly, Mr. Baiyewu also objects to any attempt by the government to present allegations or evidence intended to vary the allegations of the Superseding Indictment, such as for example "*as far back as early 2018, Adelekan, Omotayo, Baiyewu—and defendant Suleiman—worked together in a similar fashion described in the preceding paragraph, to obtain black market U.S. Dollars to pay for cars.*" The government should not be permitted to attempt to expand the scope of the indictments or to introduce new facts that would unfairly surprise the defendant Mr. Baiyewu and hinder his ability to prepare a defense. Not even the government can assert that the 2018 alleged "black market" allegations were part of the same scheme or conspiracy alleged in the indictments.

The government will also seek to introduce evidence that implicates that the codefendants involved in the underlying fraud schemes sought to launder their funds through the conversion of the fraud proceeds into vehicles that would then be sold in the United States or shipped to Nigeria for sale. The government will also attempt to introduce evidence of the defendants often attempting to procure US dollars in exchange for Nigerian Nira. The government will attempt to disguise these transactions as being somehow related to evidence of money laundering. However, there is a crucial fact and element that the government intentionally glosses over and neglects to sufficiently address in their indictments, affidavits, briefs, and discovery.

The government fails to adequately address the Nigerian anti dollarization policy and the strict policy by American banks against wire transfers into American accounts from Nigeria in Nira, the currency used in Nigeria. It is impossible for any of the Agents with any experience, or for any of the government's attorneys with even a limited understanding of Nigerian business

practice or Nigerian economics to not be familiar with the Nigerian anti dollarization policy, or American banking practices related to transactions in Nira. The Nigerian anti dollarization policy and American banking practices make it difficult if not impossible for an individual to use Nira in the United States as a form of currency or payment. In fact, Copart had a strict policy in accordance with American banking policies against accepting Nira as a form of payment. Therefore, individuals with Nigerian bank accounts containing Nira living in the United States or living in Nigeria were forced to try and find sources to convert their Nira into US dollars. As the government accurately describes in its brief, time is of the essence when purchasing cars through Copart. If payments were not received within 3 days, the buyer would begin to incur additional costs reducing profitability. Buyers with Nira were forced to find quick means to convert the Nira and have the payments applied in person directly to Copart by someone in the United States. The government will intentionally fail to address these two obstacles in an effort to further their claim that the attempt by Nigerians to convert Nira into dollars is evidence of money laundering, when in fact these two policies create a business environment in which a Nigerian must use these methods of procuring dollars to do business in the United States. Mr. Baiyewu through his defense will seek to introduce evidence that clearly explains both the Nigerian anti dollarization policy and the policies used by American banks related to Nira.

      The government will seek to cast suspicion on the use of money orders in amounts under $1k US dollars. In fact, much of their case is focused on the use of money orders as support for their allegations of money laundering. However, as the government noted in their trial brief on page 9, Copart offered a discount for secure payment methods including money orders. Of course, any legitimate car buyer would seek to increase profitability by using money orders to secure a discount. It is also important to note that money orders are generally not available for

purchase in amounts that exceed $1k, which would create the necessity of multiple money orders of $1k or less being used to pay for a Copart bid.  The government also completely ignores other forms of payment, including direct wire transfer, which Mr. Baiyewu used to pay for his Copart account bids.

Lastly, the government focuses on anonymity and the need for money launderers to conceal their identity, and the government offers the use of money orders to further this goal of anonymity.  This is simply ridiculous considering that the government knows that every Copart payment requires the payor to introduce a valid form of identification when making payment.  In fact, every money order transaction sent by the government in discovery contains the correct and actual identity of the individual who tendered the payment.  The fact is, the usage of money orders for payment to Copart is not evidence of money laundering, in fact to the contrary, it is exculpatory given the transparency required for the payment to Copart.  As stated in their trial brief on page 9, the government will attempt to introduce evidence that fraudsters and money laundering try to obscure their identity trying to work in anonymity, and make every effort to avoid leaving a paper trail, as they stated "Obscuring identity is critical, so steps are taken to avoid creating a "paper trail" that could allow law enforcement and financial institutions to discover the identities of key players in the organized network."  Conversely, Mr. Baiyewu will introduce evidence of voluminous amounts of business records and filings all under his real name establishing a clear lack of anonymity, a strong and well-maintained paper trail, and complete transparency, all in direct contradiction to what the government describes as the hallmarks of money laundering operations.

Ultimately, the government will seek to establish through their evidence that the co-defendants responsible for fraud, used fraud proceeds to purchase vehicles.  These codefendants

sometimes purchased vehicles through Mr. Baiyewu's Copart account. The purchase of the vehicles often involved communications about procuring dollars for Nira and often involved payment to Copart in the form of money orders. Copart gave a discount for secured payments including money orders.

The defense will seek to introduce evidence through business records, testimony, expert testimony that establishes that Mr. Baiyewu bought, sold, transported, and shipped thousands of vehicles annually. The defense will also seek to introduce evidence that the transactions described by the government tied to codefendants responsible for fraud were in no way different in form and profit from thousands of other legitimate transactions Mr. Baiyewu conducted, that the profit he received from these transactions was the same or similar to profits he received from other legitimate transactions, and that Mr. Baiyewu had no knowledge or reason to believe that a handful of the thousands of transactions Mr. Baiyewu conducted were in any way related to fraud. Mr. Baiyewu has conducted business in the same manner as other large volume sales businesses, and in the same manner has attempted to avoid any link or association with criminal activities. However, if as with other volume sales businesses, a criminal seeks to purchase something with proceeds from fraud, it is often difficult if not impossible for a business to investigate the source of payment from customers.

                                                  Respectfully Submitted,

                                                  **SANCHEZ LA COSTA LAW FIRM**

                                                  /s/ *Carlos M. Sanchez La Costa*
                                                  **Carlo M. Sanchez La Costa**
                                                  *Lead Counsel*
                                                  USDC Bar No. 209410
                                                  Post Office Box 9023027
                                                  San Juan, Puerto Rico 00902-3027

Telephone: (787) 729-4646
Email: csanchez@sanchezlawpr.com

**PAZ AND ASSOCIATES LAW FIRM**

/s/ *David M. Paz*

**David M. Paz**
*Lead Counsel Hac Pro Vice*
Texas State Bar Number: 24056111
1001 Texas Ave., Suite 570
Houston, Texas 77002
Telephone: (281) 743-7559
Fax: (281) 377-5047
Email: pazandassociates@hotmail.com

**COUNSEL FOR THE DEFENDANT, OLUWASEGUN BAIYEWU**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing has been duly served upon counsel representing the Government in this matter *via* electronic filing with the Clerk of the Court using the CM/ECF System which will send notification of such to the Assistant United States Attorneys and all counsel of record on July 28, 2025.

/s/ *Carlos M. Sanchez La Costa*

**Carlo M. Sanchez La Costa**
*Lead Counsel*
USDC Bar No. 209410


/s/ *David M. Paz*

**David M. Paz**
*Lead Counsel Pro Hac Vice*
Texas State Bar Number: 24056111

**COUNSEL FOR THE DEFENDANT,
OLUWASEGUN BAIYEWU**