**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

UNITED STATES OF AMERICA,

**Plaintiff,**

v.

[1] OLUWASEGUN BAIYEWU and
[4] TEMITOPE SULEIMAN,

**Defendants.**

**CRIMINAL NO. 21-395 (RAM)**

## OMNIBUS OPINION AND ORDER

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending before the Court is the Government's *Trial Brief and Omnibus Motions in Limine* ("*Omnibus Motions*") and Defendant Oluwasegun Baiyewu's ("Defendant" or "Baiyewu") *Response and Opposition to Government's Omnibus Motions in Limine* ("*Response*"). (Docket Nos. 579 and 629, respectively). Also pending are several related motions *in limine* the Court will address from Defendant Baiyewu at Docket Nos. 568, 580, 591, 593, and 594, as well as from the Government at Docket No. 675.

Additionally, the Court will address Defendant Baiyewu's pending motions *in limine* at Docket Nos. 562, 576, 577, 582, and 590.

The Court finds as follows:

### I.    BACKGROUND

On October 20, 2021, a grand jury in the District of Puerto Rico returned a single-count *Indictment* charging Baiyewu with

conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). (Docket No. 5). About a year and a half later, on March 31, 2023, a grand jury returned a single-count *Superseding Indictment* charging Baiyewu, Temitope Suleiman ("Suleiman"), and three co-defendants with conspiracy to commit money laundering, in violation of 18 U.S.C. §§ 1956(h) and 3147. (Docket No. 86). The *Superseding Indictment* alleges numerous schemes supporting the money laundering conspiracy, including business email compromises ("BEC"), romance scams, and unemployment insurance ("UI") fraud. Id. ¶ 21. These charges arose out of events occurring between May 2020 and October 2021. Id. ¶ 19.

Defendant Baiyewu has filed a series of motions *in limine* in this case. (*See* Docket Nos. 562, 568, 576, 577, 580, 582, 590, 591, 593, and 594). The Government filed its *Trial Brief and Omnibus Motions in Limine* on July 3, 2025. (Docket No. 579). Baiyewu filed a *Response* on July 18, 2025. (Docket No. 629). The Government has also filed several other motions *in limine*. (*See* Docket Nos. 650 and 675).

Trial is set to commence on August 4, 2025. (Docket No. 487).

## II.  APPLICABLE LAW

### A. Federal Rules of Evidence 401 and 403

A motion *in limine* is a "pretrial request that certain inadmissible evidence not be mentioned at trial." United States v.

Agosto Vega, 731 F.3d 62, 65 (1st Cir. 2013). Motions *in limine* can also seek to conditionally admit evidence. *See* United States v. Rodríguez-Kelly, 2024 WL 4262531 *2 (D.P.R. 2024) ("A motion in limine's purpose is to aid the trial process by allowing the court to address, in advance, the admissibility and relevance of anticipated evidence, and to resolve key issues slated for trial [in order to] minimize[] the need for prolonged objections and interruptions once the trial is underway."). The "district court is accorded a wide discretion in determining the admissibility of evidence under the Federal rules. Assessing the probative value of [the proffered evidence] and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403." United States v. Abel, 469 U.S. 45, 54 (1984).

Under the Federal Rules of Evidence, relevant evidence is evidence that "has any tendency to make a fact more or less probable" than otherwise, and "the fact is of consequence in determining the action." Fed. R. Evid. 401. Relevant evidence may be excluded, however, "if its probative value is substantially outweighed by a danger of" problems such as "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

### B. Federal Rule of Evidence 404(b)

Rule 404(b) governs the admissibility of "other crimes, wrongs, or acts" than those for which a defendant currently stands trial. Fed. R. Evid. 404(b). While such evidence is "not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," it "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Id. Admission of such evidence requires the court "to conduct an initial 'two-step analysis,' by first determining 'whether the evidence has a special relevance in that it is offered not to show a defendant's evil inclination but rather to establish some material fact.'" United States v. Agramonte-Quezada, 30 F.4th 1, 15 (1st Cir. 2022) (quoting United States v. Tkhilaishvili, 926 F.3d 1, 15 (1st Cir. 2019) (internal quotation marks omitted)). Then, if the court finds sufficient relevance, "'the next step requires that it gauge probative weight against prejudicial effect,' pursuant to Rule 403.'" Id. (quoting Veranda Beach Club Ltd. P'ship v. W. Sur. Co., 936 F.2d 1364, 1373 (1st Cir. 1991)).

"[E]ven when initially consistent with Rule 404(b), prior bad act[s] evidence may become troublesome if the evidence itself is unfairly prejudicial or if it is admitted in excess or misused by

the government over the course of the trial." United States v. Centeno-González, 989 F.3d 36, 51 (1st Cir. 2021) (affirming district court decision to admit evidence of prior arrest involving concealed arms because lack of mistake and knowledge were directly at issue). However, "restrained use of prior bad act evidence is consistent with [First Circuit] case law, especially when coupled with [a] court's limiting instruction." Id. at 52 (finding district court made it clear to the jury that "[e]ven if you find that the Defendant may have committed similar acts in the past, this is not to be considered as evidence of character to support an inference that the Defendant committed the acts charged in this case"); see United States v. Altvater, 954 F.3d 45, 55 (1st Cir. 2020) (holding "we have a long-standing presumption that jurors follow instructions" and prejudice resulting from admission of testimony related to prior bad acts may be ameliorated by proper jury instructions (internal quotation marks and citation omitted)).

### C. Federal Rule of Evidence 801

Hearsay is an out-of-court statement offered "to prove the truth of the matter asserted," and is not admissible unless provided otherwise by a federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court. See Fed. R. Evid. 801(c) and 802. "Out-of-court statements offered not to prove the truth of the matter asserted but merely to show

context . . . are, by definition, not hearsay." United States v.
Pena, 24 F.4th 46, 61 (1st Cir. 2022) (quotation marks omitted).
Rule 801(d) addresses statements that are not considered hearsay
if certain conditions are met; and Rules 803 and 804 provide
exceptions to the rule against hearsay – for regardless of whether
the declarant is unavailable as a witness and when a declarant is
unavailable.

Under Rule 801(d)(2)(E), an out-of-court statement made by a
party's co-conspirator "during and in furtherance of the
conspiracy does not constitute inadmissible hearsay, even when
admitted for its truth." Pena, 24 F.4th at 61 (internal quotation
marks omitted). To fit this rule, the "statement's proponent must
establish by a preponderance of the evidence 'that a conspiracy
embracing both the declarant and the defendant existed, and that
the declarant uttered the statement during and in furtherance of
the conspiracy.'" Id. (quoting United States v. Sepulveda, 15 F.3d
1161, 1180 (1st Cir. 1993). While the court may consider contents
of an alleged co-conspirator's statements as evidence of the
conspiracy, "the statement's proponent must also present some
other evidence 'sufficient to delineate the conspiracy and
corroborate the declarant's and the defendant's roles in it.'"
(quoting United States v. Piper, 298 F.3d 47, 52 (1st Cir. 2002).
If a statement is not offered for its truth, the proponent need

not meet these conditions. Id. A statement is "considered to be in furtherance of the conspiracy as long as it tends to promote one or more of the objects of the conspiracy." United States v. Ciresi, 697 F.3d 19, 28 (1st Cir. 2012); *see* United States v. Pérez-Vásquez, 6 F.4th 180, 195 (1st Cir. 2021) ("Statements made to foster a relationship of trust or keep coconspirators abreast of current developments and problems facing the group may further the conspiracy." (international quotation marks omitted)).

### III. DISCUSSION

**A. Motion to Conditionally Admit Business Records under Fed. R. Evid. 902(11)**

The Government moves to conditionally admit financial records, shipping records, DMV records, and phone and internet service subscriber reports as business records under Fed R. Evid. 902(11). (Docket No. 579 at 28-31). The Government attached certificates of authenticity executed by various custodians to satisfy Rules 803(6) and 902(11). Id. at 28-30; (*see* Docket No. 579-1). It argues the records were created in the regular course of business, not in anticipation of litigation, thus making the evidence non-testimonial and not barred by the confrontation clause. (Docket No. 579 at 30-31). On July 30, 2025, the Government also filed a *Motion in Limine Submitting Additional Business Record Certificates* that correspond to its argument. (Docket No. 675).

Attached are two additional certificates relating to business records form the United States Customs and Border Patrol and Copart, Inc. (Docket No. 675-1).

Baiyewu argues that many of the certifications presented fail to comply with the requirements for business records under Rules 803(6) and 902(11) and that some of the records will violate Defendant's Sixth Amendment right to confrontation. (Docket No. 629 at 2-7). Defendant asserts that: (1) the certifications do not specify clear descriptions of the documents or the number of pages being certified, undermining any indicia of trustworthiness under Rule 902(1); (2) the certifications fail to satisfy the five requirements laid out in Rule 803(6); and (3) a custodian should be required to testify. Id. at 2-4.

Defendant also contends that some of the records are out-of-Court testimonial statements that are banned unless the mentioned co-defendant testifies and is subject to cross-examination. Id. at 4-7. Defendant cites United States v. Cameron, 699 F.3d 621 (1st Cir. 2012), for the premise that "reports generated by internet service providers were inadmissible as business records because they were compiled specifically for trial, making them testimonial in nature." Id. at 5 (arguing "statements, even if contained in business records, are considered testimonial if their primary purpose is to establish or prove past events potentially relevant

to later criminal prosecution"). Defendant maintains that is the problem with some of the present records, specifically since the "government states that it will try to introduce all chats and texts on those phones" between Baiyewu and his co-defendants, as well as between defendants and uncharged members of the conspiracy or uncharged members of the conspiracy and the underlying fraud. Id. at 5-7.

The Government replied, asserting that Defendant misconstrues the application of the Confrontation Clause, the First Circuit's holding in Cameron, and Supreme Court precedent. (Docket 677). The Government highlights that in Cameron, "it was not the 'act of turning the reports over to law enforcement that made the documents testimonial – it was that [the company] **created** the documents for the primary purpose of turning them over' to law enforcement." Id. at 5 (quoting Tran v. Roden, 847 F.3d 44, 51 (1st Cir. 2017)). Accordingly, that does not mean "non-testimonial business records somehow become testimonial simply because the government seeks to use them as evidence against a criminal defendant." Id. at 4 (quoting Cameron, 699 F.3d at 653-54).

Defendant filed a Sur-Reply to clarify its position on Cameron and "CMEC CyberTipline Reports." (Docket No. 683).

As a preliminary matter, Defendant's arguments regarding chat, text, and communication are not relevant to this specific

motion, since the Government's motion is specifically for phone
and internet subscriber records (amongst other records), not the
contents of communications. (*See* Docket No. 677 at 2-3 ("Baiyewu
also appears to be conflating one issue with another in his
Response, as he raises various records not a part of the
[G]overnment's Motion in Limine, *see, e.g.*, Response at 5-7.").
The Government and Court address statements and messages content
in a later section.

"Rule 803(6), known as the business records exception,
authorizes the admission of certain documents under an exception
to the usual prohibition against the admission of hearsay
statements." U.S. Bank Tr., N.A. as Tr. For LSF9 Master
Participation Tr. V. Jones, 925 F.3d 534, 537 (1st Cir. 2019).
Rule 803(6) provides that a "record of an act, event, condition,
opinion, or diagnosis" is "not excluded by the rule against
hearsay" if:

(A) the record was made at or near the time by – or from
information transmitted by – someone with knowledge;

(B) the record was kept in the course of regularly
conducted activity of a business, organization,
occupation, or calling, whether or not for profit;

(C) making the record was a regular practice of that
activity;

(D) all these conditions are shown by the testimony of
the custodian or another qualified witness, or by a

> certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>
> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

"The determination of whether a foundation has been properly laid for application of [Rule 803(6)] and whether the circumstances indicate lack of trustworthiness is within the discretion of the court." United States v. Patterson, 644 F.2d 890, 900-01 (1st Cir. 1981). Records admissible pursuant to Rule 803(6) are self-authenticating if they are accompanied by an appropriate certification. See Fed. R. Evid. 901(11).

Upon review, the Court agrees with the Government's position and finds that the records meet the requirements of Rule 803(6) as business records, and the certifications provided under Rule 902(11) obviate the need for live testimony. The Court also finds that the proffered records are non-testimonial and that their admission does not trigger the Confrontation Clause because they are business records created in the normal course of business, not for criminal prosecution. See Tran v. Roden, 847 F.3d 44, 51 (1st Cir. 2017) ("Generally, courts do not label business records as testimonial as long as they are not created for the purpose of prosecution."); see also Crawford v. Washington, 541 U.S. 36, 56

(2004) (highlighting business records "by their nature . . . are not testimonial").

