IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>**Plaintiff,**<br><br>v.<br><br>[1] OLUWASEGUN BAIYEWU,<br><br>**Defendant.** | **CRIMINAL NO. 21-395-1 (RAM)** |

## OPINION AND ORDER

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending before the Court is Defendant Oluwasegun Baiyewu's ("Defendant" or "Baiyewu") *Motion to Compel Production of Raw Data Extraction from Mr. Baiyewu's Cell Phone* ("*Motion to Compel Production*"), the Government's *Response in Opposition* ("*Response*"), and Defendant's *Reply*. (Docket Nos. 754, 763 and 774, respectively). For the following reasons, the *Motion to Compel Production* is **DENIED**.

### I. BACKGROUND

On August 25, 2025, a jury in the District of Puerto Rico found Defendant guilty of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). (Docket No. 746).

On September 18, 2025, Defendant filed a *Motion to Compel Production* from the Government for raw data extractions from his cell phone using a forensic tool called GrayKey – as well as the raw data extracted from another co-defendant's cell phone for

comparison. (Docket No. 754). According to Defendant, the Government seized his phone on October 14, 2021, and subsequently extracted data using GrayKey. Id. at 1. Defendant argues that while the FBI extracted data from all other phones in this case using Cellebrite software, for Baiyewu's phone the Government used a tool called Relativity to produce the WhatsApp message reports that display Defendant as the number "1." Id. at 1-2. Defendant takes issue with the Government claiming for the first time at trial that Relativity was used – "through someone who did not even conduct the extraction," FBI Special Agent Alejandro Ramos ("Agent Ramos"). Id. ("Tellingly, the [G]overnment at trial presented an agent who has no personal knowledge as to how the extraction was conducted.").

Defendant asserts that the lack of authentication for that extraction is at issue, as well as the Government's claim the extraction gave Baiyewu the number "1". Id. at 2. Defendant believes the number "1" "was not a mere consequence of using Relativity" and highlights his assertion that the Government has not provided Defendant with the raw data extraction file from the GrayKey tool (which Defendant pointed out at the Rule 104 hearing). Id. Defendant maintains that the raw data extractions are necessary to properly prepare post-trial motions – access is key for verifying the accuracy and completeness of the WhatsApp messages

the Government presented at trial to the jury, since "[t]he [G]overnment's parsing tool may also have omitted certain data, such as images or other content that was present in the original application." Id. at 3. Defendant argues the rule of completeness further supports this request. Id. Additionally, Defendant asserts his expert needs data of one other co-defendants' phone for comparison and analysis. Id. at 4.

The Government filed a *Response* stating it produced the relevant raw data extraction to Baiyewu on October 29, 2021.[1] (Docket No. 763). Additionally, it highlights that Defendant did not comply with Local Rule 116 and confer with opposing counsel prior to filing his discovery motion. Id. at 2. The Government also notes that the evidence Defendant seeks could not properly form the basis for a Rule 29 motion. Id.

Defendant sought leave to reply, maintaining that the Government misstates the Cellebrite extraction that was provided in this case by AUSA John Auchter, incorrectly asserting the "raw data" was provided. (Docket No. 767). Defendant again avers that the raw data extraction using GrayKey was never provided. Id. at 2-3. Defendant filed his *Reply*, attaching two exhibits he

---

[1] The Government filed an exhibit at Docket No. 765. It is the letter of production provided to Defendant on October 29, 2021, stating the Rule 16 materials being provided were "1. Cell Phone Extraction." Id. at 1-2. The Court notes that there is no signature on the Acknowledgment page of this copy. Id. at 3.

identifies as the Government-provided pen drive card with the Cellebrite application software and a Cellebrite extraction of Baiyewu's phone that were provided on October 29, 2021, instead of "raw data." (Docket No. 774). Defendant asserts that the FBI agent who handled the case or extractions took the Cellebrite extraction and used Relativity to change Baiyewu's name to the number "1." Id. at 2. According to Defendant, an expert informed him that "Relativity would not be able to ingest a raw GrayKey extraction," so the Government would have had some other process run between GrayKey and Relativity – thus necessitating the production of the raw data so a forensic expert can make a conclusion regarding how the number "1" appeared in the exhibits used at trial. Id. (proffering that "the name wasn't originally provided to Relativity, the field mapping was not done properly, or there was an issue ingesting the data" as reasons for the populated field to show a number).

In sum, Defendant "maintains that the use of the number '1' in the exhibits produced right before trial was an alteration conducted to unduly prejudice him and to make all of the exhibits with WhatsApp conversations that came into evidence depicting him as '1', prejudicially suggestive." Id. at 3.

The Government sought leave to file a *Surreply*, reiterating that by Defendant's own *Reply*, he admits production occurred and

he possesses the data he seeks. (Docket No. 777-1). It also highlights that Defendant cited no authority authorizing post-trial discovery for purposes of filing his Rule 29 motion. Id.

## II.  DISCUSSION

First and foremost, the time for discovery has passed. Federal Rule of Criminal Procedure 16 governs a motion to compel in criminal discovery. Under the rule,

> [u]pon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:(i) the item is material to preparing the defense;(ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant.

Fed. R. Crim. P. 16(a)(1)(E). Should a party fail to comply with the obligations of Rule 16, the district court may "order that party to permit the discovery or inspection . . . and prescribe other just terms and conditions," among other remedies. Fed. R. Crim. P. 16(d)(2)(A).