The Court hereby **GRANTS** the Government's *Motion to Conditionally Admit Business Records under FRE 902(11)* and **GRANTS** the Government's *Motion in Limine Submitting Additional Business Record Certificates* at Docket No. 675.

### B. Motion to Introduce Evidence of Adelekan and Omotayo's Joint Involvement with Fraud and Money Laundering Prior to the Timeframe of the Alleged Conspiracy

The Government seeks to introduce other-acts evidence of Defendants Adelekan and Omotayo's joint involvement in wire fraud and money laundering conspiracies involving the proceeds of BEC and investment fraud scams, from 2017 through April 2019. (Docket No. 579 at 31-35). This would include certified records concerning Defendants' Southern District of New York ("SDNY") indictment on those charges and a court instruction pertaining to their conditions of pretrial release. Id. at 31. The Government asserts this information is directly relevant to showing Defendants were on notice that what they were doing was against the law since the charges were for conduct very similar to the issues in this case, including the movement of funds to Nigeria in the form of salvaged vehicles. Id. at 31-35. Additionally, the Government argues its non-propensity purpose would be to contextualize Defendant's relationship and mutual trust; further, it would be probative of

the other Defendants' mental state and knowledge of the criminal nature of the conspiracy "to the extent the other Defendants were aware of the case against" Adelekan and Omotayo in SDNY. Id. at 32-33. The Government contends that any possibility of prejudice could be minimized by limiting instructions regarding Rule 404(b) proof. Id. at 34-35.

In response, Baiyewu asserts the motion is moot and should be denied since both Defendants Adelekan and Omotayo have entered guilty pleas.[1] (Docket No. 629 at 7). Defendant argues that at this point the evidence is irrelevant under Rule 401, unfairly prejudicial under Rule 403, and is inadmissible hearsay under Rule 802 – such that its introduction may violate his confrontation clause and due process rights. Id. Baiyewu's co-defendants' prior other-acts do not make it more or less probable that Defendant participated in a money laundering conspiracy and would serve no purpose other than unfairly suggesting guilt by association – which is what Rule 404(b) seeks to prevent. Id.

Given that Defendants Adelekan and Omotayo entered change of pleas since the Government first filed its motion, the Court agrees with Defendant in that introduction of their other acts runs afoul

---

[1] Baiyewu's *Motion in Limine to Exclude Pleadings and Other Information from Other Criminal Cases Unrelated to the Allegations Against Mr. Baiyewu* also addresses this matter and seeks to exclude pleadings filed in United State v. Adelekan, et al., 19-cr-291 (SDNY). (Docket No. 568). The Court addresses will address this motion in its entirety below.

of Rule 403. Admission of such evidence now has reduced relevance and probative value, and the Government's alleged contention that "to the extent other Defendants were aware of the case" it could be probative of the other Defendants' mental states holds insufficient weight when compared to its potential prejudicial effect.

The Court hereby **DENIES** the Government's *Motion to Introduce Evidence of Adelekan and Omotayo's Joint Involvement with Fraud and Money Laundering Prior to the Timeframe of the Alleged Conspiracy*.

### C. Consciousness of Guilt Evidence

The Government seeks to introduce the following consciousness of guilt evidence at trial: (1) body camera footage recorded by the police officer stationed at the rear of Baiyewu's house when law enforcement executed search and arrest warrants on October 14, 2021, showing Defendant fled out the back window of his home; and (2) evidence Adelekan placed his phone on top of the refrigerator during the execution of a search warrant on his home on November 18, 2020, attempting to hide the device from officers conducting the search. (Docket No. 579 at 35-36). The Government argues this evidence is directly relevant to the charged offense and also demonstrates consciousness of guilt of the charged offenses – making them properly admissible under Rule 404(b) for non-

propensity purposes such as intent, knowledge, absence of mistake, *and* consciousness of guilt. Id.

Baiyewu asserts that there is "insufficient evidence to support an inference" that his alleged attempted flight from his home is evidence of his guilt in the schemes alleged in the *Superseding Indictment*. (Docket No. 629 at 8-9). He maintains he was "quietly sleeping in his home when he heard the pounding [o]n his front door" and that he had no knowledge of the charges against him. Id. (citing United States v. Otero-Méndez, 273 F.3d 46, 53 (1st Cir. 2001) and United States v. White, 488 F.2d 660 (8th Cir. 1973)).

Baiyewu has also filed a *Motion in Limine to Exclude Evidence: Attempted Flight at the Time of His Arrest* that elaborates more fully on the matter. (Docket No. 593). Baiyewu highlights that First Circuit precedent cautions flight evidence is controversial and should be handled with care – requiring that the Government "must present sufficient extrinsic evidence of guilt to support an inference that a defendant's flight was not merely an episode of normal travel but, rather, the product of a guilty conscience related to the crime alleged." Id. at 2-3 (quoting United States v. Bendetti, 433 F.3d 111, 116 (1st Cir. 2005). Defendant argues that evidence linking him to the indicted schemes is tenuous at best: the financial transactions are just as easily attributable

to unfamiliar foreign business customs or an effort to circumvent the Nigerian "Dollarization Policy" versus some unlawful conduct. Id. at 4-5. Moreover, the attempted exit from his house was based on panic at being awakened in the dark, early morning hours with a fear of someone burglarizing his home. Id. at 5. Additionally, Baiyewu argues another plausible fear is unlawful immigration enforcement based on his ex-wife's threats to call immigration for his removal. Id. at 3-5 (citing United States v. Doe, 2011 U.S. Dist. LEXIS 137031 * (D. Me. Nov. 29, 2011)). Accordingly, Defendant argues any probative value is substantially outweighed by the danger of unfair prejudice. Id. at 5-6.

The Government responded, stating there is "sufficient factual predicate" to support that Defendant's attempted flight reflected his consciousness of guilt of the charged conduct and that FBI Agent Alejandro Ramos would provide testimony detailing the execution of the search warrant. (Docket No. 639). The testimony would describe that law enforcement "knocked on the front door and loudly identified themselves" at least three times, and that several law enforcement vehicles were parked in front of Defendant's home with their police lights activated – yet, instead of answering the front door, Baiyewu attempted to flee through a back window. Id. at 4. Additionally, the Government notes that Defendant knew Adelekan and Omotayo had been arrested and were

awaiting a criminal trial that was set to start one week later –
further, "Baiyewu would have known that he had been using U.S.
dollars that he bought from Adelekan and Omotayo to purchase cars
for years." Id. at 4-6.

Given the circumstances, the Government maintains that flight
evidence reflects Defendant's consciousness of his involvement in
the charged crime and that there was no reason for him to attempt
escape if he was not engaged in illegal activity. Id. at 5 (citing
Benedetti, 433 F.3d, United States v. Velazquez-Fontanez, 6 F.4th
205 (1st Cir. 2021), and United States v. West, 877 F.3d 434 (1st
Cir. 2017) for holdings where government presented sufficient
extrinsic evidence to support consciousness of guilt inference).
Furthermore, the Government highlights that the Court has latitude
in determining admissibility and that cautionary instructions can
mitigate undue weight for Rule 403 purposes. Id. at 2-4, 6.

The First Circuit has held that "[g]iven an adequate factual
predicate . . . evidence of a criminal defendant's flight is
generally thought to be probative of his or her consciousness of
guilt." Benedetti, 433 F.3d at 116. While the Court notes the agent
testimony the Government intends to introduce regarding law
enforcement identifying themselves when executing the warrant
potentially diminishes the validity of Baiyewu's burglary
concerns, the Government does not adduce a sufficient factual

predicate to admit the evidence. Although Baiyewu's contention of
unlawful immigration enforcement is speculative, that and other
reasons may exist for Defendant's actions that are fully consistent
with innocence. Knowledge that Adelekan and Omotayo were headed to
trial the following week is too attenuated a link to infer
consciousness of guilt to the present charge. Furthermore, the
probative value of Baiyewu's flight in relation to the money
laundering conspiracy is substantially outweighed by the potential
prejudicial effect at this time.

Accordingly, the Court excludes evidence of Baiyewu's flight.
The Government shall instruct its witnesses to avoid reference to
Defendant's alleged flight during their trial testimony. To the
extent the Court has excluded any evidence, the Government is free
to make a proffer at trial at the appropriate time outside the
hearing of the jury. *See* Benedetti, 443 F.3d at 117 (finding *in
limine* rulings are provisional and "not binding on the trial judge
[who] may always change his mind during the course of the trial"
(internal citation omitted)); *see also* Luce v. United States, 469
U.S. 38, 41 (1984) (noting *in limine* rulings are always subject to
change, especially if evidence unfolds in unanticipated manner).

The Court hereby **DENIES** the Government's *Consciousness of
Guilt Evidence* at Docket No. 579 and **GRANTS** Defendant Baiyewu's

*Motion in Limine to Exclude Evidence: Attempted Flight at the Time of His Arrest* at Docket No. 593.[2]

### D. Previous Marriage Evidence

The Government seeks to introduce testimony from Baiyewu's ex-wife, Kelsey Williams ("Williams"), regarding what she saw and heard Baiyewu and his confederates (including Suleiman) do while married to him. (Docket No. 579 at 36-39). This evidence may include: (1) Defendant lying to Williams about how he earned money during the first year of their relationship until eventually revealing he bought and sold cars from auction sites like Copart; (2) Defendant having money to support Williams and her son, including renting a pricey home, despite having no job; (3) Defendant failing to report income in 2019; (4) Williams witnessing Defendant obtain large amounts of cash from people in the Houston area, including Suleiman, once he openly conducted business in front of her; (5) Defendant regularly operating in cash, up to five thousand to twenty thousand dollars a day – going to buy money orders from several purchase locations and then driving to Copart to tender them; (6) Defendant typically keeping large amounts of cash in an unlocked drawer in the house or the console of his truck; and (7) on at least one occasion, Defendant bringing home

---

[2] As to the evidence against Adelekan, the Court **DENIES** it as moot given his change of plea.

over one hundred thousand dollars in cash and then claiming it was for a car when Williams asked. Id. at 36-37.

The Government argues this previous marriage evidence is directly relevant intrinsic evidence that illuminates the chronology of events and is highly probative and relevant for showing how Baiyewu was aware that he was involved in something illegal – otherwise he would have no reason to lie to Williams and handle daily large amounts of cash in a method used to "avoid reporting requirements, evade law enforcement detection, and to introduce layers of anonymity." Id. at 37-38. Regardless, the Government asserts the testimony is also admissible for non-propensity purposes of intent, preparation, plan, knowledge, and lack of mistake. Id. at 38-39. Specifically, the Government posits that the tax return information and Baiyewu's day-to-day business activities and methods show his patterns were consistent and intentional. Id. As for Rule 403 prejudice, the Government contends it is minimal since Williams will report her observations and Defendant is present to rebut. Id. at 39.

Baiyewu responded that testimony from Williams should be excluded on the basis of marital privilege, the fact that the testimony is extremely prejudicial and has no probative value to the *Superseding Indictment*, and that Williams' testimony is unreliable and would be ripe with hearsay. (Docket No. 629 at 9-

12). Additionally, Defendant argues that "on the government's own admission that 404(b) applies" the testimony will be used to introduce evidence of prior bad acts to disparage Defendant's character and persuade the jury that if he committed these prior bad acts, he must now be guilty of money laundering. Id. at 10-11. Moreover, Baiyewu argues using Williams' testimony to impugn his character is "exactly that which the government has sought to preclude" in its motion in limine requesting the court "preclude argument, testimony or evidence regarding specific instances of conduct offered to prove that defendant's good character and negate criminal intent." Id. at 11-12.

Baiyewu has also filed a *Motion in Limine Objecting to the Government's Notice to Use Kelsey Williams's Testimony and/or Statements as Barred by Marital Privilege and by Rule 403 and Rule 701 of the FRE* that elaborates on the matter. (Docket No. 591). Baiyewu argues Williams has no connection to the allegations, the Government is just trying to impair his right to a fair trial and convict him with "extraneous, unfounded and unfairly prejudicial allegations." Id. at 2.

First, Defendant asserts that any testimony from Williams is barred by the marital communications privilege since her statements are based on her interactions with Baiyewu *during* their marriage and he has not waived that privilege. Id. at 2-3. He

maintains that no exceptions apply since this is not a crime against a testifying spouse or their child, and Williams is not alleged to have participated in the underlying crime. Id. at 3-4. Additionally, Defendant contends that observations are covered under marital privilege since the substance of her statements necessarily involve communications by Baiyewu either verbally or through expressions intended to be covered. Id. at 4-5.