Defendants, as the moving party, bear the burden of proof of showing materiality. United States v. Goris, 876 F.3d 40, 44 (1st Cir. 2017). Materiality requires showing "some indication" that pretrial disclosure of the information sought "would have the

enabled the defendant significantly to alter the quantum of proof in his favor." Id. at 45 (citations omitted). If a "defendant's discovery request is grounded in a speculative theory, a district court's decision to deny that request is not an abuse of discretion." Id.

In this case, Defendant is seeking his *Motion to Compel Production* after the close of trial, even though concerns regarding this issue would have arisen pre-trial and were first raised at the beginning of August. The Court will highlight the relevant discussion that already addressed this issue.

On August 5, 2025, after voir dire but prior to opening arguments, defense counsel raised the issue of Exhibits 5B, 5C, and 5F for the first time, arguing that replacing Baiyewu's image and putting the number 1 in the chats altered the conversation – making the exhibits unreliable, suggestive, prejudicial, and untruthful. The Court held a Rule 104 hearing to address the matter. (Docket No. 717 at 25-66). Defendant asserted that the Exhibit 5 conversations they had possessed were in Cellebrite, and that they "were never provided with the Relativity data or with that format until a few days ago." (Docket No. 717 at 25-26). The Government stated that the extraction was provided in discovery back in 2021, and that it produced copies of all the extractions

the week prior to trial "as the form of the evidence to be provided." Id. at 26.

The Court specifically addressed the timeliness of Defendant's issue:

> The problem I have with this is we started trial already and **you got this discovery last week, and if there was an issue with the format in which discovery was produced, or some other deficiency, it should have been raised before we started trial.** Now we are in the middle of trial.

Id. at 26. Now we are no longer even in trial, as Defendant filed his *Motion to Compel Production* nearly a month after the jury returned its verdict.

The Rule 104 hearing continued with the testimony of Agent Ramos, followed by the parties' arguments. Id. at 28-64. The Government reiterated its stance that the parser tool Relativity generated the report and "automatically puts 1 for the primary user of the phone in the way that it formats and displays data that it reads from the extraction file." Id. at 60-61. Defense counsel highlighted his objection that the agent who did the extraction was not present to provide an explanation, and that by using the number 1, the Government is making the identification unfair and unreliable by suggesting to the jury that Baiyewu is the leader. Id. at 61-62. Furthermore, defense counsel highlighted that reports containing the names of other individuals while only

showing Baiyewu appearing as the number 1 were dehumanizing and prejudicial. Id. The Court held that the Government met its burden for admitting the exhibits, but it agreed to issue a limiting instruction because the use of the number 1 to identify Baiyewu could be prejudicial. Id. at 63-64.

The Court crafted the following curative limiting instruction to be given to the jury whenever relevant exhibits were presented:

> Ladies and gentlemen of the jury, you will be shown evidence consisting of reports from a computer program displaying WhatsApp chats. Mr. Baiyewu is identified in the reports by the number 1. He did not identify himself that way in the chats. Therefore, it would be improper for you to include that he hid his identity in the chats.

(Docket No. 717 at 64, 68-69 (noting "the idea is to forestall any adverse inference from the number 1"). When Defendant asked for a reconsideration (that the Government change the number 1 to his initials, his name, or his phone number), the Court iterated that:

> [T]he institution of trial by jury is built on the premise that jurors follow instructions. I will be happy to repeat this instruction from time to time. In fact, if you remind me about the limiting instruction every time a new block exhibit comes in, I will be happy to reiterate that instruction.

(Docket No. 717 at 65).

Throughout trial, the Court repeated the curative instruction as needed, or some iteration of it, when the Government published exhibits to the jury where excerpts of WhatsApp chat reports identified Baiyewu by the number 1. (See Docket No. 718 at 25, 34,

50, 52, 64, 68, 84, 94). Additionally, the following limiting instruction for Government Exhibits 5B and 5C was included in the final jury instructions as well:

> "You have been shown evidence consisting of reports from a computer program displaying WhatsApp chats. Mr. Baiyewu is identified by the number "1" in those reports. He did not identify himself that way in the chats. Therefore, it would be improper for you to conclude that he hid his identity in the chats."

(*Jury Instruction # 13*).

Defendant offers little more than speculative theory that the Government parser omitted data from the original application when producing the WhatsApp chat reports used as trial exhibits, and the Court already addressed similar arguments at the Rule 104 hearing. *See* Goris, 876 F.3d at 44-45. Moreover, Defendant fails to explain why the limiting instruction, repeated multiple times to the jury throughout trial, would not suffice to cure any potential prejudice. United States v. Armenteros-Chervoni, 133 F.4th 8, 28 (1st Cir. 2025). Furthermore, Defendant offers no adequate explanation for why, upon receiving the exhibits at issue, he did not seek production of the raw data he alleges is not in his possession – by first consulting with the Government and then seeking a motion to compel **prior to trial**. Nor is there reason proffered for the month and a half delay in filing his *Motion to*

Criminal No. 21-395-1 (RAM)                                                          10

*Compel Production* from the time the issue was first raised to and firmly addressed by the Court.

### III. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant Oluwasegun Baiyewu's *Motion to Compel Production* at Docket No. 754.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 2nd day of October 2025.

                                              s/Raúl M. Arias-Marxuach
                                              UNITED STATES DISTRICT JUDGE