Second, Defendant states the testimony should be excluded under Rule 701 since Williams will be offering "opinions that are not rationally based on her perception, addressing legal or technical issues, and are unhelpful to the factfinder as well as unfairly prejudicial." Id. at 5-6. Third, Defendant argues the testimony should be excluded under Rule 403 because it would have an overly prejudicial effect on the jury, who will place unjust weight on her statements. Baiyewu claims Williams is prepared to say anything, "even serious falsehoods," to prejudice Defendant as part of "her efforts to strike back" him for filing a criminal case against her for domestic abuse. Id. at 6-7. Lastly, Defendant asserts that statements made by Williams are not credible due to her motivation to exact revenge and her attempt to perpetrate unemployment fraud on Baiyewu. Id. at 7-9. Further, her "observations" are ambiguous and unspecific, and do not include even an approximate time and date – adding to the unreliability

and lack of credibility of her testimony. Id. Moreover, Defendant asserts that admitting her testimony would waste time and lead to mini trials given the additional unrelated and irrelevant evidence that would be introduced in the process or proving or disproving her stories. Id.

In response, the Government asserts that the marital communications privilege is narrowly construed to protect confidential communications, *not* one spouse's observations of the conduct and actions of the other. (Docket No. 627 at 3-5). Likewise, communications made in the presence of a third party with no reasonable expectation of privacy are also not protected. Id. Therefore, the Government intends to have Williams describe her observations of certain conduct and non-communication events related to Defendant, as well as his interactions with co-conspirators; it does not intend for her to offer opinion testimony about the type of person Defendant is – so Rule 701 does not apply. Id. The Government argues that Williams' testimony is highly probative of Defendant's knowledge, intent, and lack of mistake, while the risk of unfair prejudice is minimal. Id. at 6.

"[C]laims of privilege are governed by the common law as interpreted by the courts in light of their reason and experience." United States v. Breton, 740 F.3d 1, 9 (1st Cir. 2014) (citing Fed. R. Evid. 501). Of relevance here, the marital communications

privilege "allows a defendant to bar his spouse or former spouse from testifying, as to any confidential communications made during their marriage." Id. at 10. However, the privilege is not limitless, and "like all privileges, the marital privileges hamper the truth-seeking process and must be interpreted narrowly." Id. at 10-11. The party asserting the privilege "bears the burden of showing that the privilege applies." Id. at 9 (citation omitted). For the privilege to be asserted, the following three prerequisites must be met: (1) "the marriage at the time of the communication was valid"; (2) "the communication must have been made with respect to which privilege is asserted"; and (3) "the communications must have been made in confidence." See Jimenez v. Amgen Mfg. Ltd., 692 F.Supp. 2d 219, 222 (2010).

"Although marital communications are presumed to be confidential, that presumption may be overcome by proof of acts showing that they were not intended to be private" – the presence of a third party negates this presumption, as well as the "intention that the information conveyed be transmitted to a third person." Pereira v. United States, 347 U.S. 1, 6 (1954). Notably, the privilege generally only extends "to utterances, and not to acts." Id.; see United States v. Trammel, 445 U.S. 40 (1980) (affirming that confidential communications between defendant and wife were privileged and therefore inadmissible, but that wife was

permitted to testify to any act she observed before or during the marriage and to any communication made in the presence of a third party). While "the extent of the privilege is broader than conversations and writings between spouses, protected confidential communications must at least consist of utterances, expressions, acts, or gestures which are intended to convey a message between spouses." González-Tomasini v. United States Postal Service, 2022 WL 2816714 (D.P.R. 2022) (collecting cases).

The Court finds that Williams will be permitted to testify about statements made by Defendant to her in the presence of third parties, statements made by Defendant to third parties in her presence, and as to her observations of Defendant's conduct or acts during their message **which did not involve a communicative gesture**. If the basis for Williams' knowledge is not her own observations and was only obtained through confidential communications with Defendant, that will also be precluded from testimony.

As to the evidence the Government stated it may seek to introduce, the Court finds:

1) Baiyewu initially lying to Williams about how he earned money is inadmissible since it is based on her communications with Defendant during their marriage.[3]

2) Defendant having money to support Williams and her son is admissible since it is based on her personal observations.

3) Williams' observations of Baiyewu obtaining large amounts of cash from people in the Houston area is admissible since it is based on her personal observations, plus it was business "openly conduct[ed]" in front of her in the presence of third parties.

4) Baiyewu failing to report income in 2019 is admissible so long as it is based on observations, not anything intended as confidential communications.

5) Baiyewu regularly operating in cash, as well as him going to purchase money orders and driving to Copart to tender them, is admissible so long as it is based on Williams' personal observations of these non-communicative acts.

6) Baiyewu typically keeping large amounts of case in the console of his truck or an unlocked drawer in the house

---

[3] The Court notes that it is unclear from the briefings when Baiyewu and Williams would be considered married for purposes of the marital communications privilege.

is admissible so long as it is based on Williams'
personal observations.

7) Baiyewu bringing home over one hundred thousand dollars
in cash is admissible as a personal observation.
However, the communications where Williams describes
Defendant as defensive and his explanation that it was
to buy a car are not admissible, since it is based on
communications during the marriage.

Since the Government states that Williams will offer no
opinion testimony as to the kind of person Defendant is, there
should be no Rule 701 issue. As to Rule 403, the Court finds that
the probative value of Williams' testimony is not substantially
outweighed by potential prejudice – and that the jury will be able
to make its own determinations as to her credibility. The Court
will address below the scope of any direct examination and cross
regarding domestic violence allegations.

The Court hereby **GRANTS in Part and DENIES in Part** the
Government's *Previous Marriage Evidence* and **GRANTS in Part and
DENIES in Part** Defendant Baiyewu's *Motion in Limine Objecting to
the Government's Notice to Use Kelsey Williams's Testimony and/or
Statements as Barred by Marital Privilege and by Rule 403 and Rule
701 of the FRE* at Docket No. 591.

E. **Motion to Introduce Evidence of Suleiman's Motive to Use an Alias and Knowledge of Illicit Source of Funds, and Plan to Use Buying and Shipping Cars as a Defense**

The Government seeks to introduce evidence related to Suleiman's motive for using the alias "Jonathan Akinfemi" following his arrest on a theft charge in Pasadena, Texas, as well as Suleiman's plan to use the defense of "buying and shipping cars" if caught. (Docket No. 579 at 39-41). The Government plans to: (a) elicit two witness testimonies; (b) introduce a recorded phone call wherein Suleiman tells a woman he recruited as a money mule that he established the Gmail account ("centuryhomes0@gmail.com") that was used to perpetrate a rental scam and that he opened the account for shipping cars; and (c) show emails provided by a fraud victim that "centuryhomes0@gmail.com" was used to trick at least one individual into sending money to the mule whose accounts were used to move funds to Suleiman and associates. Id. The Government argues that this is directly relevant to explaining why Suleiman began using an alias when making fraud-derived payments at Copart. Id. at 40. Alternatively, the Government asserts this is admissible under Rule 404(b) for demonstrating Suleiman's awareness of his own personal involvement in money laundering and fraud and proving his intent, knowledge, and absence of mistake. Id. at 40-41.

Baiyewu directs the Court to his *Motion in Limine to Exclude Pleadings and Other Information from Other Criminal Cases*

*Unrelated to the Allegations Against Mr. Baiyewu*. (Docket No. 568). Specifically, Defendant seeks to exclude: (a) pleadings filed in United States v. Adelekan, et al., 19-cr-291 (SDNY)[4] and (b) certain documents and recording relating to Pasadena, Texas criminal case allegedly involved Suleiman. Id. at 1.

As to the Pasadena, Texas case materials, Baiyewu asserts that the Government cannot articulate a non-propensity purpose for its introduction since the dismissed charge for using a false identity to steal a thousand dollars is unrelated to the present charge of conspiracy to commit money laundering, it was committed before the commencement of the alleged conspiracy in this case, and it did not involve Baiyewu. Id. at 7-10. Therefore, Defendant argues there is no causal or logical connection, besides impermissibly suggesting that a person of Nigerian descent who knows another Nigerian is more likely to commit this crime. Id. at 8-9. Baiyewu avers that since the evidence against him is "so weak and contradicted by legitimate business records," the Government

---

[4] Baiyewu asserts that the Government is impermissibly using Rule 404(b) to telegraph to the jury that because Adelekan committed the offenses for which he was convicted in SDNY, then he is guilty of participating in the present conspiracy with Baiyewu – making that propensity the "necessary link in the inferential chain" to Baiyewu. Id. at 2-7 (citing United States v. Vaourdakis, 233 F.3d 113 (1st Cir. 2000) for holding that the necessary link in an inferential chain must not include bad character or propensity evidence). Defendant maintains none of the proffered evidence is admissible against Baiyewu and that the spillover effect destroys his right to a fair trial because no limiting instruction can contain such an inflammatory propensity link. Id.

is instead trying to convict him with "bad act overkill." Id. at 10.

The Government response states that the motion was filed prematurely, conflates the Government's informal notice with a formal Rule 404(b) filing, and improperly assumes the Government intends to use the Texas case as further evidence of Baiyewu's guilt – thus raising speculative and irrelevant issues. (Docket No. 592 at 4-6). The Government directs the parties to its *Omnibus Motions*. Id. at 1.

The Court finds the Pasadena, Texas case relevant for the Government's argument regarding Suleiman's alleged use of the alias Jonathan Akinfemi. Alternatively, the materials can be admitted for non-propensity purposes such as knowledge, absence of mistake, and Suleiman's use of the Jonathan Akinfemi alias. The Court finds that the probative value is not substantially outweighed by potential prejudice and that it can issue limiting instructions for the jury to not unfairly prejudice Baiyewu – or Suleiman. (*See also* Docket 685 at 5-6).

As addressed in a prior section, the Court finds that the prejudicial effect of introducing the Adelekan SDNY pleadings outweighs its probative value, so Defendant Baiyewu's motion is **GRANTED** as to this evidence, but **DENIED** as to the Pasadena, Texas case.

The Court hereby **GRANTS** the Government's *Motion to Introduce Evidence of Suleiman's Motive to Use an Alias and Knowledge of Illicit Source of Funds, and Plan to Use Buying and Shipping Cars as a Defense* and **GRANTS in Part and DENIES in Part** Defendant Baiyewu's *Motion in Limine to Exclude Pleadings and Other Information from Other Criminal Cases Unrelated to the Allegations Against Mr. Baiyewu* at Docket No. 568.

### F. Motion to Introduce Defendants' Tax Return Information for the Years 2019, 2020, and 2021

The Government seeks to introduce Defendants' tax return information for the years 2019 through 2021, asserting that it is directly relevant intrinsic evidence. (Docket No. 579 at 41-44 (citing Untied States v. Epstein, 426 F.3d 431, 439 (1st Cir. 2005) for proposition that finding defendant's tax return intertwined with crime because it reported some income, but not all, received from fraudulent scheme, suggesting defendant had knowledge of fraud scheme)). First, the Government maintains that the tax information and "Defendants' failure to file tax returns for certain years" and "disclose their receipt of illicit proceeds is direct evidence that they knew those proceeds derived from unlawful activity." Id. at 42-43. Second, the Government contends Defendants' tax fillings – or lack thereof – are "acts or omissions

made contemporaneously with the charged offense that served to facilitate the money laundering conspiracy." Id. at 43.

The Government highlights that Defendants Baiyewu, Suleiman, and Adelekan all formed at least one business entity to ostensibly facilitate "legitimate" business, yet – despite taking the necessary steps to obtain tax identification numbers and open business bank accounts – they "neglected to disclose hundreds of thousands of dollars flowing through their hands." Id. This, the Government asserts, is direct proof of their knowledge of the design to conceal illicit proceeds. Given Defendants had no identified employment to justify the sums paid to Copart, their failure to file taxes or substantial underreporting facilitated the money laundering efforts by concealing illicit proceeds from the Government – and is alternatively admissible under Rule 404(b) for showing intent and knowledge. Id. at 43-44.

Baiyewu argues the tax returns are not intrinsic evidence because they are not part of the same series of transactions as the charged offense or go to an element of the charged conspiracy to commit money laundering. (Docket No. 629 at 12-14). Defendant states there is no evidence he reported income from a fraudulent scheme, nor do tax returns demonstrate knowledge of an alleged conspiracy. Id. at 13 (citing United States v. Rodriguez-Soler, 773 F.3d 289 (1st Cir. 2014) and distinguishing Epstein, 426 F.3d).

Further, Defendant asserts the purpose of showing late filings, underreporting, or errors is to portray him as someone with a "general propensity to cheat the IRS," which is inadmissible character-based inference under Rule 404(b)(1) and carries a high risk of unfair prejudice. Id. at 14. Additionally, Baiyewu highlights that the Government never explains why the 2019 and 2020 tax returns are relevant in this case when the charged alleged conspiracy began around May 2020 and continued through to about October 2021. Id. at 12-13.

Given the nature and facts of the case, the Court finds the tax returns are intrinsic to the crime and not governed by Rule 404(b). *See* Epstein, 426 F.3d at 439; *see also* United States v. Randazzo, 80 F.3d 623, 630 (1st Cir. 1990) (stating prior bad acts are "reasonably distinct (*e.g.* in time and place) from the crime charged in the indictment," while intrinsic evidence is "more closely entangled with the events that compromise the charged offense").

The Court **GRANTS** the Government's *Motion to Introduce Defendants' Tax Return Information for the Years 2019, 2020, and 2021.*

### G. Motion to Admit Expert Testimony of Former FBI Special Agent Edgar Koby

The Government moves to admit FBI Special Agent Edgar Koby's ("Agent Koby") expert testimony under Rule 702. (Docket No. 579 at 44-46). Agent Koby will testify as an expert on Nigerian transnational criminal organizations ("TCO") engaged in money laundering and fraud schemes. Id. He has over twenty years of experience investigating different West African TCOs, and the "structure, inter-organizational relationships, and methods of West African TCOs is specialized knowledge not within the purview of the average juror." Id. Agent Koby will testify that a common structure across the TCOs is to have: (i) criminal organizers and leaders based in West Africa; (ii) "handlers," who are typically based overseas, that perpetuate the underlying fraud schemes; and (iii) individuals based in the United States who open business entities and bank accounts to receive and launder the fraud proceeds. Id. at 45-46. Specifically, Agent Koby will testify as to the common methods and practice of U.S.-based members of the TCOs who launder fraud proceeds and facilitate repatriating the money to West Africa – including through "trade-based money laundering methods, like the purchase of salvaged automobiles through online vehicle auction houses." Id. at 46.

The Government avers Agent Koby will not be asked for his opinions on whether any specific conduct by Defendants constituted money laundering or whether the evidence presented suggests any of the Defendants knew he entered a money laundering conspiracy. Id. Moreover, the Government states Agent Koby has not been presented with facts particular to this case. Id.

Baiyewu contends that the Government failed to comply with Fed. R. Evid. 702 and Fed R. Crim. P. 16(a)(1)(G). (Docket No. 629 at 14). Baiyewu incorporates the arguments from his *Motion in Limine to Exclude the Government's (1) Alleged Expert for Failure to Comply with Rule 16 of FRCP and Rule 702 of FRE and (2) to Preclude Fact Witnesses from Testifying as Experts Offering Opinions* and elaborates further requests. (Docket No. 594).

As to Agent Koby, Defendant contends that simply naming him and proving a generalized description of his testimony does not comply with Fed. R. Crim. P. 16 – it lacks a statement of all opinions the government will elicit, bases and reasons, qualifications and publications for ten years, and cases where he was a witness for the last four years. Id. at 1-3. Furthermore, Defendant argues Agent Koby's testimony violates Fed. R. Evid. 702 and the Daubert standard since the Government failed to prove Agent Koby's generalized experience meets the "helpfulness" standard. Id. at 3-5. Baiyewu avers the Government never alleged Baiyewu

belonged to a TCO, so Agent Koby's testimony on that matter has no probative value and is instead dangerous and extremely prejudicial under Fed. R. Evid. 403 because it will confuse and mislead the jury, plus infer that as a person of Nigerian descent, Defendant must be guilty of something. Id. at 4.

Additionally, Baiyewu requests that the Government's fact witness testimony be limited to facts not opinions, so as to not usurp the role of the jury.[5] Id. at 5-10. To begin, Defendant contends that various affidavits and testimony at the suppression hearing suggest that if FBI Agent Marc Smith ("Agent Smith") testifies at trial, he will overstep the boundaries of what an agent of the government can comment – giving problematic generalizations in the form of opinions about Nigerians, "as if everyone from Nigeria was involved in a fraud," and inaccurately and misleadingly characterizing Baiyewu as a money mule or organizer. Id. at 5-6. Accordingly, Baiyewu requests that any law enforcement agent should be precluded from: (a) testifying about whether a conspiracy existed, whether Defendant actually participated in the fraud, and whether conduct by Defendant violated federal law; (b) making references or characterizations that are actually legal conclusions, like whether transactions of

---

[5] At the time of Defendant's filing, the Government had not yet disclosed its witness list.

Defendant at Copart constituted money laundering or fraud or showed Defendant's intent; (c) providing overall conclusions of criminal conduct. Id. at 6-7. Additionally, to the extent the Government seeks to introduce emails, texts, and other communications among alleged co-conspirators during agent testimony, Baiyewu seeks to preclude agents from answering interpretive questions because that would constitute seeking expert opinion (*i.e.*, asking agents to opine, explain, characterize, interpret, or decipher words, phrases, names, and conversations). Id. at 7-10. Defendant maintains the jury will be able to intelligently determine particular issues in the absence of guidance from an expert, since this is not a case that requires explanation for narcotics jargon, organized crime lingo, or coded language. Id. at 8-9.

In response, the Government notes that Defendant's requests are premature since: (a) it complied with Rule 16 disclosures for expert witnesses with its filing regarding Agent Koby on July 18, 2025 (*see* Docket No. 620); (b) it does not intend to call Agent Smith to testify at trial, as shown by the witness and exhibit lists it provided on July 17, 2025; and (c) it does not intend to offer lay witness opinion testimony under Rule 701. (Docket. No 640). To the extent Defendant's motion intends to limit the Government's expert witness, the Government asserts that under Rule 702 an expert may properly "testify in the form of an

opinion." Id. at 3. Additionally, the Government argues that explanation of coded language or jargon is acceptable at trial by both an expert or fact witness – if the proper foundation is laid – and law enforcement witnesses "commonly help interpret conversations" as either Rule 702-703 experts or Rule 701 lay witnesses "offering opinion testimony helpful to the jury in determining a fact at issue." Id. at 3-4 (citing United States v. Albertelli, 587 F.3d 439, 446 (1st Cir. 2012)). Furthermore, available safeguards exist to address any danger of usurping a jury's function – including cautionary instructions, supervision by the judge, and cross examination. Id. at 4.

The Court finds that the Government complied with Fed. R. Crim. 16(a)(1)(G) with its submission at Docket No. 620. See United States v. Lipscomb, 539 F.3d 32, 38 (1st Cir. 2008) (holding the Government need not provide a "detailed summary," but it must render "full notice of the actual opinions to which the [expert] intend[s] to testify").

Fed. R. Evid. 702 states that a "witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not":

    (a)  the expert's scientific, technical, or other
         specialized knowledge will help the trier of fact

to understand the evidence or to determine a fact in issue;

(b)    the testimony is based on sufficient facts or data;

(c)    the testimony is the product of reliable principles and methods; and

(d)    the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

The Court disagrees with Defendant and finds Agent Koby's expertise, given his twenty plus years of experience with TCOs involving fraud schemes in the relevant region,[6] will help the triers of facts to better understand how conspiracies for money laundering of this nature operate and thus the facts and evidence in issue. Furthermore, the probative value of his testimony would not be substantially outweighed by prejudice, its "helpfulness" to the pertinent inquiry would guide versus mislead the jury. Additionally, any concerns of improper inferences regarding Nigerians can be addressed with adequate safeguards.

As the Government noted, Baiyewu's concerns as to Agent Smith are moot since it does not intend to call him as a witness, as are his concerns with lay witnesses offering opinion testimony. Just as the Court disagrees with Defendant regarding the helpfulness of

---

[6] As to Baiyewu's argument that the Government never alleged he was in a TCO – the Court highlights that the *Superseding Indictment* states that four unindicted co-conspirators resided in Nigeria. (*See* Docket No. 86 at 1-2).

Agent Koby's expert testimony, the Court similarly disagrees with
Defendant's assertion that the case will not involve any organized
crime jargon or coded lingo. Under Rule 701, a layperson can offer
opinion if it is "rationally based on the witness's perception,"
relevant and helpful, and "not based on scientific, technical, or
other specialized knowledge within the scope of Rule 702." "[T]he
rule is 'meant to admit testimony based on the lay expertise a
witness personally acquires through experience, often on the
job.'" United States v. Pontz, 132 F.4th 10, 19 (1st Cir. 2025)
(quoting United States v. Maher, 454 F.3d 13, 24 (1st Cir. 2006).
However, such opinion must be "the product of reasoning processes
familiar to the average person in everyday life" and susceptible
to cross examination." Id. (quoting United States v. Vega, 813
F.3d 386, 394 (1st Cir. 2016). The First Circuit has affirmed the
admission of lay opinions in a variety of circumstances:

> when the lay opinion relies "upon logic and pattern
> recognition," when the witness testifies as to the
> meaning of certain legal terms of art commonly in an
> industry but "never purport[s] to tell the jury what the
> law mean[s]," or when the testimony was the "product of
> the [witness's] requisite personal knowledge" obtained
> "by virtue of his position."

Id. at 20 (collecting cases) (internal citations omitted); see
also United States v. Santiago, 560 F.3d 62, 66 (1st Cir. 2009)
(holding investigator's lay opinion on meaning of code words and
phrases was admissible because he was "involved in the

investigation, listened to over 90 percent of the [call] intercepts, [and] learned voices and patterns"). The Court will limit testimony accordingly as needed in line with these parameters.

The Court **GRANTS** the Government's *Motion to Admit Expert Testimony of Former FBI Special Agent Edgar Koby* and **DENIES** Defendant Baiyewu's *Motion in Limine to Exclude the Government's (1) Alleged Expert for Failure to Comply with Rule 16 of FRCP and Rule 702 of FRE and (2) to Preclude Fact Witnesses from Testifying as Experts Offering Opinions* at Docket No. 594

## H. Motion to Conditionally Admit Statements by Unindicted Co-Conspirators Pursuant to Rule 801(d)(2)

The Government seeks to introduce text and WhatsApp messages between unindicted co-conspirators (CC-1 through CC-7) that show: (a) requests for Baiyewu's assistance in buying U.S. dollars; exchanging currency; and bidding on, shipping, and transporting cars to Nigeria; and (b) coordination between money launderers and money men to facilitate fraudulent fund transactions. (Docket No. 579 at 46-47). The Government asserts that Rule 801(d)(2)(E) allows conditional admittance of these statements so long as the rule's requirements are met by the end of trial. Id. at 47. The Government contends these statements establish Defendants' membership in the money laundering conspiracy and will be corroborated by

contemporaneous messages between indicted co-conspirators as well
as shipping and banking records. Id. In accordance with the rule,
the Government avers that each of the statements to be introduced
occurred during and in furtherance of the charged conspiracy. Id.

Baiyewu asserts the Government failed to meet its burden under
Fed. R. Evid. 801(d)(2)(E) of establishing: (1) a conspiracy
existed; (2) the declarant and defendant were members of that
conspiracy; and (3) the statements were made in furtherance of
that conspiracy. (Docket No. 629 at 15-16.) Furthermore, Baiyewu
contends the Government pretends the confrontation clause does not
apply and relies on uncorroborated hearsay, conclusory
allegations, and speculation rather than "independent evidence of
an agreement to engage in unlawful conduct." Id. Further, the
Government's "reliance on the very statements it seeks to admit is
circular and insufficient," and "mere association or casual
connection between individuals does not establish a conspiracy."
Id.

Baiyewu also joined the *Motion in Limine (Co-Conspirator
Statements Related to Other Conspiracies) and Request for Hearing
Outside the Presence of the Jury*. (Docket No. 580). Baiyewu argues
that testimony of facts related to conspiracies outside the time
of the charged conspiracy or to further co-existing conspiracies
would not be admissible under Fed. R. Evid. 801(d)(2)(E). Id. at

5.  As  background,  Defendant  points  to  the  Government's
designation,  which  included  four  criminal  cases,[7]  Reports  of
Investigations  ("ROI"),  and  other  evidence  connecting  Michael  Lynn
Crosby  ("Crosby"),  Collins  Eneh  ("Collins"),  and  Olalekan  Daramola
("Daramola")  with  the  conspiracy  charged  in  this  case.  Id.  at  2-
7.  Defendant  highlights  that  Crosby,  Collins,  and  Daramola  have
all  been  charged  with  separate  and  distinct  conspiracies,  so  the
Court  must  examine  the  scope  of  the  statements  the  Government
intends  to  introduce  to  clearly  delineate  if  they  are  co-
conspirators'  statements  uttered  *during and in furtherance*  of  the
conspiracy  charged  in  *this*  case.  Id.  at  6-10.  Defendant  request
that  this  Court  hold  a  hearing  outside  the  presence  of  the  jury  to
make  a  preliminary  determination  as  to  the  admissibility  of  any
proposed  unindicted  co-conspirator  statements  to  ensure  they  pass
the  Pinkerton  theory  test.  Id.  at  10-11.

---

[7] The four criminal cases are: (1) United States v. Michael Lynn Crosby (C.D.
Cali)(case involving money laundering and wire fraud (circa 2019-2020); Crosby
pled guilty); (2) United States v. Olalekan Daramola, Oluwaseun Adelekan,
Temitope Omotayo, et al. (S.D.N.Y.)(case involving conspiracy to commit wire
fraud, money laundering, and identity theft by creating shell companies to
attract fraudulent investments (2016-2019) and one romance scam. Daramola was
convicted of unlicensed money transactions from February to May 2018, sentenced
in August 2022 to time served and three years of supervised release); (3) United
States v. Collins Eneh, et al. (S.D.N.Y.)(case involving conspiracy to commit
money laundering and bank fraud (2018-2020) by opening bank accounts in name of
legitimate business entities, receiving wires from victims, and transferring
proceeds multiple times to hide origin and fraud before transfer to foreign
bank or cash withdraw. Collins remains pending trial); and (4) Temitope Suleiman
(Harris County – Pasadena, Texas) (case involving misdemeanor theft and
financial transactions).

In response, the Government avers it does not intend to offer statements made by Crosby Daramola, and Eneh that were made outside the time frame of the charged conspiracy or in furtherance of another uncharged conspiracy. (Docket No. 625 at 3). However, it does intend to introduce other statements made by co-conspirators that clearly meet Fed. R. Evid. requirements or are offered for non-hearsay purposes. Id. Specifically, the Government intends to introduce:

1) Statements by Suleiman made during the course of the Pasadena, Texas, investigation (the recorded phone call mentioned in *Section E*) as direct evidence of Suleiman's knowledge of fraud, motive for using an alias, and *modus operandi* of buying cars as a defense for laundering activities. The Government also argues this is alternatively admissible under Rule 404(b).

2) Testimony by Defendant Dudubo about his relationship with Baiyewu and Daramola to contextualize his familiarity with Baiyewu and explain the nature of their relationship. These statements are to be elicited on the stand where Baiyewu will have the opportunity to cross-examine the witness.

3) Co-conspirator statements made in furtherance of the conspiracy in the form of texts and emails send,

received, and shared amongst charged and uncharged co-conspirators. The Government states this includes messages extracted from Crosby's phone between him and Eneh, but it would not include statements Crosby made to law enforcement after the fact or as part of his guilty plea since the Government does not intend to call him as a witness.

4) Statements of Defendants that pre-Date the conspiracy – between Baiyewu and Omotayo as well as Baiyewu and Suleiman – to contextualize their relationship and show Defendants' knowing involvement in the conspiracy and their practice and pattern of methods used to conduct the alleged money laundering transactions.

5) Statements between Baiyewu and uncharged individuals during the conspiracy period because the communications are probative of Baiyewu's methods to procure black market dollars for Nigerian car buyers.

Id. at 5-7.

Baiyewu filed a reply, asking the Court to order the Government to disclose any alleged co-conspirator and co-defendant statements and renewing its request for a pre-trial hearing to determine statement admissibility. (Docket No. 666). He argues the Government seeks to improperly admit things that do not fall under

Rule 801(d)(2)(E), namely: defendant statements that pre-date the conspiracy, Suleiman statements during the Texas case, Dudubo testimony, and statements between Baiyewu and uncharged individuals during the conspiracy period. Id. at 2-3. Additionally, Defendant argues the Government cannot establish Baiyewu was a member of the conspiracy between Crosby and Eneh. Id. at 4-7.

Fed. R. Evid. 801(d)(2)(E) allows the Court to admit out-of-court statements by a party's co-conspirator if made during and in furtherance of that conspiracy. First Circuit precedent requires that parties seeking to introduce a statement under this rule must prove by a preponderance of the evidence that: "(1) when the statement was made, the declarant was a member of a conspiracy, (2) the defendant was also (or later became) a member of the same conspiracy, and (3) the statement was made in furtherance of that conspiracy." United States v. Weadick, 15 F.4th 1, 8 (1st Cir. 2021). The Court may provisionally admit the statement when introduced and defer a final ruling on whether a proponent has satisfied this burden until the close of evidence. Id. If the Court decides "at the close of evidence that one or more provisionally admitted statements is inadmissible, the court must 'give a cautionary instruction to the jury, or, upon an appropriate motion, declare a mistrial if the instruction will not suffice to cure any

prejudice.'" Id. at 8-9. (quoting United States v. Ciampaglia, 628
F.2d 632, 638 (1st Cir. 1980).

The Court conditionally admits statements by un-indicted
coconspirators that comply will Rule 801(d)(2)(E). See United
States v. Campbell, 268 F.3d 1,4 (1st Cir. 2001) ("Rule 801 makes
no distinction between indicted and unindicted coconspirators.").
The Court finds the Government intends to provide adequate
extrinsic evidence to corroborate the conspiracy's existence and
membership. Based on the Government's response at Docket No. 625,
the Court addresses the intended introductions:

1) As to statements made by Suleiman during the Texas case,
   the Court will allow its admission for the reasoning
   detailed in a prior section of this Opinion – not for Rule
   802(d)(2)(E) reasons.

2) As to testimony by Dudubo as to his relationships with
   Baiyewu and Daramola, the Court will admit it since
   Defendants will have the opportunity for cross-examination
   and any instances of hearsay while on the stand can be
   stricken.

3) Given the proper proffer of supporting extrinsic evidence,
   the Court conditionally admits co-conspirator statements
   made in furtherance of the conspiracy. Since the Government
   states it will not use statements from Daramola, Eneh, or

Crosby from outside the charged conspiracy, nor will it introduce statements by Crosby to law enforcement after the fact or as part of his guilty plea, the Court conditionally finds the Government's intended evidence as to them properly admissible.

4) The Court at this time, on the basis of the Government's generalized summary of statements between Defendants that pre-date the conspiracy it intends to admit, declines to admit this proffer – at least under Rule 802(d)(2)(E). If the Government persists in intending to present this sort of evidence, the Court will require specifics of the proffered evidence, detailed reasoning from the Government on why it is admissible, and possibly hold a Rule 104 hearing outside the presence of the jury if necessary.

5) The Court conditionally admits statements between Baiyewu and uncharged individuals during the conspiracy period, provided they show the statements were made in furtherance of the conspiracy, as alleged, and comply with Rule 802(d)(2)(E).

Accordingly, the Court **GRANTS in Part and DENIES in Part** the Government's *Motion to Conditionally Admit Statements by Unindicted Co-Conspirators Pursuant to Rule 801(d)(2)(E)* at Docket No. 579 (pages 46-47) and **GRANTS in Part and DENIES in Part**

Defendant Baiyewu's *Motion in Limine (Co-Conspirator Statements Related to Other Conspiracies) and Request for Hearing Outside the Presence of the Jury* at Docket No. 580.

## I. Motion to Admit Statements by Unidentified Co-Conspirators Perpetrating Romance Scams, UI Fraud, and BECs

The Government seeks to introduce statements made by unidentified co-conspirators to individuals victimized by the criminal organization through BECs, UI fraud, and romance schemes. (Docket No. 579 at 47-49). For the romance scam victims, the Government will introduce testimony and documentary evidence (messages, emails, photographs) regarding the identity of the victims' "online relationship" and ruses provided. Id. at 47-48. As to the BEC victims, the Government will produce emails sent by unidentified co-conspirators using compromised and spoofed email addresses, telling victims to update payment instructions and misrepresenting the actual recipients of funds. Id. at 48. For the UI fraud victims, the Government will introduce details of falsely submitted UI claims. Id. The Government asserts this evidence is not inadmissible hearsay because the statements are: (1) not offered for the truth of the matter asserted; (2) offered to show effect on the listener – the victims (causing them to send money); and (3) are by co-conspirators in furtherance of the conspiracy, as allowed under Rule 801(d)(2)(E) – providing instructions to

victims for how to get money into the hands of the criminal organization (wire transfer, cash or check via mail). Id. at 48-49.

Baiyewu reiterates the same arguments from the above *Section H* in opposition to admission of statements by unindicted co-conspirators, asserting that it would be improper for the Government to present evidence of other crimes committed by other Defendants – including at other times and places, wholly unrelated to the present charge – because it is irrelevant under Rule 401 and confusing, misleading, and unfair under Rule 403. (Docket No. 629 at 16-17).

"[W]hen statements are offered only to provide context and not for the truth of the matter asserted, those statements are not hearsay," and the Supreme Court has held in various instances that "non[-]hearsay statements do not implicate the Confrontation Clause." United States v. Walter, 434 F.3d 30, 34 (1st Cir. 2006). The Court finds the Government's non hearsay reasons admissible. The statements are not offered for the truth of the matter asserted, but rather to show the effect the different statements had on victims of the underlying fraud schemes. *See* United States v. Cruz-Diaz, 550 F.3d 169, 176 ("Out-of-court statements offered not to prove the truth of the matter asserted but merely to show context – such as a statement offered for the limited purpose of

showing what effect the statement had on the listener – are not hearsay.”). Additionally, the Court recognizes the Government’s other rationale, that they are statements by co-conspirators in furtherance of the conspiracy – a requisite being the funds must be derived from illicit activities, making the operations of the underlying fraud schemes relevant and probative.

The Court **GRANTS** the Government’s *Motion to Admit Statements by Unidentified Co-Conspirators Perpetrating Romance Scams, UI Fraud, and BECs*.

### J. Motion to Preclude Cross-Examination through Use of Law Enforcement Reports

The Government seeks to preclude Defendants from introducing contents of law enforcement reports to impeach an interviewed witness based on inconsistent statements from prior interviews. (Docket No. 579 at 49-51). The Government argues that “law enforcement reports are prior statements by the drafting agent[, summarized recollections of interviews conducted]; they are not prior statements of the interview, nor have they been adopted or approved by the witnesses.” Id. at 50 (noting the Jencks Act, 18 U.S.C. § 3500(e)(1), states that for statements to qualify as a prior statement of a witness, it must have been transcribed, recorded, or “made by said witness and signed or otherwise adopted or approved by him”). Accordingly, the Government contends the

reports have no impeachment value – highlighting that Rule 613 allows parties "to examine a witness 'about the witness's prior statement' for purposes of impeachment," but "[c]entral to that rule is the requirement that the prior statement be a statement of that witness." Id. at 49-50 (citing United States v. Matta-Quiñones, 140 F.4th 1 (1st Cir. 2025)).

The Government asserts that Defendants should also be prohibited from suggesting to the jury that reports are statements of the interviewed witnesses, introducing such interview reports as prior inconsistent statements, and showing or reading the reports aloud to witnesses or offering them into evidence during cross-examination. Id. at 50-51. The Government does not oppose use of a report to attempt to refresh a witness's recollection or calling a law enforcement agent to attempt to contradict a witness's testimony. Id. at 51.

Baiyewu cites Davis v. Washington, 547 U.S. 813 (2006), as support for his assertion that "statements taken by police officers in the course of interrogations are subject to the Confrontation Clause" and "those statements are testimonial in nature and subject to cross examination when the primary purpose of an interrogation that produces the statements is to establish past events relevant to later criminal prosecution." (Docket No. 629 at 17-18). Baiyewu asserts that notes, summaries, recordings, or simply reports of

these interviews are subject for use in cross examination and to impeach or question a witness at trial – as required by the Confrontation Clause. Id. at 17. Defendant contends that if the Government is conceding the reports "are in fact unreliable" then it should also then concede that any law enforcement officer that prepared a report should also not be permitted to testify. Id. at 17-18.

Fed. R. Evid. 613 governs impeachment by prior inconsistent statements. The First Circuit "has not definitively ruled on the admissibility of a document purporting to memorialize a witness's prior inconsistent statements when the document is authored by someone other than said witness." Matta-Quiñones, 140 F.4th at 23. However, the court recently held in Matta-Quiñones that it found "persuasive the majority view, which requires the proponent of such a document to show that the document is a substantially verbatim transcription, in the witness's own words, or signed, adopted, or subscribed by the witness." Id. ("[T]he prior inconsistent statement must be 'reasonably attributable' to the witness being impeached.").

In that case, an FBI agent authored a "FD-302" report about what a testifying witness had said in an interview. Id. The court found that if the defendant wanted to introduce that report as an exhibit, he would have to lay a foundation by showing the report

reflected the testifying witness's own words or that the witness had signed, adopted, or subscribed to the statement. Id. However, the court clarified it was imposing no strict rule about the defendant referring to or reading from the report without showing that the testifying witness signed or adopted it. Id. at 24-25 ("Cases prohibiting the 'use' of an investigator's report that has not been signed or adopted by the witness do not uniformly forbid any line of questioning that reads from the report."). Thus, a defendant could be allowed to cross examine the testifying witness about prior statements he made to federal agents – including those from the report – without such a showing. Id. at 25.

Accordingly, the Court agrees with the Government as far as precluding the Defendants from introducing law enforcement reports to impeach a witness unless it contains "a substantially verbatim transcription, in the witness's own words, or signed, adopted, or subscribed by the witness." *See* id. at 23. However, in line with Matta-Quiñones, the Court will not prohibit Defendants from referring to or reading such reports, offering a report as an exhibit if the proper foundation is laid, or cross examining a testifying witness about prior statements made to law enforcement (including those in reports).

The Court **GRANTS in part and DENIES in Part** the Government's *Motion to Preclude Cross-Examination Through Use of Law Enforcement Reports*.

### K. Motion to Allow Presence of Law Enforcement at Counsel Table and to Re-Call Case Agent

The Government seeks to have United States Postal Inspection Service ("USPIS") Inspector Sam Bracken ("Inspector Bracken") present at counsel table throughout trial. (Docket No. 579 at 51-53). It argues that as the case agent involved in investigations since this case's inception, Inspect Bracken's presence is essential to presentation of the Government's case given his knowledge of records and ability to advise counsel during trial. Id. at 51-52 (citing 615(c)).

Additionally, the Government requests the ability to recall Inspector Bracken, as within the Court's discretion under Rule 611(a). Id. at 52. The Government intends to first call Inspector Bracken to the stand to provide an overview and summary of the case (how the investigation began, who was involved in it, and what investigative techniques were used), as well as establish the relevance of certain evidence and introduce summary charts. Id. at 52-53. The Government then intends to recall Inspector Bracken as its second-to-last witness to introduce remaining summary charts and evidence, discuss the importance of certain evidence, and

"generally allow for the government to present its evidence in a more chronological and coherent fashion." Id. at 53. The Government argues Defendants will suffer no prejudice and retain the ability to cross-examine Inspector Bracken each time. Id.

Baiyewu argues that Inspector Bracken has had a minor investigative role against Baiyewu since his investigation is directly related to various fraud schemes perpetrated by other co-defendants and there are no facts that implicate Baiyewu in any fraud. (Docket No. 629 at 18-21). Accordingly, Defendant asserts Inspect Bracken can offer little assistance in the Government's case against him. Id. at 19 (citing Rule 615(3)). Further, Baiyewu highlights the Government has had four years to meet Inspector Bracken to glean any explanations from him and prepare his testimony, so to allow the Government's requests would lead to collusion, fabrication, and inaccuracy – in direct contrast to the goals of Rule 615. Id. at 19-21. Baiyewu notes that in United States v. Sepulveda, 15 F.3d 1161 (1st Cir. 1993), the court reasoned that since the case agent was called first, it was not improper to allow him to sit at government counsel's table – but that is not the case here. Id. at 20. Defendant avers that allowing law enforcement to be seated at counsel table will undermine the integrity of the trial and have prejudicial effect by creating the

inference that Baiyewu is a threat or somehow dangerous. Id. at 20-21.

Fed. R. Evid. 615 addresses excluding witnesses from the courtroom and preventing an excluded witness access to trial testimony. However, while "the court must order witnesses excluded from the courtroom so that they cannot hear other witnesses' testimony" at a party's request (or the court may do so on its own), this rule does not authorize excluding "any person whose presence a party shows to be essential to presenting the party's claim or defense." Fed. R. Evid. 615(a)(3). The Advisory Committee Notes for the 1972 Proposed Rules state that this category "contemplates such persons as an agent who handled the transaction being litigated or an expert needed to advise counsel in the management of the litigation." The 1974 Enactment notes (Senate Report No. 93-1277), are also highlighted by the court in United States v. Machor, 879 F.2d 945, 953 (1st Cir. 1989):

> Many district courts permit government counsel to have an investigative agent at counsel table throughout the trial although the agent is or may be a witness. The practice is permitted as an exception to the rule of exclusion and compares with the situation defense counsel finds himself in-he always has the client with him to consult during the trial. The investigative agent's presence may be extremely important to government counsel, especially when the case is complex or involves some specialized subject matter. The agent, too, having lived with the case for a long time, may be able to assist in meeting trial surprises where the best-prepared counsel would otherwise have difficulty....

> Furthermore, it could be dangerous to use the agent as a witness as early in the case as possible, so that he might then help counsel as a nonwitness, since the agent's testimony could be needed in rebuttal. Using another, nonwitness agent from the same investigative agency would not generally meet government counsel's needs.

The Government cites this 1989 case for support of its assertion that Inspector Bracken should be allowed to sit at counsel table, yet they go beyond that request because they additionally seek to have him testify both as the first witness and then recalled as the second to last. The Court finds that all of these requests taken in conjunction are too much. The case the Government cites even comments on that "it could be dangerous to use the agent as a witness as early in the case as possible, so that he might then help counsel as a nonwitness, since the agent's testimony could be needed in rebuttal" – suggesting that it would be improper to recall a witness for the very reason Rule 615 seeks to exclude witnesses from the courtroom. Furthermore, the Government has cited no other cases from this circuit in support of its request.

Additionally, while the Government at Docket No 626 states it does not intend to have an overview testimony witness, its phrasing in the *Omnibus Motions* suggests otherwise – given what it states Inspector Bracken will speak to and its comment that "[t]he use of such overview testimony is proper." (*See* Docket No. 579 at 52-53).

The First Circuit has "not imposed a blanket ban on all overview testimony"; rather, it has recognized that "'[t]here may be value in having a case agent describe the course of *his investigation* in order to set the stage for the testimony to come about the nature of the conspiracy and the defendants involved.'" United States v. Etienne, 722 F.3d 907, 914 (2014) (quoting United States v. Flores-de-Jesús, 569 F.3d 8, 19 (1st Cir. 2009) (emphasis in original).

"Overview testimony refers to the use of a witness to 'map out [the Government's] case and to describe the role played by individual defendants.'" United States v. Pérez-Vásquez, 6 F.4th 180, 199 (1st Cir. 2021) (quoting United States v. Flores-de-Jesús, 569 F.3d 8, 16 (1st Cir. 2009)). This type of testimony can be "improper because it may describe evidence that never materializes and, if the witness is a government agent, may lend the imprimatur of government to a later-testifying witness." Id. "Testimony by a law enforcement agent constitutes impermissible 'overview' testimony when it effectively opines that a defendant is guilty 'based on the totality of information gathered' in the agent's investigation, rather than relaying the agent's first-hand experiences and observations." United States v. García-Sierra, 994 F.3d 17, 26 (2021). The First Circuit recognizes that overview testimony is inherently problematic for the following reasons: "(1) the jury could be influenced by statements of facts and

credibility determinations not in evidence; (2) later testimony could be different from what the overview witness assumed; and (3) the jury may place greater weight on evidence that they perceive has the imprimatur of the government." Etienne, 772 F.3d at 913 (quoting United States v. Brown, 669 F.3d 10, 24 (1st Cir. 2021).

The Court finds that the Government can have Inspector Bracken seated at counsel table and testify first to explain from personal experience how the investigation began, who was involved, techniques used, the chronology of events he took part in, and "what he has gleaned from his first-hand observations." See García-Sierra, 994 F.3d at 27 ("[A]s long as law enforcement agent's testimony is limited to what he has gleaned from his first-hand observations, there is nothing wrong with the agent 'describ[ing] the course of his investigation in order to set the stage for the testimony to come.'" (citation omitted). However, the Government **cannot** have Inspector Bracken seated at counsel table, testify first for an "overview and summary of the case," **and** then return to the stand an additional time as the very second-to-last witness. The Court does not want testimony usurping the role of the jury as factfinder or previewing other witness' testimony in a way that "functions as an endorsement by the government of the first-hand-witness's account." Id.; see also United States v. Agramonte-Quezada, 30 F.4th 1, 19-20 (1st Cir. 2022).

The Court **GRANTS in Part and DENIES in Part** the Government's *Motion to allow Presence of Law Enforcement at Counsel Table and to Re-Call Case Agent*.

## L. Motion to Bar Arguments Regarding Possible Consequences of Conviction

The Government moves to preclude Defendants mentioning potential penalties faced upon conviction because evidence and argument concerning punishment "only serve the improper purpose of seeking jury nullification." (Docket No. 579 at 53). Baiyewu states he understands penalties for the offense are not a subject to discuss before the jury, but he retorts that the Government's motion is premature and an infringement upon his right to present a defense. (Docket No. 629 at 21).

The Court finds the parties in agreement on the matter and **GRANTS as unopposed** the Government's *Motion to Bar Arguments Regarding Possible Consequences of Conviction*).

## M. Motion to Preclude Argument, Testimony or Evidence Regarding Specific Instances of Conduct Offered to Prove That Defendant's Good Character and Negate Criminal Intent

The Government moves to preclude Defendants from introducing evidence, making statements, or asking questions regarding specific acts of a defendant's prior good conduct. (Docket No. 579 at 54 (citing Fed. R. Evid. 405(a)). It also seeks to prohibit testimony from character witnesses regarding: (a) specific

instances of a defendant's conduct; and (b) a defendant's propensity to be involved in money laundering schemes. Id. (citing Fed. R. Evid. 404(a)(1)).

Baiyewu asserts that prohibiting him from defending himself by showing his good character is a violation of his Fifth Amendment right to due process, Sixth Amendment right to present a defense, and Fourteenth Amendment rights. (Docket No. 629 at 22-24). Defendant argues that under Fed. R. Evid. 404(a)(1), an accused may present evidence of his own good character; and, within the prescriptions for how character evidence may be introduced, Fed. R. Evid. 405(a) provides that in cases where character or a trait is admissible, "proof may be made by testimony as to reputation or by testimony in the form of an opinion." Id. at 23. Baiyewu distinguishes the Government's use of a Third Circuit case and asserts that it actually supports denying the Government's motion. Id. at 23-24 (referencing Gov't of Virgin Islands v. Grant, 775 F.2d 508, 512 (3rd Cir. 1985)).

Fed. R. Evid. 404(a)(1) states that "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." However, "a defendant may offer evidence of the defendant's pertinent trait." Fed. R. Evid. 404(a)(2)(A); see United States v. Angelini, 678 F.2d 380, 381 (1st Cir. 1982) ("The

word 'pertinent' is read as synonymous with 'relevant.'" (citation omitted)). Thus, the issue is "whether the character trait in question would make any fact 'of consequence to the determination' of the case more or less probable than it would be without evidence of the trait." Angelini, 678 F.2d at 381 (citation omitted); *see* United States v. Nazzaro, 889 F.2d 1158, 1168 (1st Cir. 1989) (holding evidence of defendant's character for attention to duty and bravery was inadmissible, as it was not pertinent to the charges against him of perjury and mail fraud); *see also* Angelini, 678 F.2d at 380 (finding evidence that a defendant was law-abiding "has long been recognized as relevant" and generally held as admissible – as distinguished from good character).

If Defendant establishes a proper foundation for character evidence, the Court will allow witnesses to testify under Rule 405(a). The Court highlights that where "evidence of a person's character or character trait is admissible, it may be proved by testimony about the person's reputation or by testimony in the form of an opinion" – **not specific acts suggesting good character**. *See* Fed. R. Evid. 405(a). This then allows "inquiry into relevant specific instances of the person's conduct" on cross-examination. Fed. R. Evid. 405(a); *see* Michelson v. United States, 335 U.S. 469 (1948) (finding the "price a defendant must pay for attempting to prove his good name is to throw open the entire subject which the

law has kept closed for his benefit and to make himself vulnerable where the law otherwise shields him"). However, Baiyewu's character or character trait is not an essential element of a charge, claim, or defense in this case regarding conspiracy to commit money laundering. *See* Fed. R. Evid. 405(b) ("When a person's character or character trait is an essential element of a charge, claim, or defense, the character or trait may also be proved by relevant specific instances of the person's conduct.") Accordingly, while Defendant may provide evidence by reputation or opinion testimony, he is precluded from introducing evidence of specific instances offered to prove his character.

The Court **GRANTS** the Government's *Motion to Preclude Argument, Testimony or Evidence Regarding Specific Instances of Conduct Offered to Prove That Defendant's Good Character and Negate Criminal Intent*.

### N. Motion to Prohibit Argument, Testimony or Evidence Regarding Improper, Inadmissible, and/or Overly Prejudicial Matters in Front of the Jury

The Government seeks to preclude Defendants from "attempting to elicit jury nullification" by raising inadmissible, improper, or overly prejudicial matters in front of the jury. (Docket No. 579 at 54-60). The Government seeks to prohibit any statements, questions, or evidence regarding: (a) the Government's charging decisions; (b) stipulation discussions; (c) plea discussions; (d)

witnesses testifying or not testifying at trial; and (e) employment, education, or family needs. Id.

First, the Government asserts that it "retains broad discretion as to whom to prosecute" and it would be improper for Defendant to raise the reasons for his prosecution, the timing of his charges, or which charges were brought – it would confuse and mislead the jury, cause undue delay, and be irrelevant. Id. at 55-56. Second, the Government asserts that unless an agreed stipulation has been approved, Defendants should be precluded from making any statements regarding a defendant offering or agreeing to stipulate certain facts. Id. at 56. Third, the Government contends that any references regarding the occurrence or substance of any plea negotiations would be highly prejudicial and improper since they have "no bearing on the factual determinations required of the jury" and would only cause them to speculate. Id. at 56-58. Fourth, the Government argues there is no reason to allow missing witness instruction or argument if it has "no special access or leverage over a witness." Id. at 58. If the Court allows Defendants to make such an argument, the Government requests the ability to point out that Defendants have the same subpoena power as the Government. Id. at 58-59. Fifth, the Government seeks preclusion of any evidence or statements regarding Defendants' age, family circumstances, finances, education, or other non-

pertinent aspects of their personal background because it would "improperly arouse the sympathy of the jury" and is of no consequence to determining the essential facts in this case. Id. at 59-60.

Baiyewu states that the requests regarding charging decisions, stipulation discussions, and plea discussions are premature, but that he does not anticipate covering those subjects at trial. (Docket No. 629 at 24). As to witnesses testifying at trial, Defendant argues this is premature since whether a witness is missing or not available and whether the Government has access and leverage over a witness is yet to be determined, making any instruction now procedurally unsound.[8] Id. Alternatively, Baiyewu argues this infringes upon his Fifth and Sixth Amendment rights by improperly trying to limit his ability to present a complete defense and cross-examine witnesses effectively. Id.

As to family needs, education, and employment, Defendant similarly argues that any restrictions are an improper attempt to limit his ability to present a complete defense and cross-examine witnesses effectively. Id. at 24-25.

The Court notes that as to the charging decisions, stipulation discussions, and plea discussions, the Defendant states he does

---

[8] The witness and exhibit lists were yet to be produced at the time of Baiyewu's *Response*.

not anticipate introducing those subjects at trial; therefore, as to those, the Court grants as unopposed the Government's request.

The missing witness instruction "informs the jury that a party's failure to produce a particular witness may justify the inference that the witness' testimony would have been unfavorable to that party." Latin Am. Music Co. V. Am. Soc. Of Composers Authors & Publishers, 593 F.3d 95, 101 (1st Cir. 2010); see United States v. Perez, 299 F.3d 1, 3 (1st Cir. 2002) ("The rationale behind a missing witness instruction is that upon 'the failure of a party to produce available evidence that would help decide an issue,' the jury may infer 'that the evidence would [have been] unfavorable to the party to whom it is available or to whom it would ordinarily be expected to favor." (citation omitted)). Provided other conditions are met, this instruction is "proper when a witness is either actually unavailable to the party seeking the instruction or so obviously partial to the other side that the witness is deemed to be legally unavailable." Perez, 299 F.3d at 3. As a preliminary requirement, a "criminal defendant must demonstrate that the uncalled witness is either 'favorably disposed' to testify on behalf of the government by virtue of status or relationship or 'peculiarly available' to the government." Id.; see United States v. Orlandella, 96 F.4th 71, 98 (1st Cir. 2024).

When deciding whether to issue the missing witness instruction, the Court "must consider the explanation (if any) for the witness's absence and whether the witness, if called, would be likely to provide relevant, non-cumulative testimony." <u>Perez</u>, 299 F.3d at 3. Finding that preclusion entirely of the missing witness instruction would be premature at this juncture, the Court denies this request without prejudice at this time.

As to precluding "non-pertinent aspects of the defendant's personal background," those determinations of Rules 401, 402, and 403 will be dependent upon what arises at trial and whether certain testimony is consequential to the finding of any essential facts.

The Court **GRANTS in Part and DENIES in Part** the Government's *Motion to Prohibit Argument, Testimony or Evidence Regarding Improper, Inadmissible, and/or Overly Prejudicial Matters in Front of the Jury*.

### O. Motion to Prohibit Explaining Reasonable Doubt During Closing Argument

The Government seeks to preclude Defendants from attempting to define the term "reasonable doubt" because First Circuit precedent has "repeatedly noted that reasonable doubt does not require definition" and to define it would mislead the jury. (Docket No. 579 at 60-62 (citing <u>United States v. Herman</u>, 848 F.3d 55, 57 (1st Cir. 2017), <u>United States v. Van Anh</u>, 523 F.3d 43, 58-

59 (1st Cir. 2008), <u>United States v. Vavlitisi</u>, 9.F3d 206, 212 (1st Cir. 1993), and <u>United States v. Fields</u>, 660 F.3d 95, 97 (1st Cir. 2011))).

Baiyewu recognizes precedent holding reasonable doubt does not require a definition, but he states that the Government cannot prohibit him from arguing at the end of the case that it failed to meet its burden of proving reasonable doubt. (Docket No. 629 at 25-26). If the Government seeks to bar argument on reasonable doubt, Defendant asserts it is violative of his constitutional right to present a defense under the Sixth Amendment. <u>Id.</u> at 26.

The Court finds that the parties are in agreement with First Circuit precedent. This does not affect Defendant's ability to argue about whether the Government met its burden of proof.

The Court hereby **GRANTS as unopposed** the Government's *Motion to Prohibit Explaining Reasonable Doubt During Closing Argument*.

### P. Motion to Preclude Irrelevant Argument in Relation to Search Warrant Date

The Government requests that the Court preclude Defendants from presenting "irrelevant argument" regarding an error in Paragraph 28 of the October 8, 2021, affidavit in support of the search warrant for Baiyewu's residence. (Docket No. 579 at 62-63). The Government avers the error was "deemed immaterial" and "failed to vitiate the finding of probable cause," and because the Court

has resolved this issue already, it has "no bearing on the allegations Baiyewu faces at trial." Id. at 62. Accordingly, the Government asks to prevent this immaterial information from being introduced to divert the jury's attention from evidence that does exist. Id. at 62-63 (citing United States v. Patrick, 248 F.3d 11, 22-23 (1st Cir. 2001).

Baiyewu asserts that "Agent Smith's misrepresentation is directly related to whether or not a jury finds him credible." (Docket No. 629 at 26-27). Further, Defendant argues the Government is playing both sides by arguing here that the misrepresentation would divert the jury's focus to an unindicted co-conspirator, yet elsewhere it is seeking to rely on evidence related to unindicted co-conspirators when introducing statements made by them. Id. at 27.

As the Government highlighted, the Court has already ruled on this affidavit error in its Opinion and Order issued on March 10, 2025, finding the warrant valid and denying Baiyewu's *Motion to Suppress*. Since Agent Smith will not be testifying at trial, his credibility will not be in question – nor will Defendant's voiced concerns regarding the same. Accordingly, the Court **GRANTS** the Government's *Motion to Preclude Irrelevant Argument in Relation to Search Warrant Data*.

**Q. Motion to Preclude Argument, Testimony or Evidence about Victim Negligence**

The Government seeks to preclude Defendants from introducing any evidence, argument, or testimony related to actual or purported negligence, intentional disregard, or complicity by victims – both individuals and institutions. (Docket No. 579 at 63). It asserts that since victim negligence is not a defense for money laundering, any lack of diligence or caution by victims is irrelevant and will likely confuse the issue and mislead the jury into blaming the victims. Id.

Baiyewu asserts that he does not intend to introduce evidence of victim negligence since the victims in this case are not tied to him. (Docket No. 629 at 28).

Given the parties' agreement on this matter, the Court **GRANTS as unopposed** the Government's *Motion to Preclude Argument, Testimony or Evidence about Victim Negligence*.

**R. Motion to Limit Scope of Cross-Examination of Fact Witness**

The Government requests to limit the scope of cross-examination of Williams to the subject matter of direct examination and to matters affecting the credibility of the witness, pursuant to Rule 611(b) – thus precluding Defendants from "unchecked cross-examination regarding domestic violence allegations against the witness." (Docket No. 579 at 63-65). The Government also cites

Rule 611(a)(3), which a allows the court to limit cross-examination to "protect witnesses from harassment," since Williams alleges that on at least one occasion she was the victim of domestic violence by Baiyewu. Id. at 64. Additionally, Williams alleges Baiyewu filed false police reports alleging she abused him after they separated and she moved out of their shared residence. Id. Williams states she was unaware of the reports until she returned and was arrested; but Baiyewu failed to pursue the charges so Williams was never prosecuted. Id. In line with this, the Government claims there is evidence that since "Baiyewu no longer had a path to obtain legal status it the United States through his marriage to Ms. Williams, he filed these reports to create a record so he could be eligible for a visa to remain in the United States under the Violence Against Women Act. Id.

The Government acknowledges that it is appropriate for cross-examination to address possible witness bias; a defendant must first lay a proper foundation and the court retains discretion to limit the scope of a bias inquiry. Id. at 65. The Government argues there is little probative value for testimony relating to conflicting claims of alleged domestic violence and that this line of inquiry would distract the jury and create a mini-trial within the trial causing delay, confusion, and wasting time. Id.

Baiyewu asks that the Court "not limit the scope of cross-examination beyond what is already limited by the Federal Rules of Evidence." (Docket No. 629 at 28).

The Court finds that the domestic violence allegations by both Baiyewu and Williams are directly relevant to witness credibility and bias. While the conflicting claims may lead down that line of inquiry, the Court will not preclude Defendants from raising this matter.

The Court **DENIES** the Government's *Motion to Limit Scope of Cross-Examination of Fact Witness*.

## S. Motion in Limine to Exclude the Entire Proffered 404(b) Evidence as Notified

Defendant Baiyewu seeks an order to exclude the Government's proffered "evidence" listed on its May 14, 2025, Notice. (Docket No. 562). Baiyewu argues the Government's Notice fails to comply with the specific requirements of Fed. R. Evid. 404(b) since the Government has "utterly failed" to explain any reasoning that supports the permitted purpose for which the Government intends to offer the evidence at trial. Id. at 1-4. Instead, the Government cites a "laundry list" of proposed purposes using Rule 404(b) language without precisely articulating an evidentiary hypothesis. Id. Additionally, Defendant contends the Government fails the "reasonable notice" requirement due its lack of specificity – the

Government simply provided generalized mention of large amounts of messages, emails, and texts. Id. at 4-7.

Alternatively, Defendant asserts that the proffered evidence is inadmissible propensity evidence under Rule 404(b) Id. at 7-14. He highlights slides from a reverse proffer session regarding: (a) a suspended Copart account owned by Paul Tuyi that Suleiman forwarded to Baiyewu and he sent on to others; (b) emails of news articles about fraud arrests; (c) texts between Baiyewu and Suleiman; (d) texts between Baiyewu and his brother about accepting payment in dollars from customers; and (e) a letter from Texas Workforce concerning someone stealing Baiyewu's identity to make false claims for unemployment. Id. at 8-11, 22-47. Defendant argues that the information does not qualify as bad acts, is solely being sought as bad-character evidence, and that the Government cannot rely on propensity as the necessary link in its inferential chain. Id. at 11-14. Additionally, Defendant argues the proffered evidence has low probative value and raises a substantial danger of unfair prejudice, confusing issues, misleading the jury, and wasting time – meaning it should be precluded under Rule 403. Id. at 14-17.

The Government asserts that this motion is premature because it was filed before the Government sought admissibility of evidence – incorrectly conflating the Government's informal notice as a

formal Fed. R. Evid. 404(b) filing. (Docket No. 592). Since then, the Government filed its *Trial Brief and Omnibus Motions in Limine* that details the basis for which the evidence it intends to introduce at trial is either intrinsic to the underlying charges in the *Superseding Indictment* or admissible for a permitted purpose under Fed. R. Evid. 404(b)(2). Id. Regardless, the Government maintains that Defendant's motion lacks specificity and is overbroad in seeking exclusion of all evidence listed in the Notice, and such general assertions fail to meet the Rule 403 analysis requirements. Id. at 4.

Given the timing of the filings and subsequent proffer of Rule 404(b) reasons by the Government in its *Omnibus Motions*, the Court denies Baiyewu's motion made on the basis of the Government's May 14, 2025, Notice.[9]

The Court **DENIES** Defendant Baiyewu's *Motion in Limine to Exclude the Entire Proffered 404(b) Evidence as Notified* at Docket No. 562.

---

[9] The Court notes that Defendant Baiyewu contested the admissibility of all evidence offered under Rule 404(b) based on lack of notice in various motions that were filed prior to the Government's *Trial Brief and Omnibus Motions*. Accordingly, its determination here is applicable to those arguments.

**T. Motion in Limine Regarding Electronic Mail Communication and Social Media Content**

Defendant Baiyewu[10] seeks to preclude the Government from introducing the following electronic mail communication content: emails and data documenting BECs, Google gmail records, Yahoo email records, and Facebook records regarding a Toyota Sienna purchased by co-conspirators with G.I. victim funds and shipped to Nigeria by Baiyewu. (Docket No. 576). First, Defendant contends that the "mere creation of an email within a business entity does not automatically qualify it as a business record." Id. at 3. Next, Defendant argues that social media content and electronic communications are not admissible under the Rule 803(6) business records exception to the hearsay rule, nor are they self-authenticating under Rule 901(11) due to authorship verification concerns. Id. at 2-7. Lastly, Defendant asserts that any reports of content "memorialized by the FBI" to evade the trustworthiness requirement are inadmissible. Id. at 7.

The Government asserts the motion is meritless and based on a mistaken assumption about its Rule 12 designation. (Docket No. 623). The Government states that its designation was not an exhibit list, nor how the Government intends to admit specific evidence at

---

[10] This motion was originally filed by Adelekan and Baiyewu subsequently joined. (See Docket Nos. 597 and 606).

trial. Id. at 3-4. Further, the Government has not requested the Court to find all electronic communications admissible as business records – it intends to introduce messages between co-conspirators pursuant to Rule 801(d)(2), as evidence for non-hearsay purposes, or as statements not offered for the truth of the matter asserted, amongst other bases. Id. at 4-5.

The Court notes that Defendant filed his motion prior to the Government's *Trial Brief and Omnibus Motions*. Given the briefings now available and the Government's clarification that it does not intend to introduce electronic mail communication and social media content under the business records exception, the Court **DENIES** Defendant Baiyewu's *Motion in Limine (Electronic Mail Communication and Social Media Content)* at Docket No. 576.

## U. Motion in Limine Regarding Open-Source Web Pages

Defendant Baiyewu[11] seeks to preclude the Government from introducing four open-source media articles (related to fraud investigations, arrests, and indictments) that were included in defendants' chats. (Docket No. 577). Defendant contends the articles should be excluded under Rule 403 because their probative value is minimal and best and substantially outweighed by danger

---

[11] This motion was originally filed by Adelekan and Baiyewu subsequently joined. (*See* Docket Nos. 597 and 606). The motion and response also incorporate by reference the motion at Docket No. 576 – and the Court has addressed that above.

of unfair prejudice – the implication that sharing news media articles makes one guilty of the conduct therein or that as a member of the Nigerian community, defendants have a tendency to commit fraud. Id. at 3-4. Defendant also states that the article contents do not make defendants' participation in the conspiracy more or less probable under Rule 401, and there sharing of the articles can be explained by various reasons (such as discussing current events affecting their regions or origin, exchanging information of mutual interest, or sharing news about their home countries). Id. at 2-3.

The Government argues the news articles attached to defendants' chats are not hearsay, since it is not offering them for the truth of the matter asserted; instead, the articles – "shared and commented on between and among the Defendants" – will be offered to show plan, knowledge, and lack of mistake. (Docket No. 624). Additionally, as part of communications between co-conspirators, the Government asserts they are relevant under Rule 401 to "complete the story" of the charged conspiracy. Id. at 4. The Government highlights that Rule 403 strongly balances in favor of admitting the evidence: the articles shared and commented on concerned "behavior that closely mirrored theirs, plus the evidence was made during the conspiracy and is highly probative of

showing that Defendants knew what they were doing was illegal. <u>Id.</u> at 5-6.

The Court agrees with the Government's position and finds the articles admissible for Rule 404(b) purposes such as lack of mistake, knowledge, and plan. Any potential prejudicial effect can be addressed with limiting instructions.

The Court **DENIES** Defendant Baiyewu's *Motion in Limine (Open-Source Web Pages)* at Docket No. 577.

## V. Motion in Limine Regarding Testimony by Law Enforcement Agents and/or Confidential Informants to Prove the Existence and/or Membership in the Charged Conspiracy

Defendant Baiyewu[12] seeks to preclude conclusory testimony from any law enforcement agents or government informants about the existence of the charged conspiracy, identities of purported co-conspirators, or their membership in the charged conspiracy – *unless* they can offer proof of specific, personal knowledge that is independent from the information received from law enforcement or inadmissible hearsay. (Docket No. 582). Meaning, existence and membership related to the conspiracy "cannot be proven with a government agent's analysis of documents or his opinion about the evidence to be presented," nor with conclusory overview testimony. <u>Id.</u> at 3.

---

[12] This motion was originally filed by Adelekan and Baiyewu subsequently joined. (*See* Docket Nos. 597 and 606).

The Government avers that it only intends to present the testimony of two case agents who will testify based upon personal experience and knowledge of the case, as required under Rule 602. (Docket 626 at 2-5). Moreover, it asserts that it does not plan to offer the "overview testimony" described by Defendant's motion. Id. (highlighting that courts have "distinguished between overview testimony and agent testimony that properly provides background information and a summary of the investigation"). The Court addressed above what will be permissible testimony as to Inspector Bracken.

Given the Government's stated intention that it will only offer the testimony of two case agents who will speak based upon personal experience, as required by Rule 602, the Court **GRANTS as unopposed** Defendant Baiyewu's *Motion in Limine (Testimony by Law Enforcement Agents and/or Confidential Informants to Prove the Existence and/or Membership in the Charged Conspiracy)* at Docket No. 582.

**W. Motion in Limine to Exclude Evidence of Using Different Legal and Valid Forms of Identification to Purchase Money Orders Offered by the Government under Rule 404(b)**

Defendant Baiyewu seeks to preclude the Government from introducing "Walmart records reflecting multiple identification documents used by Baiyewu" to purchase money orders. (Docket No. 590). Defendant argues the evidence fails to meet the preliminary

threshold for admissibility under Rule 404(b) because the Walmart transactions are not crimes, wrongs, or bad acts. Id. at 3. He asserts that using valid identification to purchase items at Walmart does not inherently suggest criminal intent, motive or knowledge – it is a "lawful and routine activity," and the Government has not established the various identifications used were not valid or legal Id. at 3-5. Further, he contends the Government failed to properly investigate, leading to erroneous assumptions when the two incorrect birthdays on receipts were errors committed by Walmart. Id. at 5. Defendant argues the unfair prejudice would far outweigh the probative value of him using valid identification on fifty-four money orders. Id. at 5-7.

The Government asserts the evidence is directly probative of the money laundering conspiracy, so it is admissible without resorting to Rule 404(b). (Docket No. 619). It argues that the Walmart transaction information is intrinsic because it shows Baiyewu's "pattern of structuring financial transactions to hide funds." Id. at 3. Alternatively, the Government contends it has special relevance under 404(b) because it relates to how the conspiracy operated and the use of multiple identifications goes to knowledge, intent, and lack of mistake. Id. at 3-4. Further, it is highly probative for a money laundering conspiracy charge, where defendants allegedly engaged in "convoluted financial

transactions" to "hide fraud-derived funds and obscure" identities – such as "buying anonymized financial instruments such as money orders." Id. at 4-5.

The Court finds that evidence of Defendant using various forms of identification to purchase money orders is intrinsic to the charged conspiracy for money laundering, and that any potential prejudice pales compared to the highly probative value of this evidence. The Court need not make any Rule 404(b) determinations. Accordingly, the Court hereby **DENIES** Defendant Baiyewu's *Motion in Limine to Exclude Evidence of Using Different Legal and Valid Forms of Identification to Purchase Money Orders Offered by the Government under Rule 404(b)* at Docket No. 590.

### IV.  CONCLUSION

For the foregoing reasons:

- The Court **GRANTS** the Government's *Motion to Conditionally Admit Business Records under FRE 902(11)* at Docket No. 579 (pages 28-31) and **GRANTS** the Government's *Motion in Limine Submitting Additional Business Record Certificates* at Docket No. 675.

- The Court **DENIES** the Government's *Motion to Introduce Evidence of Adelekan and Omotayo's Joint Involvement with Fraud and Money Laundering Prior to the Timeframe of the Alleged Conspiracy* at Docket No. 579 (pages 31-35).

- The Court **DENIES** the Government's *Consciousness of Guilt Evidence* at Docket No. 579 (pages 35-36) and **GRANTS** Defendant Baiyewu's *Motion in Limine to Exclude Evidence: Attempted Flight at the Time of His Arrest* at Docket No. 593.

- The Court **GRANTS in Part and DENIES in Part** the Government's *Previous Marriage Evidence* at Docket No. 579 (pages 36-39) and **GRANTS in Part and DENIES in Part** Defendant Baiyewu's *Motion in Limine Objecting to the Government's Notice to Use Kelsey Williams's Testimony and/or Statements as Barred by Marital Privilege and by Rule 403 and Rule 701 of the FRE* at Docket No. 591.

- The Court **GRANTS** the Government's *Motion to Introduce Evidence of Suleiman's Motive to Use an Alias and Knowledge of Illicit Source of Funds, and Plan to Use Buying and Shipping Cars as a Defense* at Docket No. 579 (pages 39-41) and **GRANTS in Part and DENIES in Part** Defendant Baiyewu's *Motion in Limine to Exclude Pleadings and Other Information from Other Criminal Cases Unrelated to the Allegations Against Mr. Baiyewu* at Docket No. 568.

- The Court **GRANTS** the Government's *Motion to Introduce Defendants' Tax Return Information for the Years 2019, 2020, and 2021* at Docket No. 579 (pages 41-44).

- The Court **GRANTS** the Government's *Motion to Admit Expert Testimony of Former FBI Special Agent Edgar Koby* at Docket No. 579 (pages 44-46) and **DENIES** Defendant Baiyewu's *Motion in Limine to Exclude the Government's (1) Alleged Expert for Failure to Comply with Rule 16 of FRCP and Rule 702 of FRE and (2) to Preclude Fact Witnesses from Testifying as Experts Offering Opinions* at Docket No. 594.

- The Court **GRANTS in Part and DENIES in Part** the Government's *Motion to Conditionally Admit Statements by Unindicted Co-Conspirators Pursuant to Rule 801(d)(2)(E)* at Docket No. 579 (pages 46-47) and **GRANTS in Part and DENIES in Part** Defendant Baiyewu's *Motion in Limine (Co-Conspirator Statements Related to Other Conspiracies) and Request for Hearing Outside the Presence of the Jury* at Docket No. 580.

- The Court **GRANTS** the Government's *Motion to Admit Statements by Unidentified Co-Conspirators Perpetrating Romance Scams, UI Fraud, and BECs* at Docket No. 579 (pages 47-49).

- The Court **GRANTS in Part and DENIES in Part** the Government's *Motion to Preclude Cross-Examination Through Use of Law Enforcement Reports* at Docket No. 579 (pages 49-51).

- The Court **GRANTS in Part and DENIES in Part** the Government's *Motion to allow Presence of Law Enforcement at Counsel Table and to Re-Call Case Agent* at Docket No. 579 (pages 51-53).

- The Court **GRANTS** the Government's *Motion to Bar Arguments Regarding Possible Consequences of Conviction* at Docket No. 579 (page 53).

- The Court **GRANTS** the Government's *Motion to Preclude Argument, Testimony or Evidence Regarding Specific Instances of Conduct Offered to Prove That Defendant's Good Character and Negate Criminal Intent* at Docket No. 579 (page 54).

- The Court **GRANTS in Part and DENIES in Part** the Government's *Motion to Prohibit Argument, Testimony or Evidence Regarding Improper, Inadmissible, and/or Overly Prejudicial Matters in Front of the Jury* at Docket No. 579 (pages 54-60).

- The Court **GRANTS** the Government's *Motion to Prohibit Explaining Reasonable Doubt During Closing Argument* at Docket No. 579 (pages 60-62).

- The Court **GRANTS** the Government's *Motion to Preclude Irrelevant Argument in Relation to Search Warrant Data* at Docket No. 579 (pages 62-63).

- The Court **GRANTS** the Government's *Motion to Preclude Argument, Testimony or Evidence about Victim Negligence* at Docket No. 579 (page 63).

- The Court **DENIES** the Government's *Motion to Limit Scope of Cross-Examination of Fact Witness* at Docket No. 579 (page 63-65).

- The Court **DENIES** Defendant Baiyewu's *Motion in Limine to Exclude the Entire Proffered 404(b) Evidence as Notified* at Docket No. 562.

- The Court **DENIES** Defendant Baiyewu's *Motion in Limine (Electronic Mail Communication and Social Media Content)* at Docket No. 576.

- The Court **DENIES** Defendant Baiyewu's *Motion in Limine (Open-Source Web Pages)* at Docket No. 577.

- The Court **GRANTS** Defendant Baiyewu's *Motion in Limine (Testimony by Law Enforcement Agents and/or Confidential Informants to Prove the Existence and/or Membership in the Charged Conspiracy)* at Docket No. 582.

- The Court **DENIES** Defendant Baiyewu's *Motion in Limine to Exclude Evidence of Using Different Legal and Valid Forms of Identification to Purchase Money Orders Offered by the Government under Rule 404(b)* at Docket No. 590.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 1st day of August 2025.

s/Raúl M. Arias-Marxuach
UNITED STATES DISTRICT JUDGE